**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MAINE**

| | |
|---|---|
| JANE DOE 1, JOHN DOE 1, JOHN DOE 2, JOHN DOE 3, JOHN DOE 4, JOHN DOE 5, JOHN DOE 6, JOHN DOE 7, and JOHN DOE 8, <br><br> Plaintiffs, <br><br> v. <br><br> MAINE DEPARTMENT OF CORRECTIONS; MARTIN MAGNUSSON, Commissioner of the Maine Department of Corrections; MARY ANN SAAR, Associate Commissioner for Juvenile Services; LARS OLSEN, Superintendent, Maine Youth Center; ROBERT LANCASTER, Deputy Superintendent, Maine Youth Center; BARBARA HEATH, Psychologist, Maine Youth Center; MICHAEL MACK, Area Supervisor, Maine Youth Center; SCOTT DEWITT, Area Supervisor, Maine Youth Center; BRIAN MACDOUGALL, Area Supervisor; RALPH NICHOLS, Investigator, Maine Youth Center; STEVEN BUTTS, Investigator, Maine Youth Center; CARRIE JOHNSON, Training School Counselor, Maine Youth Center; BARRY LEMERY, Training School Counselor, Maine Youth Center; JOHN NAPOLITANO, Training School Counselor, Maine Youth Center; SCOTT LAMRY, Training School Counselor, Maine Youth Center; NORMA JEAN DUHAMEL, Training School Counselor, Maine Youth Center; PATRICIA L. POOLE, Training School Counselor, Maine Youth Center; JAMES MCDEVITT, Training School Counselor, Maine Youth Center; PAMELA CREAMER, Training School Counselor, Maine Youth Center; KENNETH FACTOR, Training School Counselor, Maine Youth Center; DANIEL THURLOW, Training School Counselor, | CIVIL ACTION No. |

Maine Youth Center; STEPHEN HASSON, Training School Counselor, Maine Youth Center; DAVID CLOCK, Training School Counselor, Maine Youth Center; DANIEL KANE, Training School Counselor, Maine Youth Center; DANIEL DICKSON, Training School Counselor, Maine Youth Center; ADRIEN DUFRESNE, Training School Counselor, Maine Youth Center; DANIEL BOISOT, Training School Counselor, Maine Youth Center; ROY GUZMAN, Training School Counselor, Maine Youth Center; LEO ALBERT, Training School Counselor, Maine Youth Center; STEVEN ROGERS, Training School Counselor, Maine Youth Center; PETER MCDERMOTT, Training School Counselor, Maine Youth Center; EWA LEWANDOWSKA, Training School Counselor, Maine Youth Center; GARRET SMITH, Training School Counselor, Maine Youth Center; SEAN CLANCY, Training School Counselor, Maine Youth Center; MICHAEL WHELAN, Training School Counselor, Maine Youth Center; JEFFREY TARDIFF, Training School Counselor, Maine Youth Center; TIMOTHY FOUST, Training School Counselor, Maine Youth Center; JOHN COYNE, Training School Counselor, Maine Youth Center; CHRISTOPHER COYNE, Training School Counselor, Maine Youth Center; JAMES BELL, Training School Counselor, Maine Youth Center; FNU BELL, Training School Counselor, Maine Youth Center; LISA TILLY, Training School Counselor, Maine Youth Center; MATTHEW NEE, Training School Counselor, Maine Youth Center; FNU FARR, Training School Counselor, Maine Youth Center; FNU DARDELL, Training School Counselor, Maine Youth Center; FNU OWENS, Training School Counselor, Maine Youth Center; FNU MOREAU, Training School Counselor, Maine Youth Center; FNU DOTAY, Training School Counselor, Maine Youth Center; FNU TURNER, Training School Counselor, Maine

2

Youth Center; FNU ALBERTSON, Training School Counselor, Maine Youth Center; FNU DREW, Training School Counselor, Maine Youth Center;  LOUIS HANSON, Training School Counselor, Maine Youth Center; DAVID FORD, Training School Counselor, Maine Youth Center;  SHIRLEY ANTONOWICZ, Training School Counselor, Maine Youth Center; SCOTT RISKA, Training School Counselor, Maine Youth Center; FNU QUINN, Training School Counselor, Maine Youth Center; SCOTT JANOSIK, Training School Counselor, Maine Youth Center; FNU THOMAS, Training School Counselor, Maine Youth Center; and FNU NELSON, Training School Counselor, Maine Youth Center;

Defendants.

## COMPLAINT – JURY TRIAL DEMANDED

Plaintiffs Jane Doe 1, John Doe 1, John Doe 2, John Doe 3, John Doe 4, John Doe 5, John Doe 6, John Doe 7, and John Doe 8, by and through their attorneys, hereby allege as follows:

## INTRODUCTION

1. Plaintiffs bring this civil rights action against Defendants, challenging the constitutional and statutory violations they survived while committed to the Maine Youth Center ( "Youth Center") from 1992 to 1999.[1] Plaintiffs are individuals who, as vulnerable children, the State of Maine (the "State" or "Maine") committed to the Youth Center, a facility run by the Maine Department of Corrections. While at the Youth Center, Plaintiffs endured unimaginable abuse at the hand of Defendants. Defendants beat, molested, assaulted, and raped Plaintiffs. Defendants

---

[1] In 2001, the State of Maine renamed the Maine Youth Center was renamed Long Creek Youth Development Center. *See* Maine State Archives*, Long Creek Youth Development Center (Me.) (1976-)*, https://archives.maine.gov/agents/corporate_entities/521 (last visited Nov. 28, 2025).

humiliated, demeaned, and psychologically abused Plaintiffs. Defendants forced Plaintiffs to live in squalid conditions, deprived of the basic standard of living that every child deserves. When Plaintiffs cried out for help, Defendants retaliated against them and gaslit them into believing they deserved the trauma they endured. Defendants' conduct violated Plaintiffs' rights under the U.S. Constitution, federal law, the Maine Constitution, and Maine law. With this complaint, Plaintiffs now bravely come forward to tell their stories and to seek compensatory, actual, and punitive damages to compensate for their past and continued suffering.

**PARTIES**

I.   **Plaintiffs**

2.   Plaintiff Jane Doe 1 is a resident of the City of Saco, York County, Maine. At all times material herein, she was a citizen of the United States. Jane Doe 1 was a minor child until 1996.

3.   Plaintiff John Doe 1 is a resident of the City of Waterville, Kennebec County, Maine. At all times material herein, he was a citizen of the United States. John Doe 1 was a minor child until 1999.

4.   John Doe 2 is a resident of the City of Gainesville, Alachua County, Florida. At all times material herein, he was a citizen of the United States. John Doe 2 was a minor child until 1999.

5.   John Doe 3 is a resident of the Town of Poland, Androscoggin County, Maine. At all times material herein, he was a citizen of the United States.  John Doe 3 was a minor child until 2000.

6.    John Doe 4 is a resident of the Town of Limington, York County, Maine. At all times material herein, he was a citizen of the United States. John Doe 4 was a minor child until 1999.

7.    John Doe 5 is a resident of the City of South Portland, Cumberland County, Maine. At all times material herein, he was a citizen of the United States. John Doe 5 was a minor child until 1996.

8.    John Doe 6 is a resident of the Town of Freeport, Cumberland County, Maine. At all times material herein, he was a citizen of the United States. John Doe 6 was a minor child until 1996.

9.    John Doe 7 is a resident of the City of Lewiston, Androscoggin County, Maine. At all times material herein, he was a citizen of the United States. John Doe 7 was a minor child until 1998.

10.    John Doe 8 is a resident of the City of Temple, Bell County, Texas. At all times material herein, he was a citizen of the United States. John Doe 8 was a minor child until 2003.

## II.    Defendants

11.    Defendant Maine Department of Corrections ("MDOC"), during all times material herein, was and remains the department under which the State's youth detention facilities, including the Youth Center, are operated. 34-A M.R.S. § 1202. MDOC is "responsible for the direction and general administrative supervision, guidance and planning of adult and juvenile correctional facilities and programs within the State." *Id*. MDOC's central office is in Augusta, Maine.

12. Defendant Martin Magnusson, during a portion of the time material herein, was employed by the MDOC as the Commissioner of the MDOC. At all relevant times herein, he acted under color of state law. He is sued in his individual and official capacity.

13. Defendant Mary Ann Saar, during a portion of the time material herein, was employed by the MDOC as the Associate Commissioner of Juvenile Services for the MDOC. At all relevant times herein, she acted under color of state law. She is sued in her individual and official capacity.

14. Defendant Lars Olsen, during a portion of the time material herein, was also employed by the MDOC as the Superintendent of the Youth Center. At all relevant times herein, he acted under color of state law. He is sued in his individual and official capacity.

15. Defendant Robert Lancaster, during all times material herein, was employed by the MDOC as the Deputy Superintendent of the Youth Center. At all relevant times herein, he acted under color of state law. He is sued in his individual and official capacity.

16. Defendant Barbara Heath, during all times material herein, was employed or contracted by the MDOC as a psychologist at the Youth Center. At all relevant times herein, she acted under color of state law. She is sued in her individual and official capacity.

17. Defendant Michael Mack, during a portion of the time material herein, was employed by the MDOC as a Supervisor and Training School Counselor at the Youth Center. At all relevant times herein, he acted under color of state law. He is sued in his individual capacity.

18. Defendant Scott DeWitt, during a portion of the time material herein, was employed by the MDOC as a Supervisor and Training School Counselor at the Youth Center. At all relevant times herein, he acted under color of state law. He is sued in his individual capacity.

19.     Defendant Brian MacDougall, during a portion of the time material herein, was employed by the MDOC as a Supervisor and Training School Counselor at the Youth Center. At all relevant times herein, he acted under color of state law. He is sued in his individual capacity.

20.     Defendant Ralph Nichols, during a portion of the time material herein, was employed by the MDOC as an Investigator for the Youth Center. At all relevant times herein, he acted under color of state law. He is sued in his individual capacity.

21.     Defendant Steven Butts, during a portion of the time material herein, was employed by the MDOC as an Investigator for the Youth Center. At all relevant times herein, he acted under color of state law. He is sued in his individual capacity.

22.     Defendant Carrie Johnson, during a portion of the time material herein, was employed by the MDOC as a Training School Counselor at the Youth Center. At all relevant times herein, she acted under color of state law. She is sued in her individual capacity.

23.     Defendant Barry Lemery, during a portion of the time material herein, was employed by the MDOC as a Training School Counselor at the Youth Center. At all relevant times herein, he acted under color of state law. He is sued in his individual capacity.

24.     Defendant John Napolitano, during a portion of the time material herein, was employed by the MDOC as a Training School Counselor at the Youth Center. At all relevant times herein, he acted under color of state law. He is sued in his individual capacity.

25.     Defendant Scott Lamry, during a portion of the time material herein, was employed by the MDOC as a Training School Counselor at the Youth Center. At all relevant times herein, he acted under color of state law. He is sued in his individual capacity.

26.     Defendant Norma Jean Duhamel, during a portion of the time material herein, was employed by the MDOC as a Training School Counselor at the Youth Center. At all relevant times herein, she acted under color of state law. She is sued in her individual capacity.

27.     Defendant Patricia Poole, during a portion of the time material herein, was employed by the MDOC as a Training School Counselor at the Youth Center. At all relevant times herein, she acted under color of state law. She is sued in her individual capacity.

28.     Defendant James McDevitt, during a portion of the time material herein, was employed by the MDOC as a Training School Counselor at the Youth Center. At all relevant times, he acted under color of state law. He is sued in his individual capacity.

29.     Defendant Pamela Creamer, during a portion of the time material herein, was employed by the MDOC as a Unit Director and Training School Counselor at the Youth Center. At all relevant times herein, she acted under color of state law. She is sued in her individual capacity.

30.     Defendant Kenneth Factor, during a portion of the time material herein, was employed by the MDOC as a Training School Counselor at the Youth Center. At all relevant times herein, he acted under color of state law. He is sued in his individual capacity.

31.     Defendant Daniel Thurlow, during a portion of the time material herein, was employed by the MDOC as a Training School Counselor at the Youth Center. At all relevant times herein, he acted under color of state law. He is sued in his individual capacity.

32.     Defendant Stephen Hasson, during a portion of the time material herein, was employed by the MDOC as a Training School Counselor at the Youth Center. At all relevant times herein, he acted under color of state law. He is sued in his individual capacity.

33.     Defendant David Clock, during a portion of the time material herein, was employed by the MDOC as a Training School Counselor at the Youth Center. At all relevant times herein, he acted under color of state law. He is sued in his individual capacity.

34.     Defendant Daniel Kane, during a portion of the time material herein, was employed by the MDOC as a Training School Counselor at the Youth Center. At all relevant times herein, he acted under color of state law. He is sued in his individual capacity.

35.     Defendant Daniel Dickson, during a portion of the time material herein, was employed by the MDCO as a Training School Counselor at the Youth Center. At all relevant times herein, he acted under color of state law. He is sued in his individual capacity.

36.     Defendant Adrien Dufresne, during a portion of the time material herein, was employed by the MDOC as a Training School Counselor at the Youth Center. At all relevant times herein, he acted under color of state law. He is sued in his individual capacity.

37.     Defendant Daniel Boisot, during a portion of the time material herein, was employed by the MDOC as a Training School Counselor at the Youth Center. At all relevant times herein, he acted under color of state law. He is sued in his individual capacity.

38.     Defendant Roy Guzman, during a portion of the time material herein, was employed by the MDOC as a Training School Counselor at the Youth Center. At all relevant times herein, he acted under color of state law. He is sued in his individual capacity.

39.     Defendant Leo Albert, during a portion of the time material herein, was employed by the MDOC as a Training School Counselor at the Youth Center. At all relevant times herein, he acted under color of state law. He is sued in his individual capacity.

40. Defendant Steven Rogers, during a portion of the time material herein, was employed by the MDOC as a Training School Counselor at the Youth Center. At all relevant times herein, he acted under color of state law. He is sued in his individual capacity.

41. Defendant Peter McDermott, during a portion of the time material herein, was employed by the MDOC as a Training School Counselor at the Youth Center. At all relevant times herein, he acted under color of state law. He is sued in his individual capacity.

42. Defendant Ewa Lewandowska, during a portion of the time material herein, was employed by the MDOC as a Training School Counselor at the Youth Center. At all relevant times herein, she acted under color of state law. She is sued in her individual capacity.

43. Defendant Garret Smith, during a portion of the time material herein, was employed by the MDOC a Training School Counselor at the Youth Center. At all relevant times herein, he acted under color of state law. He is sued in his individual capacity.

44. Defendant Sean Clancy, during a portion of the time material herein, was employed by the MDOC as a Training School Counselor at the Youth Center. At all relevant times herein, he acted under color of state law. He is sued in his individual capacity.

45. Defendant Lisa Tilly, during a portion of the time material herein, was employed by the MDOC as a Training School Counselor at the Youth Center. At all relevant times herein, she acted under color of state law. She is sued in her individual capacity.

46. Defendant Michael Whelan, during a portion of the time material herein, was employed by the MDOC as a Training School Counselor at the Youth Center. At all relevant times herein, he acted under color of state law. He is sued in his individual capacity.

47.     Defendant Jeffrey Tardiff, during a portion of the time material herein, was employed by the MDOC as a Training School Counselor at the Youth Center. At all relevant times herein, he acted under color of state law. He is sued in his individual capacity.

48.     Defendant Timothy Foust, during a portion of the time material herein, was employed by the MDOC as a Training School Counselor at the Youth Center. At all relevant times herein, he acted under color of state law. He is sued in his individual capacity.

49.     Defendant John Coyne, during a portion of the time material herein, was employed by the MDOC as a Training School Counselor at the Youth Center. At all relevant times herein, he acted under color of state law. He is sued in his individual capacity.

50.     Defendant Christopher Coyne, during a portion of the time material herein, was employed by the MDOC as a Training School Counselor at the Youth Center. At all relevant times herein, he acted under color of state law. He is sued in his individual capacity.

51.     Defendant James Bell, during a portion of the time material herein, was employed by the MDOC as a Training School Counselor at the Youth Center. At all relevant times herein, he acted under color of state law. He is sued in his individual capacity.

52.     Defendant FNU Bell, during a portion of the time material herein, was employed by the MDOC as a Training School Counselor at the Youth Center. At all relevant times herein, she acted under color of state law. She is sued in her individual capacity.

53.     Defendant Matthew Nee, during a portion of the time material herein, was employed by the MDOC as a Training School Counselor at the Youth Center. At all relevant times herein, he acted under color of state law. He is sued in his individual capacity.

54.     Defendant FNU Farr, during a portion of the time material herein, was employed by the MDOC as a Training School Counselor at the Youth Center. At all relevant times herein, he acted under color of state law. He is sued in his individual capacity.

55.     Defendant FNU Dardell, during a portion of the time material herein, was employed by the MDOC as a Training School Counselor at the Youth Center. At all relevant times herein, she acted under color of state law. He is sued in her individual capacity.

56.     Defendant FNU Owens, during a portion of the time material herein, was employed by the MDOC a Training School Counselor at the Youth Center. At all relevant times herein, he acted under color of state law. He is sued in his individual capacity.

57.     Defendant FNU Moreau, during a portion of the time material herein, was employed by the MDOC as a Training School Counselor at the Youth Center. At all relevant times herein, he acted under color of state law. He is sued in his individual capacity.

58.     Defendant FNU Dotay, during a portion of the time material herein, was employed by the MDOC as a Training School Counselor at the Youth Center. At all relevant times herein, he acted under color of state law. He is sued in his individual capacity.

59.     Defendant FNU Turner, during a portion of the time material herein, was employed by the MDOC as a Training School Counselor at the Youth Center. At all relevant times herein, he acted under color of state law. He is sued in his individual capacity.

60.     Defendant FNU Albertson, during a portion of the time material herein, was employed by the MDOC as a Training School Counselor at the Youth Center. At all relevant times herein, he acted under color of state law. He is sued in his individual capacity.

61.     Defendant FNU Drew, during a portion of the time material herein, was employed by the MDOC as a Training School Counselor at the Youth Center. At all relevant times herein, he acted under color of state law. He is sued in his individual capacity.

62.     Defendant Louis Hanson, during a portion of the time material herein, was employed by the MDOC as a Training School Counselor at the Youth Center. At all relevant times herein, he acted under color of state law. He is sued in his individual capacity.

63.     Defendant David Ford, during a portion of the time material herein, was employed by the MDOC as a Training School Counselor at the Youth Center. At all relevant times herein, he acted under color of state law. He is sued in his individual capacity.

64.     Defendant Shirley Antonowicz, during a portion of the time material herein, was employed by the MDOC as a Training School Counselor at the Youth Center. At all relevant times herein, she acted under color of state law. She is sued in her individual capacity.

65.     Defendant Scott Riska, during a portion of the time material herein, was employed by the MDOC as a Training School Counselor at the Youth Center. At all relevant times herein, he acted under color of state law. He is sued in her individual capacity.

66.     Defendant FNU Quinn, during a portion of the time material herein, was employed by the MDOC as a Training School Counselor at the Youth Center. At all relevant times herein, he acted under color of state law. He is sued in her individual capacity.

67.     Defendant Scott Janosik, during a portion of the time material herein, was employed by the MDOC as a Training School Counselor at the Youth Center. At all relevant times herein, he acted under color of state law. He is sued in her individual capacity

68.    Defendant FNU Thomas, during a portion of the time material herein, was employed by the MDOC as a Training School Counselor at the Maine Youth Center. At all relevant times herein, he acted under color of state law. He is sued in his individual capacity.

69.    Defendant FNU Nelson, during a portion of the time material herein, was employed by the MDOC as a Training School Counselor at the Youth Center. At all relevant times herein, he acted under color of state law. He is sued in his individual capacity.

## JURISDICTION & VENUE

70.    This action seeks to vindicate rights guaranteed by the Eighth and Fourteenth Amendments of the United States Constitution, and it is brought pursuant to 42 U.S.C. § 1983.

71.    This action is also brought pursuant to Title II of the Americans with Disabilities Act, 42 U.S.C. §§ 12131-12134 and § 504 of the Rehabilitation Act, 29 U.S.C. § 794(d).

72.    This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this action arises under federal law. Jurisdiction is also authorized pursuant to 28 U.S.C. § 1343(a)(3).

73.    Pursuant to 28 U.S.C. § 1367(a), this Court possesses supplemental jurisdiction over state law claims under the Maine Civil Rights Act, 5 M.R.S. §§ 4681-85.

74.     Venue in this Court is proper under 28 U.S.C. § 1391(b) because the events giving rise to this action occurred within this judicial district and because the Defendants are subject to personal jurisdiction in this District.

## GENERAL ALLEGATIONS

75.    The United States Constitution and State of Maine Constitution protect the fundamental rights of people within their boundaries, including incarcerated individuals. Courts have long recognized that those protections are heightened when the incarcerated person is still a

child, and that the government's incarceration of a child should include treatment and rehabilitation. *See In re Gault*, 387 U.S. 1, 15-16 (1967) (discussing that early reformers of the juvenile justice system pushed for a system where "the idea of crime and punishment was to be abandoned" and "[t]he child was to be 'treated' and 'rehabilitated' and the procedures, from apprehension through institutionalization, were to be 'clinical' rather than punitive"); *State v. Gleason*, 404 A.2d 573, 582 (Me. 1979) (reaffirming that the "benevolent" purpose of Maine's Juvenile Code is to "create[] a separate and distinctive juvenile justice system designed primarily for the rehabilitation, not the punishment, of the young offender").

76.    Moreover, where a State juvenile court forcibly removes children from their homes and care of their parents, an affirmative duty falls on the State to provide for the children as if the State were their parents – to keep them safe, provide them necessary care, and promote their healthy development while in their custody. *See Shone v. State*, 237 A.2d 412, 417 (Me. 1968) (recognizing that the purposes of the Maine Juvenile Code, is "to provide for our juvenile offenders that care, custody and discipline as nearly as possible approximating that which they should receive from their parents or guardians, and as far as practicable treatment commensurate with their status not as criminals but as young persons in need of aid, encouragement and guidance"); *Inmates of Boys' Training Sch. v. Affleck*, 346 F. Supp. 1354, 1364-65 (D.R.I., 1972) ("Rehabilitation, then, is the interest which the state has defined as being the purpose of confinement of juveniles.").

77.    Under State law, the MDOC is the State agency statutorily responsible for ensuring the State's incarcerated children are provided with constitutionally mandated care and treatment. 34-A M.R.S. § 7001.

**I.     THE TROUBLED HISTORY OF THE STATE OF MAINE YOUTH CENTER.**

*"For too long, security has taken a back seat to rehabilitation. It is time for the Maine Youth Center to focus more on security."*

- Report of the Task Force on Maine Youth Center Security to Donald L. Allen, Commissioner, Department of Corrections (August 1990).

78.    Opened in 1853, the Youth Center was initially hailed as the progressive alternative to placement of children in adult correctional facilities.[2]

79.    However, beginning in the 1990s, the Youth Center pivoted away from rehabilitation to focus on security and punishment of the children within its walls.

80.    Budget cuts in 1992 and 1996 led to drastic reduction in facility programming and support available to the children incarcerated at the Youth Center.[3] While the facility's administrators claimed that these cuts led to insufficient funding for adequate staffing or therapeutic programming, in 1996, the same administrators found the funds for construction of a 15-foot-fence encircling the facility.[4] Later that same year, these administrators found the funds to open a new, secure building to house children deemed unfit to live with the other residents.[5] And the following year, in 1997, these administrators found the funds to purchase a restraint chair for the Youth Center.[6]

81.    In 1999, correctional expert Edward Loughran was commissioned by the MDOC to review the practices at the Youth Center. He concluded that the facility had "replaced its rehabilitative culture with a prison-like culture."[7]

---

[2] *See* Edward J. Loughran, *Final Report: Review of Maine Youth Center*, 3 (Feb. 22, 1999) (hereafter "*Loughran Report*").
[3] *Id*. at 5.
[4] Barbara Walsh, *MYC Fence Work Begins Monday Authorities Say a Good Fence Will Make the Youth a Better Neighbor*, Portland Press Herald (Jul. 6, 1996).
[5] *Loughran Report* at 23.
[6] Tess Nacelewicz, *Center Accused of Abusive Restraint. A Memo Criticizes Use of a Restraint Chair at the Maine Youth Center*, Portland Press Herald (Sept. 26, 1998).
[7] *Loughran Report* at 5.

A. **Unreasonable and Excessive Use of Isolation.**

82.     The deleterious effects of placing children in solitary confinement has been extensively researched and documented.[8] Indeed, even a short stays in solitary confinement can cause serious and lasting impacts on a child's developing brain, mental health, and physical health.[9] Unsurprisingly, the risks of deterioration are heightened for children with underlying mental health conditions.[10]

83.     In Maine, State lawmakers codified strict limitations on placement of children in isolation as early as 1975.[11] To that end, in Maine, a child may only be placed in "observation status" if: (1) the child presents a high likelihood of imminent harm to themselves or others; (2) presents a substantial and imminent threat of destruction of property; or (3) poses a risk of escape; and if the child demonstrates that anything less restrictive would be ineffectual. 34-A M.R.S. §§ 3809 (1), 4109 (1). Even where these conditions are met, a child cannot be placed in isolation beyond the time necessary to alleviate the behavior. 34-A M.R.S. §§ 3809(2)(C), 4109(2)(C). Any period exceeding 72 hours requires approval in writing from the Commissioner of the Department of Corrections. 34-A M.R.S. §§ 3809(2)(F), 4109(2)(F). Under no circumstances may solitary confinement be used as a punishment. 34-A M.R.S. §§ 3809(2)(C), 4109(2)(C).

---

[8] *See e.g.*, Kayla James & Elena Vanko, *The Impacts of Solitary Confinement, Vera Institute for Justice* (April 2021) https://www.vera.org/downloads/publications/the-impacts-of-solitary-confinement.pdf (citing multiple studies documenting psychological, neurological, and physiological harms of use of solitary confinement and noting specific harmful impact on youth, individuals with mental illness, and individuals with disabilities); Laura Dimon, *How Solitary Confinement Hurts the Teenage Brain*, The Atlantic (June 30, 2014) https://www.theatlantic.com/health/archive/2014/06/how-solitary-confinement-hurts-the-teenage-brain/373002/.
[9] *Id*.
[10] James & Vanko, *The Impacts of Solitary Confinement* at 9; *see also Inmates of Boys' Training Sch.* 346 F. Supp. at 1366–67. ("To confine a boy without exercise, always indoors, almost always in a small cell, with little in the way of education or reading materials, and virtually no visitors from the outside world is to rot away the health of his body, mind, and spirit. To then subject a boy to confinement in a dark and stripped confinement cell with inadequate warmth and no human contact can only lead to his destruction.").
[11] *See* An Act to Provide Minimum Standards for the Protection of the Rights of Residents of Public Institutions, 15 M.R.S.A § 2720 (1975).

84.     Upon information and belief in the timeframe material hereto, the Youth Center had five facilities in which MDOC staff held children, in their care and custody, in isolation for extended periods of time, often for punitive rather than legitimate penological purposes.

85.     The first such facility, termed the "Old Intensive Care Unit" ("old ICU"), consisted of twelve, approximately six by eight-feet, concrete cells with a combination sink/toilet and tile bench. Described as in "deplorable condition" in 1990, by a Task Force on Youth Center Security, the old ICU had no windows, poor ventilation, excessive heat in the summer, little heat in the winter, and frequent insect infestations.[12] The old ICU's cell walls were covered with markings, blood, and bodily fluids left by distressed children forced to languish old ICU cells for weeks, or even months, at a time.

86.     The second such facility, called the "New Intensive Care Unit" (hereafter "new ICU"), similarly consisted of fifteen small concrete cells with combination sink/toilets. These cells had a metal bed with a thin mattress. While a few cells had opaque exterior windows, none had clear windows or proper ventilation. These conditions lead to children suffering from excessive heat during the summer and bitter cold in the winter.

87.     The third such facility, called the "Special Treatment Unit" (hereafter "STU"), also had capacity for fifteen children. Adjacent to the new ICU, children would be "stepped down" from ICU to STU prior to returning to their assigned cottage.

88.     The fourth such facility, called the Female Security Program (hereafter "FSP"), was a secure unit for girls. Upon information and belief, the FSP unit opened in 1994, in what had formerly been the Hayden Building, and was a twelve-bed secure unit.

---

[12] *See* Report of the Task Force on Maine Youth Center Security to Donald L. Allen, Commissioner, Department of Corrections, 19 (August 1990) https://www.ojp.gov/pdffiles1/Digitization/126385NCJRS.pdf.

89.     The fifth and final such facility, called the New Security Building (hereafter "NSB"), opened in 1996. The NSB had two separate units connected by a day room, and, upon information and belief, contained twelve cells.

90.     Despite clear State statutory restrictions to the contrary, Youth Center staff routinely placed children in isolation in these facilities for behavioral infractions that did not meet the requirements for "observation" or "isolation" status. Staff then left these children in isolation for excessive periods of time.

91.     For example, a 1998 investigation of the Youth Center by the non-profit organization Amnesty International found that Youth Center staff placed children in solitary confinement for lengthy and indefinite periods, including finding the one child had spent over a year in isolation.[13] And the 1999 review of facility practices by correctional expert Edward Loughran found that between May 1, 1999, and January 31, 1999, there had been 1,219 instances of Youth Center staff placing children in isolation – an average of 4.4 times a day.[14]

92.     As detailed in Plaintiffs' accounts below, Youth Center staff repeatedly placed Plaintiffs in solitary confinement as punishment for behavioral infractions that did not meet the statutory requirements for "isolation" or "observation status." This punishment of Plaintiffs and Plaintiffs' prolonged confinement in

Fig. 1: Narrative of special Youth Center incident report.

isolation, far exceeding any time period necessary to alleviate their alleged behavioral issues, violated not only facility policy, but also Maine law and Plaintiffs' constitutional rights.

---

[13] Amnesty Int'l, *Betraying the Young: Human Rights Violations Against Children in the U.S. Justice System*, 27 (1998) (hereafter "*Amnesty Report*").

[14] *Loughran Report* at 8.

93.     Plaintiffs and other children were not given hearings or other procedural due process protections prior to their imposition of punishment through placement, or extensions of their time, in isolation.

94.     Prior to their placement in isolation, Youth Center staff frequently subjected Plaintiffs to degrading and unnecessary strip searches. After being stripped naked, Plaintiffs were left without water, blankets, or bed mattresses, vulnerable to the extreme heat or cold in the isolation unit.

95.     While held in isolation in the ICU, Plaintiffs and other children were not permitted to talk to one another or even to Youth Center staff. Instead, they were ordered to sit on their beds in silence. If they failed to follow this order, they faced additional punishment.

96.     Further, while held in isolation, Plaintiffs and other children were not permitted to attend school, or other educational programming, and were prohibited from contact with family members and friends.

97.     Unsurprisingly, this environment caused Plaintiffs and other children to further decompensate. Out of desperation to end their extreme suffering, many turned to self-harm: using broken tiles to slit their owns wrists, hanging themselves, and punching or smashing their own heads against their concrete cell walls.

**B.   Unreasonable and Excessive Use of Force and Restraints.**

98.     Under the United States Constitution pretrial detainees and convicted inmates have a fundamental right to be free from physical force and restraint inflicted for punitive, rather than legitimate government, purposes. *See Kingsley v. Hendrickson*, 576 U.S. 389, 397-98 (2015) (reaffirming that the Fourteenth Amendment's Due Process Clause protects a pretrial detainee from "excessive force that amounts to punishment," whether that force is inflicted for the purpose

of punishment or not rationally related to a legitimate government purpose); *Hope v. Pelzer*, 536 U.S. 730, 737 (2002) (holding that "unnecessary and wanton inflictions of pain," which include those "totally without penological justification," "constitute[] cruel and unusual punishment forbidden by the Eighth Amendment") (quotations omitted).

99. MDOC willfully blinded itself to Youth Center staff placing children in solitary confinement for prolonged, unnecessary periods of time and to Youth Center staff using unreasonable and excessive force and restraints against children for punitive, rather than legitimate penological purposes.

100. For the time periods relevant herein, Youth Center policy outlined a ten-step, progressive continuum of behavior controls that line staff, called "Training School Counselors" ("TSCs"), were to follow in responding to children committing behavioral infractions. The first six steps directed staff to only use verbal communication, rather than any hands-on force.[15]

101. Despite MDOC's policy on progressive behavioral controls, Youth Center staff routinely used unreasonable or excessive physical force against the children in their care and custody. At times the staff's unreasonable or excessive uses of force were in response to minor misbehavior of the children; in other instances, they were completely unprovoked.

102. As detailed in Plaintiffs' accounts below, such assaults frequently resulted in serious injuries that Plaintiffs frequently received no, or wholly inadequate, treatment for.

103. Further, for all time periods relevant herein, MDOC policy limited the use of restraints to situations where children presented a real and immediate threat to their own safety, the safety of others, or the security of the facility *and* only where no reasonable alternative existed.

---

[15] *Loughran Report* at 7.

When the use of restraints was appropriate, MDOC policy dictated that they were not to be applied for a period exceeding 30 minutes.

104.    Despite MDOC's policy on use of restraints, Youth Center staff routinely responded to children committing even  minor infractions with physical force and the use of plastic, metal, and leather restraints. Further, Youth Center staff left children to languish in such restraints for hours at a time, including after being stripped naked, hog-tied, or restrained in stress positions. According to one report, in 1998, there were 464 documented instances of a child at the Youth Center being placed in physical restraints.[16]

105.    While Youth Center staff had long used zip ties, shackles, and other forms of mechanical restraint to restrain children, in 1997, the Youth Center purchased, and began using, a restraint chair.[17] Just one year later, MDOC advocate, Eve Richardson blew the whistle on reports of children being restrained in the Youth Center's restraint chair for hours at a time.[18] Despite MDOC policy permitting use of the restraint chair only in specific safety and security situations, Ms. Richardson documented children threatened with placement in the chair for infractions as minor as talking to other children in the unit, swearing, yelling, or pounding on the door.[19] Further, despite MDOC policy limiting use of any restraints to 30 minutes, in 57 of the 60 cases Ms. Richardson reviewed, children were restrained in the restraint chair for an hour or more.[20] Indeed, on ten occasions, Youth Center staff left a child in the restraint chair for 5 to 17 hours, including

---

[16] *Loughran Report* at 6.
[17] Nacelewicz, *supra* note 6.
[18] *Id.*
[19] *Id.*
[20] *Id.*

leaving one child in the restraint chair for so long that he sat in his own urine for several hours after staff would not release him to go to the bathroom.[21]

106.    As further detailed in Plaintiffs' accounts below, while at the Youth Center, staff repeatedly, inhumanely, and unnecessarily placed each of them in restraints. This included Youth Center staff restraining Plaintiffs in the restraint chair, or with metal handcuffs, leg shackles, and zip ties. Staff would place these restraints on Plaintiffs so tight to cause constant pain in the children's wrists and ankles. There was no legitimate penological reason to do so. Further, staff would frequently place children in stress positions – including being hog-tied naked with their legs and arms behind them – where they would be left to languish for hours in increasingly excruciating pain, again for no legitimate penological purpose.

107.    Further, as detailed in Plaintiffs' accounts below, exposure to this violence left Plaintiffs and other children physically and emotionally scarred. Instead of rehabilitation and care, Plaintiffs were forced to maintain a constant state of hypervigilance to survive.

## C. Sexual Abuse

108.    Sexual abuse of incarcerated individuals by corrections staff violates those individuals' fundamental constitutional rights. *See Chao v. Ballista*, 630 F. Supp. 2d 170, 180 (D. Mass. 2009) ("It is clearly established that the sexual exploitation of prisoners by prison guards or officials amounts to a constitutional violation."); *see also Farmer v. Brennan*, 511 U.S. 825, 833-34 (1994) ("Being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society.") (internal quotation omitted).

109.    Pursuant to State law, it is a Class B crime for an individual in a position of supervisory or disciplinary authority to engage in a sexual act with an incarcerated individual. 17-

---

[21] *Id.*

23

A M.R.S. § 253(2)(E).[22] Sexual contact between an individual with supervisory or disciplinary authority and a prisoner or detainee is a Class C crime.[23] 17-A M.R.S. § 255-A(1)(J). Unlawful sexual touching between an individual with supervisory or disciplinary authority and a prisoner or detainee is a Class D crime. 17-A M.R.S. § 260(1)(E).[24] Sexual exploitation of a minor is a Class B crime, irrespective of their incarceration status. 17-A M.R.S. § 282(1)(A)-(A-1)).[25]

110.    As detailed in Plaintiffs' accounts below, Youth Center staff repeatedly and routinely sexually abused the children in their care and custody. This sexual abuse took numerous forms: explicit "relationships" between Youth Center staff and children, Youth Center staff violently sexually assaulting children, Youth Center staff filming children engaging in sexual acts, Youth Center staff engaging in gratuitous sexual humiliation of children—including Youth Center Staff forcing children to submit to gratuitous strip-searches, not for legitimate penological purposes, but instead for degradation.

---

[22]Under State law, "sexual act" means:  (1) Any act between 2 persons involving direct physical contact between the genitals of one and the mouth or anus of the other, or direct physical contact between the genitals of one and the genitals of the other; (2) Any act between a person and an animal being used by another person which act involves direct physical contact between the genitals of one and the mouth or anus of the other, or direct physical contact between the genitals of one and the genitals of the other; or  (3) Any act involving direct physical contact between the genitals or anus of one and an instrument or device manipulated by another person when that act is done for the purpose of arousing or gratifying sexual desire or for the purpose of causing bodily injury or offensive physical contact. 17-A M.R.S. § 251(C)(1)-(3)

[23] Under State law, "sexual acts towards minors" includes gross sexual assault, sexual abuse of a minor, unlawful sexual contact, unlawful sexual touching, or sexual exploitation of a minor, if committed against any person under the age of majority, 14 M.R.S. § 752-C (2), and "sexual contact" means any touching of the genitals or anus, directly or through clothing, other than as would constitute a sexual act, for the purpose of arousing or gratifying sexual desire or for the purpose of causing bodily injury or offensive physical contact, 17-A M.R.S. § 251(D).

[24] "Sexual touching" means any touching of the breasts, buttocks, groin or inner thigh, directly or through clothing, for the purpose of arousing or gratifying sexual desire. 17-A M.R.S. § 251(1)(G).

[25] An individual is guilty of sexual exploitation of a minor if they, knowing or intending that the conduct will be photographed, intentionally or knowingly employs, solicits, entices, persuades or uses another person, not that person's spouse, who has not in fact attained 16 years of age, to engage in sexually explicit conduct or  knowing or intending that the conduct will be photographed, the person intentionally or knowingly compels or induces by any threat another person, not that person's spouse, who is in fact a minor, to engage in sexually explicit conduct. 17-A M.R.S §282

111. As detailed below, Plaintiffs repeatedly attempted to report this sexual abuse, but to no avail. While Youth Center administrators received numerous complaints of sexual abuse and, in some cases, substantiated the complainant's allegations, they failed to take any reasonable action to abate the sexual abuse. For example, upon information and belief, Deputy Superintendent Robert Lancaster knew of and actively enforced a policy and practice whereby children were subjected to abusive, degrading, and humiliating strip searches without any penological justification.

112. As detailed in Plaintiffs' accounts below, MDOC administrators and Youth Center staff not only failed to abate the sexual abuse occurring at the facility, they also retaliated against children who attempted to report such abuse. Instead of safety and help, the children who tried to come forward faced further traumatization and harm.

## D. Deliberate Indifference to Medical Need and Discrimination Against Children with Disabilities.

113. The United States Constitution prohibits corrections officers from acting with deliberate indifference to substantial risks of serious harms faced by those in their custody. *Farmer*, 511 U.S. at 828; *see Youngberg v. Romeo*, 457 U.S. 307, 324 (1982) (a pretrial detainee has a right to be free from deliberate indifference to inhumane conditions or confinement and deliberate indifference to such training as required by these interests); *Estelle v. Gamble*, 429 U.S. 97, 103 (1976) (a convicted prisoner has a right to be free from deliberate indifference to serious medical needs).

114. Likewise, Article I, § 9 of the Maine Constitution, requires that "all penalties and punishment be proportioned to the offense" and prohibits cruel and unusual punishment.

115.    Further, pursuant to the Americans with Disabilities Act ("ADA") and § 504 of the Rehabilitation Act, juvenile detention facilities, such as the Youth Center, are prohibited from discriminating against youth because of their disabilities and have a positive obligation to make reasonable accommodations for children with disabilities confined in their facilities.

116.    Children with disabilities are grossly overrepresented in the juvenile justice system both nationally and in Maine.[26]

117.    In 1999, a review by correctional experts found that a high percentage of children confined at the Youth Center had mental health needs, including children requiring treatment for attention deficit disorder hyperactivity, post-traumatic stress disorder, and depression.[27] To that end, the review found that a quarter of the children at the Youth Center were being treated with psychotropic medications. However, despite the high percentage of children with serious mental health needs, the review found the mental health services at the Youth Center "woefully inadequate."[28] For example, the review found that despite MDOC and Youth Center administrators' awareness of the population of children with serious mental health needs at the Youth Center, in 1999, the Youth Center had only one psychiatrist working a total of eight hours a week.[29]

---

[26] *See* Peter E. Leone, Ph.D., Barbara A. Zaremba, Michelle S. Chapin & Curt Iseli, *Understanding the Overrepresentation of Youth with Disabilities in Juvenile Detention*, 3 U.D.C. L. Rev., 389 (1995); Maine Dep't of Corr., *Profile of Youth Committed at Long Creek Youth Development Center as of July 1, 2016*, 3 (Jan 19, 2017) https://digitalmaine.com/cgi/viewcontent.cgi?referer=&httpsredir=1&article=1032&context=doc_docs (finding 84.6 percent of youth had three or more mental health diagnosis by time of their arrival at Long Creek); Eric Russell, *Audit Critical of Long Creek Confirmed What Officials Knew, Corrections Chief Says, But Fixes are Being Made*, Portland Press Herald (Dec. 21, 2017); Kristen Clarke, Assistant Att'y Gen., C.R. Division, U.S. Dep't of Just., to Janet Mills, Governor, State of Maine. 1 (Jun. 22, 2022) https://www.justice.gov/crt/case-document/file/1514441/download (finding State of Maine was using Long Creek as a default psychiatric care facility in violation of the Americans with Disabilities Act).

[27] *Loughran Report* at 12.

[28] *Id*. at 13.

[29] *Id*. at 12.

118.    Further, the review found that with the pivot towards a more punitive, prison-like culture, the role of Training School Counselors ("TSC") at the Youth Center had shifted from rehabilitative counselors to correctional officers.[30] At the time of the review, investigators found that TSCs were receiving virtually the same training curriculum as adult corrections officers – with an emphasis on custodial control and security.[31] To that end, TSCs received no training specific to adolescent psychology or best practices with respect to working with children with mental health needs.[32] The review found that Youth Center staff, including TSCs, routinely responded to children exhibiting symptoms of their mental health condition with punishment rather than appropriate medical care. For example, the review found that staff responded to children suffering from mental health issues by using, or threating to use, restraints, placing children in isolation in the ICU, or removing of children from the cottages to the NSB.[33] *Id*. at 15.

119.    As aforementioned, while in ICU, children were excluded from school and denied family visits, certain programming, and other privileges.

120.    At all times relevant herein, the Youth Center used a "level system" to, among other things, assess children's release eligibility. Children committed to the Youth Center had to attain a certain level to become eligible for release. Behavioral infractions would result in detractions from children's levels, thus resulting in their continued detention.

121.    As detailed in Plaintiffs' accounts below, at the time of their arrival at the Youth Center, Plaintiffs were, and remain, qualified individuals with mental health disabilities. All had well-documented health needs and trauma histories.

---

[30] *Id*. at 7.
[31] *Id*.
[32] *Id*.
[33] *Id*. at 15.

122.    Despite their known and obvious needs, while at the Youth Center, Plaintiffs were not provided with adequate mental health care and treatment. Specifically, Plaintiffs were not provided with adequate psychological counseling and clinical care. In place of appropriate treatment, they were drugged and sedated with numerous medications, including antipsychotic medications and Benadryl.

123.    As further detailed by Plaintiffs below, when Plaintiffs suffered from uncontrollable mental health symptoms or expressed a proclivity to engage in self-harm, Youth Center clinicians punished them instead of providing them with the necessary medical care. For example, Youth Center clinicians responded to Plaintiffs' mental health suffering and resulting medical issues by threatening that Plaintiffs would be placed on the "cutter's list," isolated in the ICU, or placed in the restraint chair. Frequently, clinicians made good on these threats.

124.    As further detailed in Plaintiffs' accounts below, such threats, prolonged placement in isolation, and hours in restraints did not ameliorate Plaintiffs' mental health symptoms. Rather, this inhumane treatment exacerbated them. In the absence of proper care and often, as aforementioned, desperate to end their suffering, Plaintiffs turned to self-harm. Indeed, each Plaintiff in this case expressed suicidal ideations or attempted to take his or her own life.

125.    As detailed in Plaintiffs' accounts below, when Plaintiffs were held in isolation, they received no programming or education for prolonged periods of time. In particular, when Plaintiffs and other children were sent to the ICU, they were excluded from all educational programming, resulting in a denial of the (albeit sub-standard) education otherwise available to them at the Youth Center.

126.    For years, the State, MDOC, and Youth Center staff knew of and, through their inaction, condoned the systemic abuse, neglect, and constitutional violations taking place at the

Youth Center. As discussed *supra* and *infra*, this abuse included, among other things, the use of prolonged isolation, unreasonable and excessive force, gratuitous strip searches, and sexual abuse of children confined at the Youth Center. Through a series of state-commissioned investigative reports, legislative hearings, and national reform initiatives, Defendants received direct, detailed findings about the Youth Center's harmful and illegal practices and their devastating effects on the children confined within the facility. Despite this, the State failed to implement meaningful structural change or take other reasonable steps to abate the abuse and inhumane condition of confinements. Indeed the same abuse flagged decades ago in these official reports—solitary confinement, unreasonable and excessive force, and sexual abuse—remain embedded in the institutional culture of the Youth Center, further evidencing the State's continued deliberate indifference and refusal to protect the constitutional rights of the most vulnerable minors in its custody and care.

## SPECIFIC ALLEGATIONS

### I.    JANE DOE 1

127.    Jane Doe 1 arrived at the Youth Center when she was just 14 years old.

128.    Jane Doe 1 came from an impoverished home filled with abuse and neglect. While living at home, S Jane Doe 1 never had clean clothes or a toothbrush and was forced to steal toilet paper and other basic hygiene items. Jane Doe 1's mother, who struggled with alcoholism, began physically abusing Jane Doe 1 when Jane Doe 1 was just 6 years old. At 14 years old, Jane Doe 1's mother kicked her out of their home. Homeless and alone, Jane Doe 1 moved from shelter to shelter.

129. Jane Doe 1 was arrested, and, on October 12, 1993, transferred to the Youth Center pre-adjudication. Later, while Jane Doe 1 was still committed to the Youth Center, a State juvenile court adjudicated her offense.

130. When Jane Doe 1 arrived at the Youth Center, she had multiple mental illness diagnoses, including, but not limited to, Post-Traumatic Stress Disorder (PTSD) and severe conduct disorders.

131. Jane Doe 1's first memory at the Youth Center was being forced to shower in front of TSC Carrie Johnson, *after* having already been strip-searched three times: by the Maine State Police following her arrest, by the Somerset County Jail guards during her booking, and by Youth Center staff upon her arrival at the facility. Given the repeated strip searches, Youth Center staff knew Jane Doe 1 did not possess contraband but nevertheless forced her to shower in front of a TSC.

132. After the shower, Jane Doe 1 was placed in a cell within the old ICU. Jane Doe 1's cell had a metal cot with a plastic mattress and one blanket and no toilet. Jane Doe 1 was told that if she wanted to use the restroom, she had to knock on the door to be let out. If staff thought she was behaving, she would be taken to the bathroom. If not, staff would tell her to "piss herself for all they cared." While in the old ICU, Jane Doe 1 was ordered to sit on her cot and be still. If staff determined Jane Doe 1 had the "right attitude," she would be allowed a book.

133. A week later, on or about October 19, 1993, Youth Center staff moved Jane Doe 1 from the old ICU to Cottage 8, which housed girls at the Youth Center.

134. At that time, girls confined at the Youth Center were permitted to wear clothes that their family members sent them. However, those that were on "Hold for Court" status, assigned to the STU, or whose families were too poor to send clothing, had to wear state-issued uniforms. To

get their state-issued uniforms, each girl had to line up every night by the laundry room with her dirty clothes. The girl was then directed to show the inside of her underwear to the girl assigned to work in the laundry room. If vaginal discharge was visible, laundry staff yelled "Scrub em out!" The child would then be forced to walk her dirty underwear across the cottage and scrub it clean in the utility room, all while subjected to humiliating jeers, shaming, and teasing by other children and residents. The termed "underwear reveal program" continued until at least 1997, when newly appointed superintendent Laurence Reid prohibited the practice and purchased the girl's cottage a washing machine and dryer.

135.    While in Cottage 8, Youth Center staff cultivated a toxic culture of humiliation and degradation of the young female residents. This culture included staff bullying Jane Doe 1 and the other girls. For example, TSC Carol Saunders would bring in violent movies such as Goodfellas to watch with the girls. Whenever there was a stabbing scene, she would point and say, "Oh Jane Doe 1, I'm so sorry," or "Jane Doe 1, it's coming, don't look!" in a taunting and jeering manner. On other occasions TSC Saunders would subject Jane Doe 1 to "pranks," including hiding Jane Doe 1's clothing while she was in the shower or, on one occasion, throwing a snowball at Jane Doe 1 while she showered.

136.    This toxic culture extended far beyond emotional abuse. While in Cottage 8, Youth Center staff subjected Jane Doe 1 to unreasonable and excessive uses of force and restraints, unnecessary and prolonged confinement in isolation, and sexual abuse.

137.    For example, on one occasion, Jane Doe 1 and two other girls locked themselves in a cell. In response, four male TSCs – Jack Purdy, Barry Lemery, John Napolitano, and Scott DeWitt – forced their way into the cell. Upon entering, the four men physically attacked the girls. TSC Purdy who, upon information and belief, weighed more than 300 pounds, tackled Jane Doe

1 from behind. While Jane Doe 1 was on the ground, TSC Purdy kicked her in the face, chipping her front tooth. Afterwards, the TSCs forcibly transported the girls to the boy's STU unit, placed them in restraints, and left them bleeding on the floor.

138. Jane Doe 1 experienced such unreasonable and excessive uses of force and restraints time and again by Youth Center staff, including Barry Lemery, Jack Purdy, Scott DeWitt, John Napolitano, Kenneth Factor, Michael Whelan, Marsha Thomas, Norma Jean "Jeannie" Duhamel, Svetla Popova, Patricia Poole, and Werner Pobatschnig and other people assigned as the "Roaming Team".

139. In approximately summer 1994, the Youth Center opened the FSP unit. As stated *supra*, the FSP was a 12-bed unit that, upon information and belief, housed female "hold for courts" and girls that would have otherwise been housed in ICU or STU. Jane Doe 1 was transferred to FSP shortly after it opened.

140. While in FSP, Jane Doe 1 was not permitted to go to school. Instead, she received one hour of tutoring a day by Judy Lehman. 90% of her tutoring was watching Holocaust videos Judy Lehman brought in. Occasionally, when the girls housed in STU came into the unit, Jane Doe 1 would get to join their tutoring session. Upon information and belief, Jane Doe 1 was not allowed to go to school for the first two years of her incarceration. She returned to school in 1995.

141. Alone and isolated, Jane Doe 1 was desperate for a kind adult figure and social interaction. This desperation led her to become increasingly reliant on unit staff for any social interaction.

142. During this time, there were two TSCs regularly assigned to Jane Doe 1's unit: TSC Saunders and TSC Eric Berry.

143.    TSC Saunders fluctuated between being kind to Jane Doe 1 and reverting to playing cruel pranks or yelling at Jane Doe 1. She also began sharing inappropriate information with Jane Doe 1, including the circumstances of when she became sexually active.

144.    TSC Eric Berry, on the other hand, was consistently kind to Jane Doe 1 and spent more and more time talking with her. Upon information and belief, TSC Saunders observed the attention TSC Berry was devoting to Jane Doe 1 and other female residents and found it inappropriate. Upon information and belief, TSC Saunders reported TSC Berry for engaging in grooming behavior.

145.    At this time, TSC Berry was engaged to, and eventually married, a woman named Kathy [LNU], who worked as a secretary in the Main Building of the Youth Center. One day, while playing cards with Jane Doe 1, TSC Berry began to talk about his marital problems. He told Jane Doe 1 he was currently sleeping on an air mattress in the living room.

146.    Following that disclosure, TSC Berry began making more flirtatious comments to Jane Doe 1, telling her she was beautiful and "statuesque." He began "accidentally" bumping into or brushing up against her and telling Jane Doe 1 things like, "Jane Doe 1, you gotta stop looking at me like that, you're killing me" or "you can't be rubbing against me like that, you're gonna make me have bad thoughts."

147.    In or about January 1995, Jane Doe 1 came back from court, having just found out her case would not be transferred to the adult system. TSC Saunders was off that night and TSC Berry was working with TSC FNU Houlton. That evening, when TSC Houlton went to the bathroom, TSC Berry motioned to Jane Doe 1 to join him in the kitchen. When Jane Doe 1 walked into the kitchen, TSC Berry began kissing her mouth and groping her body. After the sexual assault ended, Jane Doe 1 went back to her cell and cried herself to sleep.

33

148.    After learning her case would not be bound over, Jane Doe 1 pled guilty. As Jane Doe 1 was no longer on "Hold for Court" status, she was transferred back to Cottage 8.  While Jane Doe 1 no longer saw TSC Berry daily, he began to send her letters. One day, during a locker search by TSC Sonia Smith, the letters were discovered and given to the Cottage Director Gerry Dugrandpre. He confiscated them and told Jane Doe 1 it was inappropriate for her to have that many letters from a staff member. Youth Center staff took no other action.

149.    While the staff in Cottage 8 remained verbally and physically abusive, Jane Doe 1 was grateful for the respite from the sexual abuse she had endured while in the FSP.

150.    In approximately 1995, Joseph Lehman became the new Commissioner of the MDOC. While on a tour of the Youth Center, Deputy Superintendent Robert Lancaster pointed to Jane Doe 1, noting to the Commissioner Lehman that Jane Doe 1 had recently been in the news for her offense. The next day, Deputy Superintendent Lancaster called Jane Doe 1 up to his office and let her know that the new commissioner believed it "didn't look good" for her to be able to walk around the facility and go to school with the other kids. Because of the seriousness of her offense, she had to be made an example of. Despite her good behavior, Deputy Superintendent Lancaster told Jane Doe 1 that for "security reasons" she was losing all her privileges and would be returning to FSP. Jane Doe 1 began to cry and begged him to let her stay. In response, Deputy Superintendent Lancaster smiled and said, "If you don't like it, don't get locked up."

151.    Upon her return to the FSP, TSC Berry immediately resumed his sexual abuse of Jane Doe 1. In the evenings, when Jane Doe 1 requested toilet paper or other items, he would enter her cell and grope her breasts.

152.    At the same time TSC Berry was sexually abusing Jane Doe 1, TSC Saunders also began exhibiting increasingly inappropriate behavior towards Jane Doe 1. TSC Saunders would

give Jane Doe 1 impromptu hugs and shoulder massagers. On one occasion, while rubbing Jane Doe 1's shoulder, TSC Saunders leaned down and kissed her ear. Jane Doe 1 recalled feeling TSC Saunder's tongue around the edge of her ear. Feeling uncomfortable, Jane Doe 1 told another TSC, Judy Redmond, about TSC Saunders's conduct. TSC Redmond told Jane Doe 1 she would report TSC Saunders.

153.    TSC Redmond reported TSC Saunders and the Youth Center opened an investigation. Youth Center Investigator Ralph Nichols led the investigation, and he made clear to Jane Doe 1, from the outset, that he did not believe her. At one point during the investigation, Investigator Nichols repeatedly interviewed Jane Doe 1 at the Androscoggin County Jail, where she had been transferred, without offering her an advocate or lawyer. During these interviews, he peppered her with questions about the alleged abuse. If Jane Doe 1 affirmatively failed to correct a fact or detail, he accused her of lying. He repeatedly cited to an instance where TSC Saunders had bought Jane Doe 1 a copy of the Nutcracker on VHS and asked Jane Doe 1, "would she have bought you a copy of the Nutcracker on VHS if she was tormenting you?" During one interview, he asked Jane Doe 1, "What do you mean she kissed you in your ear?" Jane Doe 1 responded that it had not been inside her ear technically as TSC Saunders tongue remained on the outside of her ear. Investigator Nichols got up, looked at her and said, "that's what I thought." He then stacked his paperwork and walked out. The Youth Centner closed the investigation, and Jane Doe 1 was transferred back to the Youth Center.

154.    When Jane Doe 1 returned to the Youth Center staff were cold and distant to her. She was marked as a child who had made a false accusation.

155.    In August 1996, TSC Berry and another TSC Norma Jean "Jeannie" Duhamel, were on duty in FSP. One evening, the girls were watching the Miss Teen USA pageant on TV, but Jane

Doe 1 went to bed early. About 15 minutes later, Jane Doe 1 heard footsteps down the hallway, and TSC Berry opened her door. TSC Berry entered Jane Doe 1's cell, unzipped his pants, and directed Jane Doe 1 to perform oral sex. Jane Doe 1 did as she was told. Afterwards, TSC Berry directed Jane Doe 1 to get on her bed and turn over. Jane Doe 1 again did as she was told. TSC Berry then got on the bed and attempted to penetrate Jane Doe 1's vagina with his penis. When he was unsuccessful, TSC zipped his pants and left. Jane Doe 1 cried herself to sleep. She awoke the next morning with blood in her underwear.

156.    After that incident, TSC Berry never tried to penetrate Jane Doe 1's vagina with his penis again. Instead, he would come to her cell, digitally penetrate her vagina with his fingers, and then direct Jane Doe 1 to perform oral sex on him.

157.    During this time, Jane Doe 1 reported the sexual abuse to TSC Judy Redmond, whom she had trusted with the information about TSC Saunder's abuse. This time, TSC Redmond took no action. Upon information and belief, TSC Kelly Blanding also observed TSC Berry behaving inappropriately to Jane Doe 1. She, likewise, took no action to report or stop the abuse.

158.    During a visit with her mother, Jane Doe 1 told her mother about TSC Berry's sexual abuse. Jane Doe 1's mother reported the abuse to Youth Center administrators. Shortly thereafter, Youth Center Investigator Steven Butts and A.L. Carlisle interviewed Jane Doe 1. While the men were polite, from the outset, Jane Doe 1 got the impression that, rather than investigate, they were attempting to disprove her account. Both men questioned Jane Doe 1 about what TSC Berry's penis and pubic hair looked like, whether she ever attempted to say, "no," and whether she exhibited any behaviors that encouraged him. Jane Doe 1 had no advocate – or other adult – present with her during these interviews.

159.    While the investigation was ongoing, TSC Berry was placed on leave. During one interview with A.L. Carlisle and Investigator Butts, the men asked Jane Doe 1 if she would be willing to confront TSC Berry to his face. Jane Doe 1 began to cry. While Jane Doe 1 initially begged them not to make her confront TSC Berry, following that meeting, Jane Doe 1 set herself to do it. During the next interview, Jane Doe 1 stated she was ready to confront TSC Berry.

160.    This confrontation never happened. Shortly thereafter, Investigator Butts came to meet with Jane Doe 1 in the FSP. He told her he believed her, but that TSC Berry was in the union, and without physical evidence, his hands were tied. Investigator Butts told Jane Doe 1 that TSC Berry would remain employed at the Youth Center but would no longer be working with female residents.

161.    Shortly after the termination of the investigation into TSC Berry, Jane Doe 1 was called to Deputy Superintendent Lancaster's office. Lancaster advised her that he would be reassigning her to Group 1, by information and belief the highest group at the Youth Center, and that they were "never discussing the allegation ever again."

162.    Sometime thereafter, Jane Doe 1 was placed on a special "monitoring" program. While in the monitoring program, Jane Doe 1 was required to be (1) accompanied by a staff member at all times, (2) shackled and strip-searched every time she left a room, and (3) remain an arm's length from any other Youth Center resident.

163.     Upon information and belief, the requirement that Jane Doe 1 be placed on the special monitoring program came from Deputy Superintendent Robert Lancaster and was imposed for punitive and retaliatory purposes without any type of due process.

164.    Upon information and belief, while in the monitoring program, Jane Doe 1, a victim of sexual abuse at the hands of Youth Center staff, was subjected to daily, humiliating and

37

degrading strip searches at the hands of other facility staff, including TSCs Ackley, Shaw, Poole, Thomas, and Wisecup.

165. Further, while in the monitoring program, Jane Doe 1 was not permitted to attend school or other facility programming. Instead, during the day, Jane Doe 1 was required to sit at a desk facing the wall with a staff member supervising her at all times. All her movements were logged.

166. Any time Jane Doe 1 was taken outside, she was required to be in shackles. Staff would take Jane Doe 1 outside and make her walk up and down the road in shackles for "exercise."

167. Any time Jane Doe 1 made any mention of her report against TSC Berry, she was dropped down a level. Upon information and belief, this directive came from Deputy Superintendent Lancaster.

168. In addition, staff began retaliating against Jane Doe 1 by sending her to ICU for small behavioral infractions. While in isolation in the ICU, Jane Doe 1 and other children were required to sit on their bed for eight hours without talking to earn the "good time" needed to be released from isolation. Any perceived behavioral infraction resulted in loss of good time credit.

169. "Good time" became a discretionary weapon deployed by certain staff members to further assert their power and punish the children. Over her years at the Youth Center, Jane Doe 1 had her ICU "good time" taken away for such arbitrary reasons as: (1) not being polite enough (Dr. Heath and Director DeGrandpre); (2) not responding quickly enough (Dr. Heath); looking out the window (TSC Popova); stretching her head over the side of the bed (TSC Johnson); accidentally referring to Deputy Superintendent Lancaster as "Bob" (TSC McDevitt); falling asleep (TSC Poole); swearing (TSC Napolitano); giving TSCs dirty looks (TSC Napolitano); and in response to Jane Doe 1's accusation that the TSCs were withholding her mail (TSC Creamer).

170.    Isolated and traumatized, Jane Doe 1 became increasingly depressed and desperate. Soon, she resorted to physically harming herself. At Christmas, Jane Doe 1 received an oil painting kit that came with a bottle of turpentine. Jane Doe 1 noted that the label on the bottle warned it was fatal if swallowed. She drank the entire bottle. She spent the next two days throwing up and defecating blood.



*Figure 2. Photograph of scars from Plaintiff Jane Doe 1 cutting herself while at the Youth Center.*

171.    Jane Doe 1 also began cutting her wrists. When inside the ICU, S Jane Doe 1 used tiles to cut her wrists. When outside the ICU, Jane Doe 1 used anything else she could find to cut her wrists: pen caps, razor blades, a piece of glass from a staff member's juice bottle. In response to her self-harming, Youth Center staff sent Jane Doe 1 back to the ICU.

172.    Upon information and belief, in 1996, Jane Doe 1 spent between 80 and 85 days in isolation.

173.    One day, Jane Doe 1 convinced her monitor, TSC Poole, to allow her to take a bath. After getting in the bathtub, Jane Doe 1 used razor blades she had smuggled in to cut her arms. Jane Doe 1 awoke sometime later to a nurse screaming and was transported to Maine Medical in an ambulance.

*Figure 3. Photograph of a scar from Plaintiff Jane Doe 1 cutting herself while at the Youth Center.*

174.    Upon Jane Doe 1's return to the Youth Center, Youth Center Psychologist Barbara Heath ordered that she be placed in restraints in isolation. Jane Doe 1 was taken to the old STU. Once inside the STU, staff restrained Jane Doe 1 in a restraint chair, with her arms shackled to her waist and her legs shackled to the chair.

175.    It was Martin Luther King weekend. Jane Doe 1 spent the entire three-day weekend shackled to the restraint chair. To use the bathroom, Jane Doe 1 had to use her elbow to knock against the wall of the cell to get a guard's attention.

176.    Jane Doe 1's next three years at the Youth Center were comprised of extended periods in isolation, suicide attempts, and trips to the hospital and other medical facilities following the suicide attempts. Upon information and belief, on one occasion, Jane Doe 1 spent six months in isolation, and on another occasion, Jane Doe 1 spent ten months in isolation.

177.    In January 1999, Jane Doe 1 was locked in the old FSP unit by herself for three months.

178.    In April 1999, Youth Center staff decided Jane Doe 1 needed to learn job skills as her release date was approaching and arranged for her to do administrative work in the Main Building.

179.    One month later, the Youth Center approved Jane Doe 1's release to live with another former resident at an apartment in Portland, Maine. Within weeks, that placement fell apart. The State of Maine Department of Health and Human Services (DHHS) paid for Jane Doe 1 to live in a hotel room.

180.    Shortly thereafter, Jane Doe 1 began drinking and stopped checking in with her probation officer. Jane Doe 1 moved in with her mother, who continued to struggle with alcoholism. Jane Doe 1 stayed with mother until, one day, she received a call from her mother that she believed there were Youth Center cars outside the house.

181.    Panicked at the thought of going back to the Youth Center, Jane Doe 1 moved in with a man she had been dating. Within a short period of time, that man began physically abusing

Jane Doe 1. With nowhere to go, Jane Doe 1 turned herself into adult probation and spent the next six months at the Cumberland County Jail.

182. While at Cumberland County Jail, Jane Doe 1 met a guard at the jail, who "took her in." Jane Doe 1 and the guard later married.

183. Due to her serious medical and mental health issues and trauma, Jane Doe 1 did not recognize that what happened at the Youth Center was not her fault. She was told repeatedly that her own actions resulted in isolation and abuse, and that Youth Center staff could lawfully engage in such conduct.

184. As a result of the abuse she endured year after year in the Youth Center, Jane Doe 1 suffers from serious mental illnesses, including, but not limited to, personality disorders, PTSD, agoraphobia, and a grossly exaggerated startle response.

185. To cope with her mental illnesses, Jane Doe 1 spent years after being released from incarceration in a small room in her basement – mimicking the small cells in ICU. Indeed, until 2021, Jane Doe 1 spent most of her day sitting in a chair alone in this room.

186. To this day, Jane Doe 1 cannot drive.

187. Until 2023, Jane Doe 1 was unable to maintain meaningful employment.

188. As a result of her mental illness, at all times pertinent hereto, Jane Doe 1 has been unable to protect her legal rights.

## II.    JOHN DOE 1

189. John Doe 1 was eleven years old when, in 1992, he was committed to the Youth Center. At the time of his admission, John Doe 1 weighed less than 100 pounds.

190. Before his commitment to the Youth Center, John Doe 1 grew up in an impoverished, unstable household. John Doe 1 was raised by a single mother who struggled with

41

substance abuse following the death of John Doe 1's father when John Doe 1 was 7. Unable to care and provide for John Doe 1, John Doe 1 grew up on the streets of Waterville, Maine, where he stole food to survive.

191.    He was repeatedly charged by the State with juvenile criminal conduct.

192.    When John Doe 1 arrived at the Youth Center he was suffering from mental illness, chronic neglect, and emotional and physical abuse. At the time of his commitment, he had been diagnosed with PTSD, ADHD, depression, anxiety, agoraphobia, bipolar disorder, and drug and alcohol abuse disorders.

193.    Upon arrival at the Youth Center, Youth Center staff housed John Doe 1 in Cottage 1, the "hold for court" cottage. Following the adjudication of his offense, John Doe 1 was required to complete 120 credits to leave the Youth Center - the maximum number of credits available.

194.    From the outset, John Doe 1 struggled to adapt to the Youth Center's prison environment, and the staff and administrators immediately targeted him as a "trouble kid." To that end, Youth Center staff quickly moved John Doe 1 from Cottage 1 to the ICU.

195.    Upon information and belief, in 1992, John Doe 1 spent at least two months isolated in the ICU.

196.    Upon information and belief, in 1993. John Doe 1 spent 50 percent of his time isolated in the ICU.

197.    Upon information and belief, in 1994 and 1995, John Doe 1 spent more than 50 percent of his time isolated in the ICU.

198.    As stated *supra*, while confined in the ICU, children were required to remain silently seated on their beds to earn "good time" for their release.

42

199.    As stated *supra*, the ICU cells were brutally hot in the summer and bitterly cold in the winter. Further, ICU cell windows were painted over so that no light could shine through, and as a result, the children confined there never knew whether it was day or night.

200.    Further, as stated *supra*, while confined in the ICU, children were not permitted to attend school. As such, John Doe 1 rarely attended school while at the Youth Center.

201.    Unsurprisingly, John Doe 1 struggled to comply with the strict and arbitrary rules of the ICU. He would act out by "racking off" in his cell (or make noise in his cell, including yelling and/or banging on the door).

202.    In response to John Doe 1 "racking off" or, on other occasions, entirely unprovoked, ICU staff members, including TSCs Factor, Kane, Hasson, Clock, Thurlow, and others, would rush into his cell, assault John Doe 1, and put him in restraints.

203.    The abuse went beyond "responding" to racking off. For example, TSC Factor, who held a black belt in karate, practiced his karate moves on John Doe 1 and the other children confined in the ICU. His partner, TSC Kane, frequently joined in.

204.    TSC Factor would also choke children in the ICU. On more than one occasion, TSC Factor choked John Doe 1 until John Doe 1 passed out due to lack of oxygen.

205.    On another occasion TSC Hasson picked up John Doe 1 and dropped him on his head.

206.    Staff assaults in the ICU included sexual violence. On one occasion, TSC Thurlow digitally penetrated John Doe 1's anus with his thumb. On yet another occasion, TSC Dickson penetrated John Doe 1's anus with a zip tie. TSCs Dickson and Clock also grabbed and fondled John Doe 1's genitals regularly during strip searches.

207. During several of these sexual assaults, ICU Unit Director Mack observed the sexual abuse but did nothing in response. Unit Director Mack neither video recorded the incident nor intervened to stop the abuse of John Doe 1, a child in his care and custody.

208. When ICU staff members wanted to punish a child, they would designate that child a suicide risk. Once designated as a suicide risk, staff placed the child in an "observation cell," where staff removed all the child's clothing, sheets, and bedding.

209. While in the ICU, staff designated John Doe 1 as a suicide risk. After staff placed John Doe 1 in the observation cell, TSCs Factor, Hasson, Clock, Thurlow, and others would enter the cell and proceed to hit and punch John Doe 1, who was completely naked. They would also pull and hit his penis and testicles.

210. Following these assaults, ICU staff would restrain John Doe 1 with zip ties around his ankles and his calf muscles, zip ties around his wrists, and a leather belt that pinned his arms to his waist. To literally cap it off, staff would place a football helmet on John Doe 1's head and tie the helmet to the belt around his waist.



211. John Doe 1 was left so restrained for up to 18 to 24 hours at a time. This led to John Doe 1 developing painful lacerations on his body from overly tight zip ties, excruciating pain from being restrained in an inhumane position for prolonged periods of time, and numbness from his hands and feet receiving restricted blood flow.

*Figure 4. Photograph of scars from Plaintiff John Doe 1 cutting himself while at the Youth Center.*

212. The more time he spent in isolation, the more helpless and hopeless John Doe 1 felt. John Doe 1 became an actual suicide risk and, on approximately fourteen occasions, cut his wrists and arms.

213. While on suicide watch, a doctor with the Youth Center, Psychologist Barbara Heath, conducted medical checks on John Doe 1. During these checks, Dr. Heath, on several occasions, observed John Doe 1 lying on a cell floor, beaten and in zip ties. Rather than intervene and render John Doe 1 medical aid, Dr. Heath, would say something to the effect of, "I see everything is going well here," before walking off and failing to complete a medical assessment.

214. In response to the abuse and conditions of confinement, John Doe 1 and other children in the ICU wrote complaints to Youth Center Deputy Supervisor Lancaster about what they were enduring. Lancaster, in turn, wrote back "you have it better than most down there in ICU." When Lancaster visited the ICU, he would sometimes state, "you guys are living real good down here. I'll have to put a stop to that." At the time, the children had no sheets, blankets, food, or heat.

215. Indeed, John Doe 1 often went without food in the ICU. ICU staff frequently withheld bagged lunches from children or used food as a means to harass and humiliate children. For example, some TSCs, like TSC Thurlow, made children eat pudding and other food without the use of their hands. Others, like TSC Dickson, spat in John Doe 1's food and threw it on the floor.

216. John Doe 1 and other children in ICU became so hungry that they figured out how to "lasso" the food cart from under their cell doors, so that the cart would tip over, and they could gather the spilled crumbs.

217. One friendly ICU TSC observed that John Doe 1 was not receiving adequate food and snuck John Doe 1 milk, cereal, bread, and sugar. That same guard gave John Doe 1 a piece of tile to cut his arm so John Doe 1 could be taken to the hospital and get a break from the brutality of the ICU.

218.    In addition to proving inadequate food, ICU staff failed to provide John Doe 1 with a toothbrush or toothpaste for prolonged periods of time.

219.    In 1995, John Doe 1 and two other children were taken from the "new" ICU and placed in the decrepit "old" ICU for months. Staff in the old ICU also often failed to provide John Doe 1 with clothing or adequate food.

220.    Further, for the majority of the time he was in the old ICU, John Doe 1 was housed in room 3, which lacked running water. During this time, John Doe 1 was also housed in room 6, which was freezing in the winter, with snow sometimes blowing in through cracks.

221.    Staff physically and sexually assaulted John Doe 1 without penological or other valid justification while he was in the old ICU. For example, staff would enter John Doe 1's cell and give a pretextual reasons, such as that he was "blocking the light," before engaging in violence. TSC Thurlow and TSC Dickson abused John Doe 1 by grabbing his penis and kneeing him in the testicles while ordering him to stop resisting. On one occasion, TSC Dickson pinned John Doe 1's testicles with his elbow, leaning his full weight into them.

222.    Upon information and belief, at the end of 1995 or early 1996, staff viciously beat John Doe 1 while he was in an ICU observation cell. The incident started when other children in the ICU began yelling and racking off. In response, TSCs entered the children's cells to use physical force and restraints. Several guards, including TSCs Jack Purdy, Clock, and Dickson entered the observation cell to punish John Doe 1 for allegedly leading the disruption. Once inside, they physically assaulted John Doe 1, and zip tied his wrists. TSC Purdy put his weight



*Figure 5. Photograph of scars from restraints TSCs used against Plaintiff John Doe 1 at the Youth Center.*

on John Doe 1's arm and pulled the zip-tie as hard as he could, causing the zip ties to cut into John

Doe 1's wrists and blood to flow out. Moments later, with an audible snap, John Doe 1's arm broke under the weight. TSC Purdy and the other TSCs left John Doe 1, with his broken arm still in zip ties, on his cell floor. Neither the TSCS nor Director Mack, who observed the assault, rendered John Doe 1 medical aid.

223.   Meanwhile, worried that the TSCs would kill John Doe 1, the other children in the ICU gave "commitments" to stop "racking off," in exchange for the guards stopping their beating of John Doe 1. Even after those commitments were obtained, the TSCs still did not remove John Doe 1's restraints or render him medical aid.

224.   Sometime later, Youth Center Nurse Kathleen Gesner entered the ICU and cried out when she saw John Doe 1. She cut John Doe 1's restraints.

225.   Because of the obvious bone fracture, TSCs transported John Doe 1 to the Mercy Hospital. During the transport, the TSCs apologized to John Doe 1, saying, "we didn't know how bad it was."

226.   At the hospital, doctors put a soft cast on John Doe 1's arm because of the severe lacerations from the zip-ties. Upon his release from the hospital, John Doe 1 was housed in Cottage 4 rather than the ICU. The head of Cottage 4, Nancy Cochrane, wept when John Doe 1 told her what had occurred.

227.   When, a short time later, TSCs arrived to take John Doe 1 to the ICU, Ms. Cochrane refused to transfer custody of John Doe 1, saying, "you are not going to hurt him anymore." Instead, she took John Doe 1 to ICU.

228.   Shortly thereafter, Ms. Cochrane met with Youth Center management and, upon information and belief, argued for John Doe 1's release from the Youth Center. Ultimately, Youth

Center administrators decided to release John Doe 1 to his mother with the condition that he wear an electronic ankle bracelet.

229.   Yet, before that release could take place, John Doe 1 learned he was to be bound over as an adult. Desperate for release from the Youth Center, at 15 years of age, John Doe 1 consented to be bound over to the Maine State Prison.

230.   Since his release, John Doe 1 has never worked meaningfully.

231.   John Doe 1 has never had a driver's license.

232.   John Doe 1, until 2019, has never leased an apartment or owned a home.

233.   John Doe 1 is disabled and receives Social Security Disability payments monthly.

234.   John Doe 1 suffered from mental illness in 1992 when he was committed to the Youth Center and continues to do so today.

235.   John Doe 1, due to his mental health issues, was unable to recognize that what happened at the Youth Center was not his fault. He was told repeatedly that his own actions resulted in his isolation and justified the physical and sexual abuse he survived.

236.   On November 15, 2019, John Doe 1 underwent a psychological evaluation conducted by Gary Rasmussen, PhD for a Social Security Disability proceeding. Dr. Rasmussen cited the following psychiatric diagnoses: PTSD, Anxiety Disorder with Panic Attacks, Claustrophobia, Social Phobia, Polysubstance Dependence Disorder in remission, Intermittent Explosive Disorder, in remission and antisocial personality disorder. Dr. Rasmussen concluded that John Doe 1 was unable to be employed because of his psychiatric illnesses.

237.   As a result of his mental illness John Doe 1 has, at all pertinent times, been unable to protect his legal rights.

III.   **JOHN DOE 2**

48

238.    John Doe 2 was first sent to the Youth Center on October 6, 1995, when he was just 13 years of age for stealing a jacket from a school locker.

239.    Prior to his commitment to the Youth Center, John Doe 2 had a traumatic childhood. John Doe 2's father, who suffered from serious mental illness, abused his mother. When John Doe 2 was just six years old, he witnessed his father rape his mother and threaten to slit her throat and throw her, John Doe 2, and his little brother over a third-floor balcony. According to John Doe 2's mother, it was John Doe 2 who – at just six years old – told her she needed to leave his father, or they would all wind-up dead.

240.    Witnessing this abuse deeply impacted John Doe 2.  John Doe 2 first tried to commit suicide when he was six years old, when he attempted to drown himself.

241.    While John Doe 2's mother eventually left his father, her new boyfriend physically abused John Doe 2. His mother witnessed the abuse but did nothing. When John Doe 2 was 12 years old, he reported that his stepfather was molesting his brother. DHHS commenced an investigation, and his stepfather was forced to temporarily leave the home. When DHHS questioned John Doe 2's brother, he denied the sexual abuse. John Doe 2's mother responded with anger to John Doe 2, who shortly thereafter retracted the allegation. His stepfather moved back home.

242.    By 12 years of age, John Doe 2 began using drugs and alcohol and acting out physically. His first psychiatric hospitalization occurred the same year, in 1993.

243.    Immediately prior to his incarceration at the Youth Center, John Doe 2 received in-patient treatment at the Jackson Brook Institute and St. Mary's hospital.

244.    When John Doe 2 arrived at the Youth Center, Youth Center staff and administrators knew or should have known of John Doe 2's background of (1) severe neglect and

abuse and (2) serious mental health needs, including John Doe 2's history of prior psychiatric hospitalizations, history of suicidal ideations and attempts, diagnosis for conduct disorder, and depression.

245.    John Doe 2 was at the Youth Center for just six days before being confined in isolation in the old ICU. As aforementioned, the old ICU was derelict and unfit for habitation, with no natural light, no windows, poor ventilation, excessive heat in the summer, little heat in the winter, frequent insect infestations, and cell walls covered with blood and bodily fluids.

246.    Over the next nine months, John Doe 2 spent over 100 days in isolation. Upon information and belief, Youth Center Deputy Superintendent Lancaster directed staff to remove John Doe 2 to the ICU/STU any time he engaged in any misbehavior, no matter how minor. Upon information and belief, John Doe 2 was sent to ICU or had his stay in ICU approved or extended by Defendants Heath, Boisot, Mack, DeWitt, Allenwood, Albert, Dufresne, McDermott, Lewandowska, Guzman, Smith, Hasson, Rogers, Clancy, and Tilly.

247.    Unsurprisingly, the prolonged periods in isolation aggravated John Doe 2's mental health symptoms. This in turn caused John Doe 2 to struggle to control his behaviors during the short periods of time he was not in isolation.

248.    From July 16, 1996, until his release in September 1998, John Doe 2 spent the majority of his time in isolation, primarily placed in ICU/STU isolation, with intermittent stays at the NSB.

249.    While in the ICU, John Doe 2 could not attend school, receive family visits, or engage in social interaction with other children.

250.    While in the ICU, Youth Center staff frequently failed to provide John Doe 2 with adequate food.

251.    While in the ICU, staff routinely removed John Doe 2's clothing, including his underwear, leaving John Doe 2 naked in his cell for long periods of time. Further, if John Doe 2 yelled after 8:00pm, staff would also remove his mattress for 24 hours as punishment.

252.    While in the ICU, Youth Center staff repeatedly and needlessly subjected John Doe 2 to invasive and degrading strip-searches. Every time John Doe 2 was sent to the ICU, staff strip-searched John Doe 2. Then, when he arrived at the ICU, staff strip-searched John Doe 2 again. Once inside the ICU, staff would subject John Doe 2 to additional unneeded strip-searches. Upon information and belief, Youth Center Deputy Superintendent Lancaster directed these strip-searches.

253.    In addition to unnecessary and degrading strip-searches, ICU staff sexually abused John Doe 2. Specifically, TSC Garrett Smith repeatedly hugged, kissed, and inappropriately touched John Doe 2. Further, on several occasions, TSC Smith videotaped John Doe 2 masturbating when there was no legitimate penological reason to do so.

254.    Unsurprisingly the conditions of confinement and abuse caused John Doe 2's mental health to further deteriorate. John Doe 2 experienced dissociation while in isolation—experiencing out-of-body sensations—and psychotic breaks. As a result, John Doe 2 would continuously rock back and forth while in the ICU, which he continues to this day.

255.    Youth Center Psychologist Dr. Heath frequently "treated" John Doe 2 with medical visits lasting one to two minutes.

256.    John Doe 2 became unable to control his symptoms. The more he acted out in desperation, the more abuse he endured at the hands of Youth Center staff.

257.    When John Doe 2 "racked off", or even just stood by the window of his cell door, Youth Center staff, including TSCs Guzman, Hasson, Smith, and Rogers would enter his cell,

tackle him to ground, and place extremely tight plastic restraints around his wrists and ankles. The restraints were so tight that within 20 minutes, John Doe 2's hands would turn black and swell and he would experience extreme pain in his hands and shoulders, causing him to cry out in pain.

258. ICU staff ignored his cries and distress, repeatedly leaving John Doe 2 in such restraints for six to ten hours at a time. Upon information and belief, Deputy Superintendent Lancaster approved John Doe 2's extended placement in such restraints.

259. On other occasions, TSCs Guzman, Hasson, Smith, and Rogers would enter his cell, tackle him to ground, and place John Doe 2 in the restraint chair. Upon information and belief, between July 1996 and September 1997, ICU staff placed John Doe 2 in the restraint chair on approximately eight separate occasions.

260. Once there, John Doe 2 remained in the restraint chair for up to 12 hours at a time. While in the chair, staff refused to take him to the bathroom, forcing John Doe 2 to defect and urinate in the chair. Upon information and belief, Deputy Superintendent Lancaster approved John Doe 2's extended placement in the restraint chair.

261. Desperate to abate the assaults by guards, John Doe 2 resorted to smearing his own feces and urine all over his body.

262. Desperate to escape these inhumane conditions, John Doe 2 also engaged in self-harm, including repeatedly cutting his wrists or elbow seriously enough to require stitches. In one instance, John Doe 2 cut himself so deeply that the wound required 30 stitches.

263. Between June 1997 and June 1998, John Doe 2 cut himself on six separate occasions. As a result, Youth Center staff transported John Doe 2 to Mercy Hospital on three separate occasions in just three weeks. After his first discharge from the hospital and return to the Youth Center, staff placed John Doe 2 in the ICU on constant watch. After his second discharge

from the hospital and return to the Youth Center, staff placed John Doe 2 in the ICU in restraints. Upon information and belief, on this occasion, John Doe 2 was left in restraints for hours.

264.    In addition to attempting suicide, John Doe 2 resorted to cutting himself simply to be transported to the hospital to escape his inhumane conditions of confinement.

265.    In July 1998, a psychiatric examination concluded that "unless intensive treatment is started as soon as possible, this boy will go on to have an extremely difficult life, difficult for him personally and difficult for society."  Shortly thereafter, John Doe 2 was removed from the Youth Center by court order and sent out of state to the Devereaux Juvenile Facility.

266.    Following release from the Youth Center, John Doe 2 was determined to be incompetent, and a guardian was appointed by the court.

267.     In 1999, and at the age of 18, John Doe 2 received Social Security for his mental illness.

268.    John Doe 2 has never held a driver's license.

269.    Since his release from the Youth Center, John Doe 2 has had multiple other psychiatric hospitalizations. He has been committed to the Augusta Mental Health Institute and Riverview Psychiatric hospital.

270.    John Doe 2 currently receives Social Security payments monthly.

271.    John Doe 2 suffers from drug addiction.

272.    John Doe 2 has been homeless or incarcerated for almost his entire adult life.

273.     John Doe 2, due to serious and ongoing mental health issues, was unable to recognize that what happened at the Youth Center was not his fault. He was told repeatedly that his own actions resulted in his isolation and abuse and that Youth Center staff could legally engage in such conduct.

274.    As a result of his mental illness John Doe 2, at all pertinent times, has been unable to protect his legal rights.

## IV.    JOHN DOE 3

275.    John Doe 3 arrived at the Youth Center in December 1994, when he was just 12 years old.

276.    Like many other children incarcerated at the Youth Center, John Doe 3's childhood was unstable and included neglect and physical abuse. John Doe 3's father was in and out of prison for his entire childhood and his mother was overwhelmed with raising four children.

277.    At six years of age, John Doe 3 was taken into DHHS custody and placed with his aunt.

278.    Over the next six years, John Doe 3 repeatedly got into trouble for running away, truancy, and theft.

279.    At 11 years old, John Doe 3 was diagnosed with Attention-Deficit/Hyperactivity Disorder ("ADHD").

280.    Upon arrival at the Youth Center, John Doe 3 was placed in Cottage 1 with the other "Hold of Courts." It was determined that John Doe 3 could be eligible for release within eight months.



*Figure 6. Photograph of Youth Center Cottage 1.*

281.    At that time of his arrival at the Youth Center, Supervisor Mack oversaw Cottage 1 and required strict compliance with cottage rules. Other Cottage 1 staff included TSCs Rogers, Thurlow, and Campbell.

282.    Because Youth Center staff believed John Doe 3 to be an escape risk, they placed him on the "shackle program," which required John Doe 3 to always be shackled.

283.     Shortly after his arrival in Cottage 1, John Doe 3 got in trouble for talking back and refusing to participate in his required "reflections." As a consequence, Cottage 1 staff sent him to the ICU. Upon information and belief, John Doe 3 spent eight weeks in Cottage 1, but for three of those eight weeks he was isolated in the ICU.

284.     In the ICU, Youth Center staff required John Doe 3 to sit silently on his bed with his hands on his lap. Further, staff removed John Doe 3's clothes, leaving him only in his boxers. If he failed to comply with ICU rules, staff also removed his mattress. Unable to control his ADHD symptoms in the endless hours of tedium, John Doe 3 acted out, resulting in an extension of his stay.

285.     After John Doe 3 was committed by a State juvenile court, he was transferred to Cottage 6. Upon information and belief, at that time, Cottage 6 was staffed by TSCs Hawkins, Whelan, C. Coyne, Thurlow, Tardiff, Bell (male), and Bell (female).

286.     Violent fights between children and physical assaults by staff were a regular feature of John Doe 3's life in Cottage 6. On one occasion, John Doe 3 witnessed another child, after a day of being antagonized by staff, snap and try to assault staff members with a fire extinguisher. Another time, John Doe 3 "talked back" to TSC Coyne. In response, TSC Coyne jumped him in the Cottage 6 boot room, slamming John Doe 3's head into the cement wall before hog-tying John Doe 3's hands and feet. Afterwards, staff threw John Doe 3 in the truck and transported him to the ICU.

287.     At that time John Doe 3 was housed in Cottage 6, all children showered in communal showers located under the gym. Sexual abuse of children by old children as well as Youth Center staff during the communal showers was rampant.

288.    John Doe 3 was 13 years old the first time he was sexually assaulted by a staff member while showering. One day during shower time, TSC Thurlow called John Doe 3 into the locker room office. When John Doe 3 entered the office, TSC Thurlow informed John Doe 3 he was being "stripped search." Alone in the office with TSC Thurlow, John Doe 3 was directed to put his hands on the wall, bend over, and cough. John Doe 3 did so. TSC Thurlow then fondled his scrotum and penis, before inserting his finger in John Doe 3's anus. John Doe 3 felt that this was wrong but believed there was nothing he could do about it as he was a child at the Youth Center and TSC Thurlow was a guard.

289.    John Doe 3 eventually tried to escape Cottage 6. As punishment, he was confined in isolation in the ICU for a month.

290.    Once inside the ICU, Youth Center staff placed John Doe 3 in a cell with only his underwear for clothing and ordered him to stay silent. John Doe 3's ICU cell had lead paint chips scattered everywhere and excrement and blood smeared across the walls and floor.

291.    While housed in the ICU, John Doe 3 was not permitted to attend school.

292.    Food was provided to John Doe 3 in the ICU through a little slot in his cell door.

293.    Any perceived behavior infraction would result in an automatic extension of John Doe 3's time in the ICU. If he spoke, he would automatically be kept in the ICU for another 72 hours. Other punishments for perceived behavioral issues included staff taking John Doe 3's bed out of his cell, putting John Doe 3 in restraints, or withholding food from John Doe 3.

294.    While at the Youth Center John Doe 3 received inadequate medical treatment for his serious mental health issues. Youth Center Psychologist Dr. Heath visited John Doe 3 three times a week while he was in the ICU. Each of these medical sessions lasted approximately 2 to 3 minutes.

295.    While John Doe 3 remained isolated in the ICU, TSC Thurlow's sexual abuse continued. Approximately twice a week TSC Thurlow would enter John Doe 3's ICU cell under the guise of conducting a "strip search" and grope John Doe 3's penis.

296.    Upon information and belief, John Doe 3's longest stay in the ICU lasted for nine months. On another occasion he spent seven months in the ICU. The longer John Doe 3 stayed in the ICU, the more his mental health deteriorated and the more he acted out. The more he acted out, the more violent the response from staff became.

297.    If John Doe 3 began "racking off" or yelling, four to six staff members, including TSCs Thurlow, Berry, C. Coyne, J. Coyne, Smith, M. Nee. Farr, Bell, Whelan, Foust, Campbell, Rogers, Clock, Owens, and Hawkins would rush into his cell and "wrap [him] all up." They would choke, punch, and knee him, including intentionally hitting and kneeing his genitals. Afterwards, they would restrain John Doe 3, with his ankles and wrists zip-tied behind him in a stress position and leave the cell. Sometimes they would leave John Doe 3 in this stress position on his bed, but, if bed had been removed, they would simply leave him on the cold cement floor. Supervisor Mack often supervised these uses of force.

298.    ICU staff would leave John Doe 3 in such restraints for hours at a time, until his feet turned black and blue and went numb. Other times, they put him in the restraint chair.

299.    On one occasion while housed in the ICU, TSCs C. Coyne, Hawkins, M. Nee, Bell and Whelan tackled John Doe 3 in his ICU cell. They then hogtied John Doe 3 — cuffing his wrists behind ankles, cuffing his ankles, and connecting a chain between the two sets of handcuffs. They beat him in this defenseless position, where he posed no threat to himself and others, and broke his nose. They released John Doe 3 from this inhumane restraint only to re-restrain him in the

restraint chair. When John Doe 3 said he needed to use the restroom, they told him to "go" while in the chair. The only "medical treatment" John Doe 3 received was Q-tips stuck in each nostril.

300. On another occasion, one of these TSCs broke John Doe 3's fingers while wrestling with him.

301. On another occasion, TSC Foust put John Doe 3 in the restraint chair, choked him, and purposefully tightened the restraints to inflict pain.

302. On another occasion, TSC Campbell "choked [John Doe 3] out" while John Doe 3 was in the restraint chair and purposefully tightened the cuffs until John Doe 3's hands turned purple.

303. On another occasion while in the ICU, John Doe 3 spit on TSC J. Coyne. In response, five to six TSCs rushed into his cell, tackled him, and hog-tied him with zip ties. They left him hogtied for 12 hours.

304. During his time at the Youth Center, staff members repeatedly told John Doe 3 that everything that happened to him at the ICU was his fault. He was also told that his "rights" had been taken away when he was sent to Youth Center.

305. In 1999, when John Doe 3 was just 16 years old, Supervisor Brian MacDougall convinced John Doe 3 to consent to a bind-over to the adult system, telling him things would be better at the adult prison. John Doe 3's lawyer advised him against consenting to the bind over. However, desperate to leave the Youth Center, John Doe 3 signed the paper to consent to the bind over.

306. In 1999, John Doe 3 was transferred to the Maine Correctional Center (MCC). Shortly thereafter, he was transferred to the Maine State Prison (MSP). Although John Doe 3 was

terrified to be in an adult correctional facility, he found that there was less violence at the MCC and MSP than at the Youth Center.

307.    After leaving the Youth Center, John Doe 3 was diagnosed with PTSD. He took Seroquel, an antipsychotic medication, for ten years following that diagnosis.

308.    John Doe 3 was released in 2006. For years following his release, John Doe 3 struggled with drug addiction.

309.    Following his release, John Doe 3 also struggled, and continues to struggle, with crippling anxiety, suicidal ideations, difficulty managing his anger, severe mood swings, intrusive thoughts, impulse control, and hypervigilance. He suffers flashbacks from the sexual abuse and torture inflicted upon him by TSCs and other Youth Center staff.

310.    John Doe 3 is only able to sleep three to four hours a night.

311.    John Doe 3, due to his mental health issues, was unable to recognize that what happened at the Youth Center was not his fault. He was told repeatedly that his own actions resulted in isolation and other tortures and that Youth Center staff could legally engage in such conduct.

312.    As a result of his mental illness John Doe 3, at all pertinent times, has been unable to protect his legal rights.

## V.    JOHN DOE 4

313.    John Doe 4 was first sent to the Youth Center in 1996, when he was just 15 years of age. At the time, John Doe 4 was 5 feet 4 inches tall and weighed approximately 100 pounds.

314.    John Doe 4 spent the first 13 years of his life in Lewiston, Maine, in an unstable household. John Doe 4 did not have a relationship with his father, and his mother struggled with substance use disorder.

315.    As a young child lacking strong parental support, John Doe 4 fell into the wrong crowd and got into legal trouble. When John Doe 4 was 13 years old, a court committed him to the Youth Center until he was 17 years old. However, after issuing that commitment, the court suspended the commitment on the condition that John Doe 4 successfully complete time at the Opportunity Farm, a residential home for boys located in New Gloucester, Maine.

316.    John Doe 4 spent 21 months at the Opportunity Farm. However, in 1995, John Doe 4 was discharged by his mother.

317.    Just three weeks later, John Doe 4's mother was killed in a car accident. John Doe 4 was placed with his grandparents.

318.    Shortly thereafter, John Doe 4 was taken to the Youth Center.

319.    John Doe 4 spent the next four years cycling in and out of the Youth Center.

320.    During John Doe 4's first stay at the Youth Center, he was placed in Cottage 6 with the youngest children. Despite the facility's knowledge that John Doe 4 had recently lost his mother, John Doe 4 received no grief or other mental health counseling.

321.    One day, during the communal Cottage 6 showers, John Doe 4 removed a handcuff key from TSC Thurlow's key ring that TSC Thurlow had left in the shower area. John Doe 4 gave that key to John Doe 3. The following day, John Doe 3 used that handcuff key and escaped during a court appearance.

322.    Thereafter, TSC Thurlow used this incident as a pretext to unnecessarily strip search John Doe 4 for purposes unconnected to legitimate penological needs. During these strip searches, TSC Thurlow would grope John Doe 4's testicles and penis, pull apart John Doe 4's butt cheeks, touch, and, on occasion, digitally penetrate John Doe 4's anus with a gloved finger. While fondling John Doe 4's penis, TSC Thurlow would also make inappropriate sexual remarks,

including commenting on the size of John Doe 4's penis and, because he was pre-pubescent, asking "when he was going to grow up."

323.    On March 21, 1997, when John Doe 4 was admitted to the Youth Center for a second time, he received a Psychological Screening/Needs Assessment Evaluation. Upon information and belief, the purpose of the screening and evaluation was to identify treatment needs for the screened child. John Doe 4's evaluation noted that his mother had "died unexpectedly in an accident approximately 14 months ago" and that "[t]his was an unexpected death which John Doe 4 [had] not received any formal counseling for." The evaluation recommended John Doe 4 receive counseling "with somebody who can deal with complicated grief issues" and that John Doe 4 receive treatment for management and control of aggression. Despite this recommendation, John Doe 4 received no meaningful counseling or treatment for those, or any other, mental health issues.

324.    Instead of therapy and treatment, Youth Center staff placed John Doe 4 in isolation. Upon information and belief, Youth Center staff placed John Doe 4 in isolation in the ICU, SMU, and NSB.

325.    Prior to his incarceration John Doe 4 had been a good student, but in the ICU, he was not permitted to attend school for weeks and months at a time.

326.    Likewise, upon information and belief, while in the ICU, John Doe 4 was prohibited from meaningful interaction with other humans for weeks and months at a time.

327.    Some children confined in the NSB were permitted to attend school, but John Doe 4 was not. Instead, Youth Center staff frequently kept John Doe 4 isolated in his locked NSB cell.

328.    While in the ICU or locked into his cell in the NSB, John Doe 4 was not allowed to communicate with other children. If he did so, TSCs Berry, Thurlow, Foust, Coyne, Clock, Nee,

Turner, Moreau, and Dotay would "come in hard," pummeling, kneeing, and forcing John Doe 4 to the ground. Frequently, they put a knee on his neck, constricting his ability to breathe. Upon information and belief, TSCs entered John Doe 4's ICU, STU or NSB cell and used unreasonable and excessive physical force against him on fifteen separate occasions.

329.    Following these use-of-force incidents, TSCs often zip tied John Doe 4's hands and feet, before leaving him, so restrained, of his cell floor for hours at a time.

330.    Other times, following these use-of-force incidents, TSCs placed John Doe 4 in the restraint chair, where he was left for hours at a time. On multiple occasions, John Doe 4 was forced to urinate in the restraint chair because TSCs refused to release him to use the bathroom.

331.    On one occasion, John Doe 4, who, as stated *supra*, weighed only 100 pounds, slipped his hands out of the handcuffs while in the restraint chair. Unable to undo his feet, John Doe 4 stood up in the chair. In response, TSC Whelan came up behind John Doe 4 and choked him until John Doe 4 lost consciousness. When John Doe 4 regained consciousness, he was drenched in sweat, shaking uncontrollably, and coughing up blood. Rather than provide him with reasonable medical care, TSCs immediately re-cuffed his hands, put a helmet on his head, and secured him in the restraint chair. Upon information and belief, a Youth Center nurse, Nurse Gesner, witnessed this incident and reported TSC Whelan's conduct.

332.    While in the ICU, TSCs subjected John Doe 4 daily, unnecessary, and degrading strip searches.

333.    In particular, when TSC Thurlow worked in ICU, TSC Thurlow subjected John Doe 4 to daily strip searches, during which TSC Thurlow stroked and fondled John Doe 4's penis.

334.    The longer John Doe 4 was confined in isolation, the more his mental health deteriorated. John Doe 4 was so desperate that he began to self-harm. To that end, John Doe 4

banged his head on the concrete cell walls, punched the concrete cell walls, and cut himself with any sharp material he could find. As a result, staff placed John Doe 4 on the "cutters list."

335.    Rather than provide reasonable and necessary medical treatment and care, facility staff responded with more isolation and punishment.

336.    Youth Center Psychologist Barbara Heath visited John Doe 4 in ICU. Instead of compassion, care, or treatment, Dr. Heath would accuse John Doe 4 of malingering.



337.    In addition to accusing him of malingering, Dr. Heath would also threaten John Doe 4 with suicide prevention procedures and use of restraints as a punishment for being disrespectful.

*Figure 7. Youth Center Memorandum written by Defendant Barbara Heath about Plaintiff John Doe 4.*

338.    In 1998, as a part of its investigation of the Youth Center, Amnesty International sought to interview John Doe 4. TSC Whelan showed up and tried to intimidate John Doe 4 from cooperating. Upon information and belief, TSC Whelan resigned or was fired thereafter.

339.    While at the Youth Center, John Doe 4 was told repeatedly by TSCs and other Youth Center staff that he had no rights at the Youth Center, because those rights had been taken away when he was sent there. As a result, John Doe 4 understood that staff could do with him as they pleased.

340.    At all pertinent times hereto before, during, and after, and continuing to the present, John Doe 4 has suffered from mental illnesses, including, but not limited to, bi-polar illness, major depression illness, and substance abuse disorder.

341.    John Doe 4 also suffers from PTSD. Upon information and belief, his PTSD was caused by the improper and unconstitutional conduct engaged in by Youth Center staff and management.

342.    Since his release from the Youth Center, John Doe 4 has been treated with anti-depressant and antipsychotic medications. He is currently being treated with anti-psychotic medication for his bi-polar illness.

343.    John Doe 4 received inpatient treatment during his adult years at mental health and addiction facilities in Lewiston, Augusta, Waterville, Bangor, and Portland.

344.    John Doe 4 has never leased an apartment or home.

345.    John Doe 4 does not have the ability to be employed in any meaningful capacity.

346.    John Doe 4 has never had a bank account.

347.    John Doe 4, due to his mental health issues, was unable to recognize that what happened at the Youth Center was not his fault. He was told repeatedly that his own actions resulted in isolation and other tortures and that Youth Center staff could legally engage in such conduct.

348.    As a result of his mental illness, John Doe 4, at all pertinent times, has been unable to protect his legal rights.

## VI.    JOHN DOE 5

349.    John Doe 5 arrived at the Youth Center in 1992, when he was just 14 years old. When John Doe 5 arrived at the Youth Center, a court had not yet adjudicated his offense. A juvenile court later did so while John Doe 5 was confined at the Youth Center.

350.    John Doe 5 grew up in unstable household. John Doe 5's parents, who divorced when he was very young, suffered from alcoholism. In addition, during his childhood, John Doe

5's mother also suffered from significant health issues, including a brain tumor. Throughout John Doe 5's childhood he was bounced between his parents' homes in Naples, Gray, and Portland.

351.    At 12 years of age, John Doe 5 began experimenting with drugs and getting into trouble with other children in the neighborhood.

352.    When John Doe 5 arrived at the Youth Center, staff informed him that he had lost his "rights when [he] walked through that door. That's not your mother's fault, or your father's fault, it's your fault."

353.    John Doe 5 was initially placed in Cottage 6 with the younger boys. At that time, Cottage 6 was run by TSC Drew. TSC Drew was strict. Any time a child would violate the rules, he placed them on the "desk program": forcing the child to sit at a desk facing the wall as punishment.

354.    It was not long before Youth Center staff sent John Doe 5 to the ICU, where John Doe 5 was kept in isolation for "weeks at a time."

355.    John Doe 5's ICU isolation cells had windows painted black. The only light came from one two-watt light bulb.

356.    In isolation, John Doe 5 was not permitted to attend school.

357.    In isolation, John Doe 5 received no counseling or meaningful treatment for his serious mental health issues.

358.    In isolation, Youth Center staff took John Doe 5's glasses. Thus, even if given reading material, he was unable to read it.

359.    In isolation, Youth Center staff subjected John Doe 5 to invasive, degrading, and unnecessary strip searches. During these strip searches, TSCs would sometimes sexually assault

John Doe 5. For example, during strip searches, both TSCs Dardell and Thurlow would digitally penetrate John Doe 5's anus with their fingers and grope his genitals.

360. John Doe 5 grew more depressed and, as a result, engaged in self-harm. Rather than receiving necessary medical treatment for his mental health, Youth Center staff put John Doe 5 on suicide watch. This involved staff taking all of John Doe 5's clothes, leaving him naked in his cell, for all staff – including female staff – to see. On some of these occasions, TSC Thurlow would sit outside John Doe 5's cell and watch him.

361. In addition to self-harming, John Doe 5 also acted out while in isolation. When he did so, TSCs, including TSCs Thurlow, Dardell, Campbell, and Albertson responded by rushing into his cell, taking him to the ground, and restraining him. On one occasion, TSCs smashed John Doe 5's head into a concrete wall. After using this force, the TSCs zip tied John Doe 5 and left him lying on his cell mattress.

362. John Doe 5 also witnessed TSCs violently assault and restrain other children. On one occasion, John Doe 5 witnessed TSC Albertson assault Plaintiff John Doe 1. The next day, John Doe 5 witnessed TSC Albertson assault another child, J.P. — while J.P was shackled to a table in the STU unit and therefore not posing a threat to himself or others. During this unreasonable and excessive use of force, TSC Albertson knocked J.P. unconscious and then left J.P. lying unconscious on the table with blood coming out of his nose and ears.

363. TSC Albertson told John Doe 5 that he was next in line. Out of fear and desperation, John Doe 5 stole a bottle of bleach and drank it that very day. John Doe 5 wanted to die. Instead, he started vomiting violently and was hospitalized.

364. In 1994, John Doe 5 was briefly released in January and May, before being returned to the Youth Center. Following these re-commitments, John Doe 5's depression worsened. Rather

than provide him with necessary medical and mental health treatment, Youth Center staff responded by sending John Doe 5 to the ICU.

365.    John Doe 5's depression further worsened. One day, while working in the Youth Center kitchen, John Doe 5 broke a glass bottle. He hid a shard of the glass and took it back to the cottage with him. Later, he slit his forearm under the bedcovers. Another child saw the blood seeping through his blanket and alerted staff members. John Doe 5 was taken to the hospital for stitches and then immediately taken back to the ICU.

366.    Two days later, after making another suicidal gesture, John Doe 5 was admitted to the Jackson Brook Institute. At the time of his admission, he was diagnosed with major depressive disorder.

367.    Following his discharge and return to the Youth Center, John Doe 5 was subsequently hospitalized again, this time to St. Mary's Hospital. He remained at St. Mary's for two months.

368.    Upon his return to the Youth Center, aside from being prescribed psychotropic drugs and antidepressants, John Doe 5 received no meaningful medical and mental health care treatment. He again grew severely depressed.

369.    On January 3, 1995, John Doe 5 was again hospitalized for depression, this time at Portsmouth Pavilion in New Hampshire.

370.    Right before John Doe 5 turned 18, Youth Center staff notified him that he was being released, saying, "There's nothing more we can do for you here." They gave John Doe 5 his medications and told him to leave.

371.    John Doe 5 has at all pertinent times suffered from mental illness, before, during, and after his commitments to the Youth Center.

67

372.    Except for J.P., all other children John Doe 5 remembers from the Youth Center have since died.

373.    Following his release from the Youth Center, John Doe 5 was subsequently incarcerated in both county jails and State prison. While in prison, John Doe 5 suffered from nightmares about the Youth Center. Every morning, he would wake up and remind himself that he was not back at the Youth Center. The Youth Center remains the worst place John Doe 5 has ever been incarcerated.

374.    John Doe 5 continues to suffer from severe depression and blackouts.

375.    At 21 years of age, John Doe 5 was found, in the room of the house he was staying in, unresponsive, clutching a knife, rocking back and forth, and with a suicide note next to him. Upon his hospitalization, John Doe 5 was unable to recall any of the above events.

376.    Since his release from the Youth Center, John Doe 5 has subsequently been hospitalized and received in-patient treatment at Jackson Brook Institute, Augusta Mental Health Institute, and Spring Harbor Hospital.

377.    John Doe 5 has never been able to hold a job. He has been on disability for most of his adult life.

378.    John Doe 5 is unable to maintain a stable relationship. He lives an isolated existence and is anti-social. John Doe 5 finds it difficult to go into stores or be around groups of people.

379.    John Doe 5 has been homeless for most of his adult life, living out of a backpack.

380.    John Doe 5, due to his mental health issues, was unable to recognize that what happened at the Youth Center was not his fault. He was told repeatedly that his own actions resulted in isolation and other abuse and that Youth Center staff could legally engage in such conduct.

381.    As a result of his mental illness John Doe 5, at all pertinent times, has been unable to protect his legal rights.

## VII.    JOHN DOE 6

382.    John Doe 6 arrived at the Youth Center in 1994, when he was 16 years old.

383.    John Doe 6 grew up in a household of adults who suffered from alcoholism and depression. Both of John Doe 6's parents were alcoholics and his mother suffered from severe depression. Those illnesses were generational, with John Doe 6's mother's parents suffering from alcoholism as well.

384.    John Doe 6's parents divorced when he was seven years old. Following their divorce, John Doe 6 went in between his parents' homes before moving in with his grandmother, who took over primary responsibility for raising him.

385.    As a child, John Doe 6 was enrolled in special education classes.

386.    When John Doe 6 arrived at the Youth Center in 1994, the juvenile court had not adjudicated his offense yet, which made him a "hold for court." Typically, "hold for court" children were assigned to Cottage 1, but at the time of John Doe 6's arrival there was no space in Cottage 1. Youth Center staff sent him to the old ICU.

387.    Upon his arrival at the old ICU, the first thing John Doe 6 noticed was that despite being warm outside, it was freezing inside. John Doe 6 also noticed how filthy the old ICU was, with windows covered in bodily fluids.

388.    Upon his arrival in the old ICU, Youth Center staff forced John Doe 6 to strip naked in the entrance of the unit – visible to all the other children in the unit – to be searched.

389.    Upon information and belief, at that time, the old ICU was staffed by TSCs Campbell, Thurlow, Lamry, Hanson, Ford, and Factor.

390.    While in the old ICU, John Doe 6 recognized another child, Plaintiff John Doe 5. John Doe 5 and John Doe 6 had grown up in the same housing complex together. While the boys were together in the old ICU, John Doe 6 witnessed Youth Center TSCs repeatedly enter John Doe 5's cell and physically assault John Doe 5. John Doe 6 also witnessed John Doe 5's depression and despair, seeing John Doe 5 cut himself.

391.    After approximately two to three weeks in the old ICU, Youth Center staff sent John Doe 6 to Cottage 1. At that time, upon information and belief, TSC Jeff Campbell ran Cottage 1 and TSCs DeWitt, Duhamel, Lamry, and Thurlow regularly staffed the cottage.

392.    While John Doe 6 was grateful to be out of the old ICU, he struggled with the transition to the strict rules of Cottage 1.

393.    John Doe 6's time in the cottage was further complicated by the fact that while visiting John Doe 6 at the Youth Center, John Doe 6's mother met TSC Thurlow. Shortly thereafter, the two began dating and continued to date throughout John Doe 6's time at the Youth Center and for a short period of time thereafter.

394.    At that time, every night before bedtime the children in Cottage 1 were required to line up in their underwear. Before being allowed to shower, staff inspected the children's underwear. If there were any visible stains, staff and other children ridiculed the child.

395.    The Youth Center staff in Cottage 1 also required children to write out their "learning experiences." At that time, John Doe 6 was illiterate and therefore had difficulty completing the task. Rather than provide a reasonable accommodation, Youth Center staff forced John Doe 6 to do the assignment. Other children in the cottage helped John Doe 6 to do so when they could.

396. During one of these "learning experiences" in Cottage 1, TSC Lamry ordered John Doe 6 to write a letter about how his "mother was a whore." John Doe 6 got upset and told TSC Lamry to "go fuck himself." As a result, staff sent John Doe 6 back to the ICU. Upon information and belief, John Doe 6 spent a week in the ICU as punishment for his response to TSC Lamry.

397. Upon information and belief, over the remainder of his time in Cottage 1, TSC Lamry repeatedly sent John Doe 6 to the ICU as punishment for alleged behavioral infractions.

398. While housed in the ICU, John Doe 6 continued to witness Youth Center staff violence against children.

399. When staff assaulted a child in ICU, the other children would "rack off" in response, as way of expressing their resistance to staff violence. In response, guards, including TSCs Campbell, Thurlow, Factor, DeWitt, Lamry, Hanson, Ford, and Duhamel, would rush into the children's cells and violently restrain them.

400. When TSCs entered John Doe 6's cell to restrain him, they often restrained him in inhumane ways that created substantial risks of serious harm to John Doe 6's health and safety. For example, when TSCs entered John Doe 6's cell, they would first strip him naked before affixing a weighted leather belt around his waist. That belt had a metal ring on the front and a metal ring on the back. The guards would then zip-tie John Doe 6's arms to the front ring and his legs to the ring on the back, before affixing a backwards helmet on John Doe 6's head.

401. Guards would leave John Doe 6 so restrained for hours at a time. Upon information and belief, on at least one occasion, guards left John Doe 6 so restrained for a period exceeding 36 hours. During these extended periods in such restraints, guards refused to release John Doe 6 from the restraints for bathroom breaks, forcing him to defecate and urinate on himself.

402.    Unsurprisingly, being left in such inhumane restraints for extended periods of time caused John Doe 6 significant physical pain. While so restrained, the zip ties would cut into John Doe 6's wrists and ankles, causing him to lose circulation in his hands and feet and, later, resulting in permanent scaring. John Doe 6 would cry out in pain and beg the guards to release him. On multiple occasions, John Doe 6 could hear other children also begging the guards to release them from such restraints. Guards either ignored these cries for help or responded with more violence.

403.    On one occasion, while John Doe 6 was zip tied and lying prone and defenseless on his cell floor, TSC Hanson entered his cell, picked up John Doe 6 and slammed him back onto the floor.

404.    On another occasion, TSC Campbell entered John Doe 6's cell, released his restraints, and ordered him off the ground. John Doe 6 told TSC Campbell he could not stand up because his body was numb from the restraints. In response, TSC Campbell grabbed John Doe 6's testicles and yanked them, saying, "I guess you can feel that then."

405.    During his long periods of confinement in the ICU, Youth Center staff failed to provide John Doe 6 with any mental health counseling or care. As a result, and foreseeably, John Doe 6's mental health deteriorated.

406.    In July 1994, John Doe 6 was hospitalized and transferred to the Jackson Brook Institute (JBI). At the time of his admission, JBI staff cited a diagnosis of major depressive disorder and suicidal ideations.

407.    Terrified that he would be returned to the Youth Center, three days after his admission to the JBI, John Doe 6 ran away. He was found, returned to the Youth Center, and placed in Cottage 1.

408.    While the staff at the JBI recommended that John Doe 6 receive continuing mental health therapy and treatment, the Youth Center failed to provide John Doe 6 with any such treatment.

409.    Instead, shortly after his return to Cottage 1, abuse by Youth Center staff intensified.

410.    Any time John Doe 6 misbehaved he was sent to the ICU on "ICP status." While on ICP status, staff required John Doe 6 to remain seated without moving. If he moved, staff extended his time. While on ICP status, John Doe 6 was not provided with any food for periods exceeding 8 hours.

411.    Eventually, a juvenile court adjudicated John Doe 6's offense. Following his commitment, John Doe 6 was assigned to Cottage 4.

412.    At that time, Nancy Cochrane ran Cottage 4.

413.    Following his commitment to Cottage 4, Youth Center staff continued to abuse John Doe 6. For example, on one occasion while in Cottage 4, TSC Ford made John Doe 6 dump his plate of food into the "slop bucket." At that time, the prison in Windham had a farm with pigs. Inedible food scraps from the Youth Center would be put into a "slop bucket," to be taken to Windham to feed the pigs. TSC Ford ordered John Doe 6 to eat his dinner out of the slop bucket.

414.    TSC Bobby Coulthard would taunt and humiliate John Doe 6, including antagonizing John Doe 6 for his mother being a "whore."

415.    Further, while in Cottage 4, TSC Nancy Cochrane sexually abused John Doe 6. The sexual abuse started shortly after John Doe 6 was committed to Cottage 4 when TSC Cochrane invited John Doe 6 to her office. On that occasion, TSC Cochrane groped John Doe 6's penis and ordered him to perform oral sex on her. He complied.



*Figure 8. Photograph of TSC Nancy Cochrane at the Youth Center.*

416.    TSC Cochrane sexually assaulted John Doe 6 in this manner approximately five times while he was in her care and custody

417.    Following these sexual acts, TSC Cochrane granted John Doe 6 special privileges, including giving him passes to go home for Christmas and permitting John Doe 6's family to come visit him in Cottage 4.

418.    John Doe 6 did not disclose the sexual abuse to his family. However, John Doe 6's aunt and grandmother were suspicious as to why he was receiving special privileges.

419.    While John Doe 6 never directly heard from other children that TSC Cochrane sexually abused them too, he witnessed other boys enter TSC Cochrane's office for private visits.

420.    John Doe 6 was finally released from the Youth Center in 1996.

421.    At all times pertinent hereto, John Doe 6 suffered from mental illness. As aforementioned, John Doe 6 was in special education classes prior to his incarceration at the Youth Center. At the Youth Center he was hospitalized for his mental illnesses. Since his release from the Youth Center, John Doe 6 has been diagnosed with PTSD, Panic Disorder, Intermittent Explosive Disorder, Bipolar Disorder, and Substance Abuse Disorder. He is currently, and has been for an extended period, treated with antipsychotic medications.

422.    John Doe 6 has difficulty with reading and writing.

423. Shortly after his release from the Youth Center, John Doe 6 became addicted to drugs. He continues to struggle with substance use disorder.

424. Since his release from the Youth Center, John Doe 6 has served multiple terms of incarceration.

425. John Doe 6 is frequently homeless and has never lived in his own apartment. John Doe 6 prefers being incarcerated to being "outside" because he is unable to care for himself while not incarcerated. When not incarcerated, John Doe 6 often stays in family members' homes and is reluctant to venture outside.

426. John Doe 6, due to his mental health issues, was unable to recognize that what happened at the Youth Center was not his fault. He was told repeatedly that his own actions resulted in isolation and other abuses, and that Youth Center staff could legally engage in such conduct.

427. As a result of his mental illness, John Doe 6, at all pertinent times, has been unable to protect his legal rights.

## VIII.  JOHN DOE 7

428. John Doe 7 arrived at the Youth Center in 1995, when he was 15 years old.

429. John Doe 7 grew up in Lewiston, Maine. John Doe 7 and his brother first lived with their mother. However, after John Doe 7's mother's boyfriend began abusing John Doe 7 and his brother, John Doe 7 moved in with his father and stepmother. John Doe 7's father and stepmother tried to provide John Doe 7 with a loving home but struggled with substance use disorder and loved to "party on the weekends." When John Doe 7 was approximately twelve years old, his father was sent to federal prison for cocaine trafficking.

430.    As a young child, John Doe 7 was diagnosed with ADHD. As a result, he received special education services up until a State juvenile court committed him to the Youth Center.

431.    Upon information and belief, John Doe 7's initial term of incarceration at the Youth Center lasted for 45 days.

432.    When John Doe 7 first arrived at the Youth Center, he was terrified. He was only 15 and had never been away from home for any extended period of time.

433.    Youth Center staff took John Doe 7 to Cottage 1, where he met TSC Allenwood, who barked at him to "take a seat" and that he would "deal with [John Doe 7] in a minute."

434.    TSC Allenwood observed that John Doe 7 recognized and was recognized by several of the other children in Cottage 1 as John Doe 7 and these children had all lived in and around Lewiston. Following this observation, TSC Allenwood began targeting John Doe 7.

435.    Within two days of arriving at Cottage 1, TSC Allenwood put John Doe 7 on the "desk program" – where he was required to sit at a desk facing a wall in total silence. If John Doe 7 wanted to use the bathroom or stretch his legs, he had to raise his hand and be granted permission first.

436.    Shortly thereafter, John Doe 7 got into an altercation with another child in Cottage 1. In response, TSC Thurlow tackled John Doe 7 and punched him twice in the face. Afterwards, TSC Thurlow restrained John Doe 7 and transported him to the ICU.

437.    Upon his arrival in the ICU, John Doe 7 recognized Plaintiff John Doe 2. John Doe 7 knew John Doe 2 prior to incarceration, as they both were from Lewiston. As John Doe 7 was dragged into the ICU, he saw that John Doe 2 was lying naked on his cell's cement floor with his hands zip tied to a metal ring at his waist and his feet zip-ted behind him. John Doe 7 watched as staff left John Doe 2 in these restraints for 24 hours.

438. During his first confinement in the ICU, John Doe 7 also heard the anguished cries of other children locked in the unit and the sounds of staff yelling at the children.

439. Upon information and belief, John Doe 7's first term of confinement in the ICU lasted between 7 and 10 days.

440. While in the ICU, John Doe 7 was not permitted to talk with the other children or staff. He was also not permitted to go to school. Staff even refused to provide John Doe 7 with any reading materials unless and until he "earned" it.

441. In the ICU, Youth Center staff had total authority over John Doe 7's and the other children's movements. For example, TSCs determined whether a child would be allowed their one-hour of "rec time" – the only time the child had out of their cell. On one occasion while John Doe 7 was in the ICU, TSC Thurlow allowed him to exit his cell for "rec time." When John Doe 7 stepped out of his cell, TSC Thurlow changed his mind and immediately ordered John Doe 7 back into his cell.

442. To gain discharge from the ICU, John Doe 7 was required to maintain total silence for 8 hours. If he failed to do so, the clock would restart.

443. At that time, the ICU was staffed by TSCs Thurlow, Berry, Hawkins, Foust, Nelson, Smith, and Nee.

444. During John Doe 7's initial term of incarceration at the Youth Center, upon information and belief, he was sent to the ICU on two occasions and spent approximately 21 days there.

445. Upon information and belief, over the next two years, John Doe 7 was returned to the Youth Center on at least two other occasions. During each commitment, John Doe 7 was

repeatedly sent to the ICU as punishment. While John Doe 7 was in the ICU he frequently observed John Doe 2 held in an ICU cell in restraints.

446.    As stated *supra*, in the ICU, many of the children would "rack off" or make noise in their cells as a form of resistance to the abuse they and others endured at the hands of the guards. John Doe 7 was angry at the conditions he endured in the ICU. Further, he believed that if he did not join the other children in protesting, they might target him when he returned to the cottage. So, he began "racking off." In response, TSCs, including TSCs Thurlow, Berry, Hawkins, Foust, Nelson, Smith, and Nee would rush into his cell, tackle him, strip him naked, remove his mattress, and leave him restrained in zip-ties on his cold metal cot.

447.    The TSCs would leave John Doe 7 in these restraints for up to 10 hours. The initial period of time in such restraints was always excruciatingly painful for John Doe 7, until he eventually lost feeling in both his hands and feet. To this day, John Doe 7 continues to have difficulty gripping objects due to the permanent damage caused by this application of inhumane restraints.

448.    In addition, when entering children's cells to quell any verbal resistance, TSCs would often violently physically assault the children. For example, on one occasion, TSC Hawkins hit John Doe 7's head so hard it left a permanent scar. On another occasion TSC Thurlow choked John Doe 7 until he was seconds from passing out.

449.    In the ICU, TSC Nee would antagonize the children, including John Doe 7, until they acted out. When John Doe 7 reacted, TSC Nee would enter his cell, assault and restrain him. On one of these occasions, TSC Nee removed John Doe 7's mattress for more than a week.

450.    In the ICU, TSCs subjected John Doe 7 to invasive and unnecessary strip searches. For example, TSC Smith came into John Doe 7's ICU cell on several occasions with a camera and

told him he needed to do a cavity search. TSC Smith filmed himself grabbing John Doe 7's genitals, as well as making John Doe 7 squat and spin around.

451.   Further, while in the ICU, TSC Thurlow would use the facility's camcorder to video record John Doe 7 and other children masturbating in their cells. John Doe 7 recalls masturbating and looking up to TSC Thurlow pointing a camcorder at him with the red light on.

452.   In addition to the abuse John Doe 7 personally endured, he witnessed staff abuse other children in the ICU. He heard the guards harming other children and while John Doe 7 never cut himself, he saw other children cutting themselves and engaging in other forms of self-harm.

453.   While in the ICU, John Doe 7 was never provided with mental health counseling.

454.   On occasion, medical staff would stare at him, from his cell door, as he lay restrained, unable to get up. After a minute or so, they would then move along.

455.   During John Doe 7's final confinement at the Youth Center, he was committed for 11 months. As a "committed" child, he was moved from Cottage 1 to Cottage 3.

456.   At that time, Cottage 3 was staffed by TSCs Eastwood, Jackson, J. Coyne, C. Coyne, Trott, Redmond, Hawkins, Allenwood, and Cochrane.

457.   Staff in Cottage 3 regularly humiliated the children for no reason. Worse, they responded to any actual or perceived misbehavior with physical violence.

458.   For example, every night the children would shower in the gym. During that time, TSC Eastwood would make the boys of Cottage 3 scrub any stains in their underwear with a toothbrush. TSC Eastwood forced John Doe 7 and other children to do this publicly. He would loudly berate John Doe 7 and the boys for having stains in their underwear, while the other children watched and laughed. Other times, TSC Eastwood would make derogatory and inappropriate remarks about John Doe 7's and the other children's genitals.

459.    TSC Eastwood would also subject the children in the cottage to humiliating strip searches. TSC Eastwood would randomly and arbitrarily tell John Doe 7 he "looked suspicious" and then force him to go into a closet in the Cottage to be strip searched. TSC Eastwood would leave the door of the closet open so that the other children could see John Doe 7 naked.

460.    On one occasion in Cottage 3, John Doe 7 got into a physical altercation with another boy. In response, TSCs Dickson and Allenwood tackled him. They then held John Doe 7 on the ground while the other boy kicked John Doe 7 in the face. Shortly thereafter, TSC Hawkins arrived. He grabbed John Doe 7 – whose face was beat up – took him to the squad car and drove him to the ICU. TSC Hawkins then pulled John Doe 7 out of the van and slammed him against the side of the van. He put his forearm up to John Doe 7's throat and told him, "You're going to learn today in ICU."

461.    TSC Hawkins dragged John Doe 7 into the ICU building. At that time, to enter the ICU the children and guards would have to pass through a set of two locked doors. Children and guards knew that there was no camera in between the two doors—it was a "blind spot." TSC Hawkins pushed John Doe 7 through the first door, with John Doe 7's hands still zip-tied in front of him. TSC Hawkins, who was behind John Doe 7, began punching John Doe 7's kidneys. John Doe 7 struggled to breathe and stay standing through the pain. The second door opened and TSC Hawkins stopped his assault.

462.    TSC Hawkins then dragged John Doe 7 into an ICU cell. On the way he yelled loudly that John Doe 7 was "a rat," knowing it would make John Doe 7 a target for other children. He then threw John Doe 7 to the ground in the cell and kicked him.

463.    On another occasion, TSC Allenwood sent John Doe 7 to the ICU for talking during Cottage 3's "silent time." TSC Allenwood put John Doe 7 in handcuffs behind his back and on the

way to the ICU shoved John Doe 7 causing him to trip. Because John Doe 7 could not use his hands to brace himself, he fell painfully on his chin. John Doe 7 received no medical attention.

464.    Finally, while in Cottage 3, TSC Cochrane sexually abused John Doe 7. While John Doe 7 was in Cottage 3, TSC Cochrane was kind to him—taking him off grounds for YouthBuild or inviting John Doe 7 into her office. During those times, John Doe 7 confided in her about the abuse he was enduring and cried in her arms.

465.    TSC Cochrane increasingly began singling out John Doe 7 for special treatment. For example, Daniel Reardon, a volunteer who was the owner of GH Bass, would often drop clothing off for Youth Center children. TSC Cochrane would give John Doe 7 first pick of the dropped-off clothing but tell him to try on whatever he picked out for her. If John Doe 7tried on a pair of jeans, she would come up close, touch his buttocks, and comment on the fit.

466.    TSC Cochrane would also call John Doe 7 into her office to clean her bathroom and fishtank. One day, when John Doe 7 went to clean the bathroom, TSC Cochrane told him she had "left him something to relax." He found a pornographic magazine, pack of cigarettes, and a lighter left on the windowsill. TSC Cochrane directed John Doe 7 to masturbate while she watched him. TSC Cochrane proceeded to touch John Doe 7's buttocks and testicles.

467.    The sexual abuse continued throughout the remainder of John Doe 7's time at the Youth Center. At one point, John Doe 7 was ten credits short of what he needed to be discharged from the Youth Center. TSC Cochrane told him she would help him get those credits but that "he owed her."

468.    In exchange for his continued silence about her abuse, TSC Cochrane made good on her word and awarded John Doe 7 the extra credits he needed. John Doe 7 felt dirty and ashamed.

469.    John Doe 7 was discharged from the Youth Center on July 31, 1998, exactly one day before his 18th birthday.

470.    Shortly after his release, TSC Cochrane called him at his parents' house. John Doe 7 got on the phone and said, "don't worry I gave you a promise" and immediately hung up. That was the last communication he ever had with Ms. Cochrane.

471.    Shortly after his release from the Youth Center, John Doe 7 became addicted to drugs. John Doe 7 spent most of the next 25 years incarcerated.

472.    Prior to, during, and after his stays at the Youth Center, John Doe 7 suffered mental health issues. He suffered, and continues to suffer, from ADHD, panic disorder, anxiety, and depression.

473.    Since his release from the Youth Center, John Doe 7 has been hospitalized for both mental health and drug addiction.

474.    John Doe 7 has never had a driver's license.

475.    Since his release from the Youth Center, John Doe 7 has been unable to maintain stable employment.

476.    John Doe 7 has never leased or owned his own home or apartment and has been periodically homeless.

477.    John Doe 7, due to his mental health issues, was unable to recognize that what happened at the Youth Center was not his fault. He was told repeatedly that his own actions resulted in isolation and other abuses and that Youth Center staff could legally engage in such conduct.

478.    As a result of his mental illness John Doe 7, at all pertinent times, has been unable to protect his legal rights.

## IX.   JOHN DOE 8

479.   John Doe 8 was only 13 years old in 1998, when he was placed by his custodian, DHHS, at the Youth Center. He remained at the Youth Center until 2003, when he was "bound over" at 17 years old as an adult to the Cumberland County Jail. For much of that time he was a "hold for court."

480.   Specifically, John Doe 8 was accused as a twelve-year-old of stealing a pack of cigarettes from a car. As a result, he was charged with burglary of a vehicle and sent to the Youth Center a year later before adjudication of the juvenile charge.

481.   John Doe 8 was not formally committed to the Youth Center for two years—during this time he was a "hold for court." Tom spent the time that he was a "hold for court" in isolation at the ICU or NSB. Even after he was committed, John Doe 8 was frequently placed in the ICU, STU, and NSB, with intermittent stays in Cottages 3 and 4.

482.   While in isolation, Youth Center staff did not provide John Doe 8 with an education.

483.   While in isolation, Youth Center staff placed John Doe 8 in plastic wrist and ankle restraints and left him on his cell floor, so restrained, for hours at a time. John Doe 8 still has scars on his wrists and ankles where the ties cut his skin.

484.   John Doe 8 was also repeatedly placed in the restraint chair. ICU Supervisor Mack, on numerous occasions, ordered that John Doe 8 be left in the restraint chair for up to 8 hours. During this time, Supervisor Mack refused to release John Doe 8 to use the bathroom and, as a result, John Doe 8 defecated and urinated on himself. Supervisor Mack watched and laughed as this occurred. Supervisor Mack also approved the use of ankle and wrist restraints.

485. During his lengthy periods of isolation in the ICU, STU, or NSB, TSCs punished John Doe 8 for "racking off."  TSCs, including TSCs Thurlow, Berry, MacDougall, Riska, Thomas, and Quinn, would respond to John Doe 8 "racking off" by entering John Doe 8's 6' by 8' cell and physically attacking him—throwing him to the floor, or against the bed frame, and striking him with their fists, elbows, knees, and feet.

486. Other times, TSCs Thurlow, Riska, and Berry sexually assaulted John Doe 8 by entering his cell and grabbing, squeezing, and pulling his genitals. This caused John Doe 8 excruciating pain.

487. TSC Scott Janosik was particularly physically abusive towards John Doe 8 and others and engaged in the above stated sexual abuse as well.

488. On one occasion, TSCs Quinn and Thomas restrained John Doe 8 while TSC Daniel Nee kicked Tom in the head.

489. Like so many other children at the Youth Center, John Doe 8 was sexually abused by TSC Cochrane. This sexual abuse began when John Doe 8 was 14 years old and lasted until he was 17 years old. On numerous occasions, TSC Cochrane would call John Doe 8 into her Cottage 3 office. Once John Doe 8 was inside her office, TSC Cochrane would direct John Doe 8 to masturbate while she simultaneously masturbated herself. Afterwards, she would order Tom to engage in oral sex with her.

490. TSC Cochrane granted John Doe 8 special privileges after he engaged in sexual conduct with her.

491. In addition to this sexual abuse, John Doe 8 also endured repeated and unnecessary strip searches. TSCs, including those mentioned *supra* who physically abused John Doe 8,

subjected John Doe 8 to gratuitous strip searches, during which they touched his anus and genitals for their own gratification. Supervisor Mack supervised these strip searches.

492. In the ICU, STU, and NSB, John Doe 8 was subjected to such strip searches at least three times a week.

493. Throughout his time at the Youth Center, John Doe 8 suffered from psychiatric illnesses, including ADHD and PTSD. A Youth Center psychologist treated his mental illness with "samples" of medications available at the Youth Center, including Seroquel and other psychotropic medications. When a "sample" ran out, the psychologist gave John Doe 8 a "sample" of another available drug.

494. As stated *supra*, John Doe 8 had been diagnosed with and received treatment for ADHD, prior to his placement at the Youth Center. Later, John Doe 8 was also diagnosed with bi-polar disorder, schizophrenia, depression, anxiety, and PTSD.

495. As a result of John Doe 8's mental illnesses, he has at all pertinent times been unable to protect his legal rights.

496. In 2010, Social Security approved John Doe 8 to receive benefits because of his mental illnesses. He has received benefits since that time.

497. John Doe 8 requires assistance in all significant decision-making activities.

498. Other than working for two weeks at Applebee's before he was let go, John Doe 8 has never held a job.

499. John Doe 8 never had a driver's license while living in Maine, only a permit. In 2024, he obtained a driver's license after moving to Texas.

500. John Doe 8 has been hospitalized periodically for in-patient psychiatric treatment.

501.    During John Doe 8's time spent in isolation, he was subjected to psychological, emotional, and physical abuse as a means of coercing him to act in a certain manner. Due to John Doe 8's disabilities, he was unable to conform his behavior to that required by Youth Center staff.

502.    Due to his disabilities, John Doe 8 was unable to complete the tasks arbitrarily set by the Youth Center that were prerequisites for release from the Youth Center.

503.    He was not provided with an education while in isolation and was deprived of human contact other than abuse.

504.    John Doe 8, due to his mental health issues, was unable to recognize what happened at the Youth Center was not his fault. He was told repeatedly that his own actions resulted in isolation and other abuses and that Youth Center staff could legally engage in such conduct.

505.    As a result of his mental illness John Doe 8, at all pertinent times, has been unable to protect his legal rights.

## **FIRST CAUSE OF ACTION**

42 U.S.C. § 12132 and 29 U.S.C. § 794
Discrimination Against Qualified Individual with Disabilities in Violation of the Americans with Disabilities Act and the Rehabilitation Act
(All Plaintiffs against Maine Department of Corrections, Defendants Mary Ann Saar, Robert Lancaster, and Barbara Heath)

506.    Plaintiffs reallege each paragraph of this Complaint as if fully stated herein.

507.     Defendants, at all times relevant hereto, were acting under the color of state law.

508.    At all times relevant hereto, Plaintiffs were qualified individuals with mental disabilities.

509.    At all times relevant hereto, Defendant MDOC was a government agency that received federal funding and Defendants Saar, Lancaster, and Heath were MDOC employees.

510.    Defendants MDOC, Saar, Lancaster, and Heath, in their official and individual

capacities, intentionally or with deliberate indifference, refused to provide reasonable accommodation to Plaintiffs due to their disabilities and thereby discriminated against Plaintiffs on account of their disabilities, in violation of Plaintiffs' rights under 42 U.S.C. § 12132 and 29 U.S.C. § 794.

511.    As a direct and proximate cause and result of the foregoing, Plaintiffs suffered substantial personal injuries, of a disabling, debilitating and permanent nature, severe and prolonged pain and suffering, loss of enjoyment of life, severe permanent mental and emotional distress, and lost income and earning capacity, and will be caused to suffer all of the foregoing losses and damages into the foreseeable future.

512.    Pursuant to 14 M.R.S. § 853, the statute of limitations was tolled on account of Plaintiffs' disabilities, which prevented them from protecting their legal rights and bringing this action against Defendants.

## SECOND CAUSE OF ACTION

42 U.S.C. § 12132 and 29 U.S.C. § 794
Discrimination Against Qualified Individual with Disabilities in Violation of the Americans with Disabilities Act and the Rehabilitation Act
(Plaintiffs Jane Doe 1, John Doe 3, John Doe 2, John Doe 7, John Doe 4, and John Doe 8 against Defendants Martin Magnusson, and Lars Olsen)

513.    Plaintiffs reallege each paragraph of this Complaint as if fully stated herein.

514.    Defendants, at all times relevant hereto, were acting under the color of state law.

515.    At all times relevant hereto, Plaintiffs were qualified individuals with mental disabilities.

516.    At all times relevant hereto, Defendants Magnusson, and Olsen were MDOC employees and MDOC was a government agency that received federal funding.

517.     Defendants Magnusson, and Olsen, in their official and individual capacities, intentionally refused to provide reasonable accommodation to Plaintiffs due to their disabilities and thereby discriminated against Plaintiffs on account of their disabilities, in violation of Plaintiffs' rights under 42 U.S.C. § 12132 and 29 U.S.C. § 794.

518.     As a direct and proximate cause and result of the foregoing, Plaintiffs suffered substantial personal injuries of a disabling, debilitating and permanent nature, severe and prolonged pain and suffering, loss of enjoyment of life, severe permanent mental and emotional distress, and lost income and earning capacity, and will be caused to suffer all of the foregoing losses and damages into the foreseeable future.

519.     Pursuant to 14 M.R.S. § 853, the statute of limitations was tolled on account of Plaintiffs' disabilities, which prevented them from protecting their legal rights and bringing this action against Defendants.

## THIRD CAUSE OF ACTION

42 U.S.C. § 1983 – Supervisory Liability in Violation of the Fourteenth and Eighth Amendments
of the United States Constitution
(All Plaintiffs against Defendant Robert Lancaster)

520.     Plaintiffs reallege each paragraph of this Complaint as if fully stated herein.

521.     At all times relevant hereto, Defendant Lancaster was acting under color of state law.

522.     At all times relevant hereto, Defendant Lancaster was employed by the MDOC in a supervisory role.

523.     Defendant Lancaster enforced, approved, and oversaw a policy, practice, or custom of MDOC staff strip-searching Plaintiffs at the Youth Center without legitimate penological justification and instead for gratuitous purposes, including staff member's individual sexual

88

gratification or Plaintiffs' humiliation and degradation. In doing so, Defendant Lancaster, in his individual capacity, violated Plaintiffs' clearly established Fourteenth Amendment Due Process rights and Eighth Amendment right to be free from cruel and unusual punishment.

524.    Defendant Lancaster violated Plaintiffs' constitutional rights by acquiescing in the deprivation of their constitutional rights by his subordinates and showing a reckless and callous disregard for their rights.

525.    Defendant Lancaster's failure to train, supervise, or control his subordinates, his indifference to his subordinates' actions, and his indifference to Plaintiffs' rights, encouraged and permitted his subordinates to strip search Plaintiffs repeatedly and gratuitously without legitimate penological justification.

526.    As a direct and proximate cause and result of the foregoing, Plaintiffs suffered substantial personal injuries of a disabling, debilitating, and permanent nature, severe and prolonged pain and suffering, loss of enjoyment of life, severe permanent mental and emotional distress, and lost income and earning capacity, and will be caused to suffer all of the foregoing losses and damages into the foreseeable future.

527.    Pursuant to 14 M.R.S. § 853, the statute of limitations was tolled on account of Plaintiffs' disabilities, which prevented them from protecting their legal rights and bringing this action against Defendants.

**FOURTH CAUSE OF ACTION**

5 M.R.S. § 4682(1-A) – Supervisory Liability in Violation of Article I, §§ 1, 5, 6, 6-A, and 9
of the Maine Constitution
(All Plaintiffs against Defendant Robert Lancaster)

528.    Plaintiffs reallege each paragraph of this Complaint as if fully stated herein.

529.     At all times relevant hereto, Defendant Lancaster was acting under color of state

law.

530.    At all times relevant hereto, Defendant Lancaster was employed by the MDOC in a supervisory role.

531.    Defendant Lancaster routinely enforced, approved, and oversaw a policy, practice, or custom of MDOC staff strip-searching Plaintiffs at the Youth Center without penological justification and instead for gratuitous purposes, including staff member's individual sexual gratification or Plaintiffs' humiliation and degradation. In doing so, Defendant Lancaster, in his individual capacity, violated Plaintiffs' clearly established rights under the Maine Constitution, including: (1) the "safety" provision of Article I, § 1, which protects their "inherent and unalienable right[]" to "safety" and freedom from sexual abuse; (2) Article I, § 5, which protects the rights of persons to "be secure in their persons" against "unreasonable searches and seizures"; (3) Article I, § 6, which protects the "[r]ights of persons accused" not to "be deprived of life, liberty, property or privileges"; (4) Article I, § 6-A ,which protects the right to "due process"; and (5) Article I, § 9, which guarantees the right to be free from cruel and usual punishment.

532.    Defendant Lancaster violated Plaintiffs' constitutional rights by acquiescing in the deprivation of their constitutional rights by his subordinates and showing a reckless and callous disregard for their rights.

533.    Defendant Lancaster's failure to train, supervise, or control his subordinates, his indifference to his subordinates' actions, and his indifference to Plaintiffs' rights, encouraged and permitted his subordinates to strip search Plaintiffs repeatedly and gratuitously without legitimate penological justification.

534.    As a direct and proximate cause and result of the foregoing, Plaintiffs suffered

substantial personal injuries of a disabling, debilitating, and permanent nature, severe and prolonged pain and suffering, loss of enjoyment of life, severe permanent mental and emotional distress, and lost income and earning capacity, and will be caused to suffer all of the foregoing losses and damages into the foreseeable future.

535.    At the time this cause of action arose, Plaintiffs were all minors. Thus, pursuant to 14 M.R.S. § 752-C (1) this action may be commenced any time. In the alternative, pursuant to 14 M.R.S. § 853, the statute of limitations was tolled on account of Plaintiffs' disabilities, which prevented them from protecting their legal rights and bringing this action against Defendants.

## FIFTH CAUSE OF ACTION

42 U.S.C. § 1983 – Deliberate Indifference to Substantial Risks of Serious Harm in Violation of the Fourteenth and Eighth Amendments of the United States Constitution (Plaintiff Jane Doe 1 against Defendants Martin Magnusson, Mary Ann Saar, Lars Olsen, Robert Lancaster, Barbara Heath, Ralph Nicols, Steven Butts, Barry Lemery, John Napolitano, Scott DeWitt, James McDevitt, Svetla Popova, Patricia Poole, Pamela Creamer, Carrie Johnson, Kimberly Ackley, Kimberly Shaw, Marsha Thomas, Kathy Wisecup, Kenneth Factor, Michael Whelan, Norma Jean Duhamel, and Kelly Blanding)

536.    Plaintiff realleges each paragraph of this Complaint as if fully stated herein.

537.    At all times relevant hereto, Defendants were acting under color of state law.

538.    At all times relevant hereto, Defendants, including their agents and employees, were entrusted and charged with the custody, care, and protection of Plaintiff, a minor, and exercised control over Plaintiff to the exclusion of others. As such, at all times relevant hereto, Defendants, in their individual capacities, had a duty to protect and ensure the safety of Plaintiff during her incarceration at the Youth Center.

539.    At all times relevant hereto, Plaintiff had constitutional rights under the Fourteenth

and Eighth Amendments to be free from the deliberate indifference of a person, acting under color of law, to a substantial risk of serious harm, including, but not limited to, serious risks from physical harm, medical needs, and conditions of confinement.

540. At all times relevant hereto, Defendants were aware of, observed, or participated in incidents of Plaintiff being subjected to unreasonable or excessive uses of force and restraints, and yet failed to take reasonable actions to abate such harm.

541. At all times relevant hereto, Defendants were aware of, observed, or participated in incidents of Plaintiff being subjected to sexual abuse, including gratuitous strip-searches done without legitimate penological justification, and yet failed to take reasonable actions to abate such harm.

542. At all times relevant hereto, Defendants were aware of, observed, or participated in the denial of Plaintiff receiving necessary and adequate medical care, including mental health care, and yet failed to take reasonable actions to abate such harm.

543. At all times relevant hereto, Defendants were aware of, observed, or participated in the denial of education to Plaintiff, and yet failed to take reasonable actions to abate such harm.

544. At all times relevant hereto, Defendants were aware of, observed, or participated in confining Plaintiff in conditions that amounted to punishment and/or posed a substantial risk of serious harm to her physical safety, including unreasonable and excessive periods of being housed in isolation, and yet failed to take reasonable actions to abate such harm.

545. Defendants further knew or should have known that their direct actions, approval, and deliberate indifference to such conduct created an environment where MDOC staff continued, with impunity, to use unreasonable and excessive force and restraints against Plaintiff in violation

of Plaintiff's Fourteenth Amendment Due Process rights and Eighth Amendment right to be free from cruel and unusual punishment.

546.    Defendants further knew or should have known that their direct actions, approval, and deliberate indifference to such conduct created an environment where MDOC staff continued, with impunity, to sexually abuse, including gratuitously strip-searching,  Plaintiff in violation of Plaintiff's Fourteenth Amendment Due Process rights and Eighth Amendment right to be free from cruel and unusual punishment.

547.    Defendants further knew or should have known that their direct actions, approval, and deliberate indifference to such conduct created  an environment where MDOC staff continued, with impunity, to deny Plaintiff adequate and necessary medical care, including mental health care, in violation of Plaintiff's Fourteenth Amendment Due Process rights and Eighth Amendment right to be free from cruel and unusual punishment.

548.    Defendants further knew or should have known that their direct actions, approval, and deliberate indifference to such conduct created an environment where MDOC staff continued, with impunity, to deny Plaintiff an education in violation of Plaintiff's Fourteenth Amendment Due Process rights and Eighth Amendment right to be free from cruel and unusual punishment.

549.    Defendants further knew or should have known that their direct actions, approval, and deliberate indifference to such conduct created an environment where MDOC staff continued, with impunity, to confine Plaintiff in conditions of confinement that amounted to punishment and/or posed a substantial risk of serious harm to her physical safety, including unreasonable and excessive periods of being housed in isolation, in violation of Plaintiff's Fourteenth Amendment Due Process rights and Eighth Amendment right to be free from cruel and unusual punishment.

550.    As a direct and proximate cause and result of the foregoing Plaintiff suffered

93

substantial personal injuries of a disabling, debilitating, and permanent nature, severe and prolonged pain and suffering, loss of enjoyment of life, severe permanent mental and emotional distress, and lost income and earning capacity, and will be caused to suffer all of the foregoing losses and damages into the foreseeable future.

551.    Pursuant to 14 M.R.S. § 853, the statute of limitations was tolled on account of Plaintiff's disabilities.

### SIXTH CAUSE OF ACTION

5 M.R.S. § 4682(1-A) – Deliberate Indifference to Substantial Risks of Serious Harm in Violation of Article I, §§ 1, 6, 6-A, and 9 of the Maine Constitution
(Plaintiff Jane Doe 1 against Defendants Martin Magnusson, Mary Ann Saar, Lars Olsen, Robert Lancaster, Barbara Heath, Ralph Nicols, Steven Butts, Barry Lemery, John Napolitano, Scott DeWitt, James McDevitt, Svetla Popova, Patricia Poole, Pamela Creamer, Carrie Johnson, Kimberly Ackley, Kimberly Shaw, Marsha Thomas, Kathy Wisecup, Kenneth Factor, Michael Whelan, Norma Jean Duhamel, and Kelly Blanding)

552.    Plaintiff realleges each paragraph of this Complaint as if fully stated herein.

553.    At all times relevant hereto, Defendants were acting under the color of state law.

554.    At all times relevant hereto, Defendants, including their agents and employees, were entrusted and charged with the custody, care, and protection of Plaintiff, a minor, and exercised control over Plaintiff to the exclusion of others. As such, at all times relevant hereto, Defendants, in their individual capacities, had a duty to protect and ensure the safety of Plaintiff during her incarceration at the Youth Center.

555.    At all times relevant hereto, Plaintiff had constitutional rights under the Maine Constitution to be free from the deliberate indifference of a person, acting under color of law, to a substantial risk of serious harm, including serious risks from physical harm, medical needs, and conditions of confinement.

556.    At all times relevant hereto, Defendants were aware of, observed, or participated in

incidents of Plaintiff being subjected to unreasonable or excessive uses of force and restraints, and yet failed to take reasonable actions to abate such harm.

557.    At all times relevant hereto, Defendants were aware of, observed, or participated in incidents of Plaintiff being subjected to sexual abuse, including gratuitous strip-searches done without legitimate penological justification, and yet failed to take reasonable actions to abate such harm.

558.    At all times relevant hereto, Defendants were aware of, observed, or participated in the denial of Plaintiff receiving necessary and adequate medical care, including mental health care, and yet failed to take reasonable actions to abate such harm.

559.    At all times relevant hereto, Defendants were aware of, observed, or participated in the denial of an education to Plaintiff, and yet failed to take reasonable action to abate such harm.

560.    At all times relevant hereto, Defendants were aware of, observed, or participated in confining Plaintiff in conditions that amounted to punishment and/or posed a substantial risk of serious harm to her physical safety, including unreasonable and excessive periods of being housed in isolation, and yet failed to take reasonable actions to abate such harm.

561.    Defendants further knew or should have known that their direct actions, approval, and deliberate indifference to such conduct created an environment where MDOC staff continued, with impunity, to use unreasonable and excessive force and restraints against Plaintiff in violation of Plaintiff's Article I, §§ 1, 6, 6-A, and 9 rights.

562.    Defendants further knew or should have known that their direct actions, approval, and deliberate indifference to such conduct created an environment where MDOC staff continued, with impunity, to sexually abuse, including gratuitously strip-searching, Plaintiff in violation of Plaintiff's Article I, §§ 1, 6, 6-A, and 9 rights.

563.    Defendants further knew or should have known that their direct actions, approval, and deliberate indifference to such conduct created an environment where MDOC staff continued, with impunity, to deny Plaintiff necessary and adequate medical care, including mental health care, in violation of Plaintiff's Article I, §§ 1, 6, 6-A, and 9 rights.

564.    Defendants further knew or should have known that their direct actions, approval, and deliberate indifference to such conduct created an environment where MDOC staff continued, with impunity, to deny Plaintiff an education in violation of Plaintiff's Article I, §§ 1, 6, 6-A, and 9 rights.

565.    Defendants further knew or should have known that their direct actions, approval, and deliberate indifference to such conduct created an environment where MDOC staff continued, with impunity, to confine Plaintiff in conditions of confinement that amounted to punishment and/or posed a substantial risk of serious harm to her physical safety, including unreasonable and excessive periods of being housed in isolation, in violation of Plaintiff's Article I, §§ 1, 6, 6-A, and 9 rights.

566.    As a direct and proximate cause and result of the foregoing Plaintiff suffered substantial personal injuries of a disabling, debilitating, and permanent nature, severe and prolonged pain and suffering, loss of enjoyment of life, severe permanent mental and emotional distress, and lost income and earning capacity, and will be caused to suffer all of the foregoing losses and damages into the foreseeable future.

567.    Pursuant to 14 M.R.S. § 853, the statute of limitations was tolled on account of Plaintiff's disabilities.

## SEVENTH CAUSE OF ACTION

42 U.S.C. § 1983– Use of Unreasonable and Excessive Isolation in Violation of the Fourteenth and Eighth Amendments of the United States Constitution
(Plaintiff Jane Doe 1against Defendants Martin Magnusson, Mary Ann Saar, Lars Olsen, Robert Lancaster, Barbara Heath, John Napolitano, James McDevitt, Svetla Popova, Patricia Poole, Pamela Creamer, and Carrie Johnson)

568.    Plaintiff realleges each paragraph of this Complaint as if fully stated herein.

569.    Defendants, at all times relevant hereto, were acting under color of state law.

570.    Defendants routinely placed and approved the placement of Plaintiff in solitary confinement as punishment and kept Plaintiff in solitary confinement for extended durations of time that were unjustified by legitimate penological needs. In doing so, Defendants, in their individual capacities, violated Plaintiff's clearly established Fourteenth Amendment Due Process rights and Eighth Amendment right to be free from cruel and unusual punishment.

571.    As a direct and proximate cause and result of the foregoing, Plaintiff suffered substantial personal injuries of a disabling, debilitating, and permanent nature, severe and prolonged pain and suffering, loss of enjoyment of life, severe permanent mental and emotional distress, and lost income and earning capacity, and will be caused to suffer all of the foregoing losses and damages into the foreseeable future.

572.    Pursuant to 14 M.R.S. § 853, the statute of limitations was tolled on account of Plaintiff's disabilities, which prevented her from protecting her legal rights and bringing this action against Defendants.

**EIGHTH CAUSE OF ACTION**

5 M.R.S. § 4682(1-A) – Use of Unreasonable and Excessive Isolation in Violation of Article I, §§ 1, 6, 6-A, and 9 of the Maine Constitution
(Plaintiff Jane Doe 1against Defendants Martin Magnusson, Mary Ann Saar, Lars Olsen, Robert Lancaster, Barbara Heath, John Napolitano, James McDevitt, Svetla Popova, Patricia Poole, Pamela Creamer, and Carrie Johnson)

573.     Plaintiff realleges each paragraph of this Complaint as if fully stated herein.

574.    Defendants, at all times relevant hereto, were acting under color of state law.

575.    Defendants routinely placed and approved the placement of Plaintiff in solitary confinement as punishment and kept Plaintiff in solitary confinement for extended durations of time that were unjustified by legitimate penological needs. In doing so, Defendants, in their individual capacities, violated Plaintiff's clearly established rights under the Maine Constitution, including: (1) the "safety" provision of Article I, § 1, which protects his "inherent and unalienable right[]" to "safety"; (2) Article I, § 6, which protects the "[r]ights of persons accused" not to "be deprived of life, liberty, property or privileges"; (3) Article I, § 6-A, which protects the right to "due process"; and (4) Article I, § 9, which guarantees the right to be free from cruel and usual punishment.

576.    As a direct and proximate cause and result of the foregoing, Plaintiff suffered substantial personal injuries of a disabling, debilitating, and permanent nature, severe and prolonged pain and suffering, loss of enjoyment of life, severe permanent mental and emotional distress, and lost income and earning capacity, and will be caused to suffer all of the foregoing losses and damages into the foreseeable future.

577.    Pursuant to 14 M.R.S. § 853, the statute of limitations was tolled on account of Plaintiff's disabilities, which prevented her from protecting her legal rights and bringing this action against Defendants.

## NINTH CAUSE OF ACTION

42 U.S.C. § 1983 – Unreasonable and Excessive Use of Force and Restraints in Violation of the Fourteenth and Eighth Amendments of the United States Constitution
(Plaintiff Jane Doe 1 against Defendants Martin Magnusson, Mary Ann Saar, Lars Olsen, Robert Lancaster, Barbara Heath, Barry Lemery, John Napolitano, Scott DeWitt, James McDevitt, Michael Whelan, Kenneth Factor, Norma Jean Duhamel, Svetla Popova, and Marsha Thomas)

578.    Plaintiff realleges each paragraph of this Complaint as if fully stated herein.

579.    Defendants, at all times relevant hereto, were acting under color of state law.

580.    Defendants used, approved, failed to intervene, and acted with deliberate indifference to unreasonable and excessive uses of force against Plaintiff that amounted to punishment and were unjustified by legitimate penological needs. In doing so, Defendants, in their individual capacities, violated Plaintiff's clearly established Fourteenth Amendment Due Process rights and Eighth Amendment right to be free from cruel and unusual punishment.

581.    Defendants used, approved, failed to intervene, and acted with deliberate indifference to the placement of Plaintiff in restraints for purposes of punishment rather than legitimate penological needs. Further, Defendants directly kept, approved, failed to intervene, or acted with deliberate indifference to Plaintiff remaining in such unreasonable and excessive restraints for extended durations of time. In doing so, Defendants, in their individual capacities, violated Plaintiff's clearly established Fourteenth Amendment Due Process rights and Eighth Amendment right to be free from cruel and unusual punishment.

582.    As a direct and proximate cause and result of the foregoing, Plaintiff suffered substantial personal injuries of a disabling, debilitating, and permanent nature, severe and prolonged pain and suffering, loss of enjoyment of life, severe permanent mental and emotional distress, and lost income and earning capacity, and will be caused to suffer all of the foregoing losses and damages into the foreseeable future.

583.    Pursuant to 14 M.R.S. § 853, the statute of limitations was tolled on account of Plaintiff's disabilities, which prevented her from protecting her legal rights and bringing this action against Defendants.

## <u>TENTH CAUSE OF ACTION</u>

5 M.R.S. § 4682(1-A) – Unreasonable and Excessive Use of Force and Restraints in Violation of Article I, §§ 1, 6, 6-A, and 9 of the Maine Constitution
(Plaintiff Jane Doe 1 against Defendants Martin Magnusson, Mary Ann Saar, Lars Olsen, Robert Lancaster, Barbara Heath, Barry Lemery, John Napolitano, Scott DeWitt, James McDevitt, Michael Whelan, Kenneth Factor, Norma Jean Duhamel, Svetla Popova, Patricia Poole, and Marsha Thomas)

584.    Plaintiff realleges each paragraph of this Complaint as if fully stated herein.

585.     Defendants, at all times relevant hereto, were acting under color of state law.

586.    Defendants used, approved, failed to intervene, and acted with deliberate indifference to unreasonable and excessive uses of force against Plaintiff that amounted to punishment and were unjustified by legitimate penological needs. In doing so, Defendants, in their individual capacities, violated Plaintiff's clearly established rights under the Maine Constitution, including: (1) the "safety" provision of Article I, § 1, which protects his "inherent and unalienable right[]" to "safety"; (2) Article I, § 6, which protects the "[r]ights of persons accused" not to "be deprived of life, liberty, property or privileges"; (3) Article I, § 6-A, which protects the right to "due process"; and (4) Article I, § 9, which guarantees the right to be free from cruel and usual punishment.

587.    Defendants used, approved, failed to intervene, and acted with deliberate indifference to the placement of Plaintiff in restraints for purposes of punishment rather than legitimate penological needs. Further, Defendants directly kept, approved, failed to intervene, or acted with deliberate indifference to Plaintiff remaining in such unreasonable and excessive restraints for extended durations of time. In doing so, Defendants, in their individual capacities, violated Plaintiff's clearly established rights under the Maine Constitution, including: (1) the "safety" provision of Article I, § 1, which protects his "inherent and unalienable right[]" to "safety"; (2) Article I, § 6, which protects the "[r]ights of persons accused" not to "be deprived of

life, liberty, property or privileges"; (3) Article I, § 6-A, which protects the right to "due process"; and (4) Article I, § 9, which guarantees the right to be free from cruel and usual punishment.

588. As a direct and proximate cause and result of the foregoing, Plaintiff suffered substantial personal injuries of a disabling, debilitating, and permanent nature, severe and prolonged pain and suffering, loss of enjoyment of life, severe permanent mental and emotional distress, and lost income and earning capacity, and will be caused to suffer all of the foregoing losses and damages into the foreseeable future.

589. Pursuant to 14 M.R.S. § 853, the statute of limitations was tolled on account of Plaintiff's disabilities, which prevented her from protecting her legal rights and bringing this action against Defendants.

## ELEVENTH CAUSE OF ACTION

42 U.S.C. § 1983 – Denial of Necessary Medical Treatment and Deliberate Indifference to
Serious Medical Needs in Violation of the Fourteenth and Eighth Amendments
of the United States Constitution
(Plaintiff Jane Doe 1 against Defendants Martin Magnusson, Mary Ann Saar, Lars Olsen,
Robert Lancaster, Barbara Heath, Ralph Nicols, Steven Butts, Barry Lemery, John Napolitano,
Scott DeWitt, James McDevitt, Svetla Popova, Patricia Poole, Pamela Creamer, Carrie Johnson,
Kimberly Ackley, Kimberly Shaw, Marsha Thomas, Kathy Wisecup, Kenneth Factor, Michael
Whelan, Norma Jean Duhamel, and Kelly Blanding)

590. Plaintiff realleges each paragraph of this Complaint as if fully stated herein.

591. Defendants, at all times relevant hereto, were acting under color of state law.

592. Defendants, at all times relevant hereto, knew or should have known that Plaintiff suffered from severe mental illness that necessitated Plaintiff receiving medical care for that mental illness and placed Plaintiff at a substantial risk of serious harm if such treatment was not provided.

593. Defendants, at all times relevant hereto, were responsible for ensuring Plaintiff was

receiving appropriate and necessary medical care, including mental health care.

594.    Defendants, at all times relevant hereto, knew or should have known that Plaintiff was not receiving the necessary mental health care treatment, and that her conditions of confinement, including unreasonable and excessive isolation, were causing her mental health to further deteriorate and resulting in further damage.

595.    Defendants acted with deliberate indifference to this substantial risk of serious harm by failing to provide Plaintiff with any reasonable and adequate medical and mental health care treatment in violation of Plaintiff's Fourteenth Amendment Due Process rights and Eighth Amendment right to be free from cruel and unusual punishment.

596.    As a direct and proximate cause and result of the foregoing, Plaintiff suffered substantial personal injuries of a disabling, debilitating, and permanent nature, severe and prolonged pain and suffering, loss of enjoyment of life, severe permanent mental and emotional distress, and lost income and earning capacity, and will be caused to suffer all of the foregoing losses and damages into the foreseeable future.

597.    Pursuant to 14 M.R.S. § 853, the statute of limitations was tolled on account of Plaintiff's disabilities, which prevented her from protecting her legal rights and bringing this action against Defendants.

**TWELFTH CAUSE OF ACTION**

5 M.R.S. § 4682(1-A) – Denial of Necessary Medical Treatment and Deliberate Indifference to Medical Need in Violation of Article I, §§ 1, 6, 6-A, and 9 of the Maine Constitution
(Plaintiff Jane Doe 1 against Defendants Martin Magnusson, Mary Ann Saar, Lars Olsen, Robert Lancaster, Barbara Heath, Ralph Nicols, Steven Butts, Barry Lemery, John Napolitano, Scott DeWitt, James McDevitt, Svetla Popova, Patricia Poole, Pamela Creamer, Carrie Johnson, Kimberly Ackley, Kimberly Shaw, Marsha Thomas, Kathy Wisecup, Kenneth Factor, Michael Whelan, Norma Jean Duhamel, and Kelly Blanding)

598.    Plaintiff realleges each paragraph of this Complaint as if fully stated herein.

599.    Defendants, at all times relevant hereto, were acting under color of state law.

600.    Defendants, at all times relevant hereto, knew or should have known that Plaintiff suffered from severe mental illness that necessitated Plaintiff receiving medical care for that mental illness and placed Plaintiff at a substantial risk of serious harm if such treatment was not provided.

601.    Defendants, at all times relevant hereto, were responsible for ensuring Plaintiff was receiving appropriate medical care, including mental health care.

602.    Defendants, at all times relevant hereto, knew or should have known that Plaintiff was not receiving the necessary mental health care treatment, and that her conditions of confinement, including unreasonable and excessive isolation, were causing her mental health to further deteriorate and resulting in further damage.

603.    Defendants acted with deliberate indifference to this substantial risk of serious harm by failing to provide Plaintiff with any reasonable and adequate medical and mental health care treatment in violation of Plaintiff's clearly established rights under the Maine Constitution, including: (1) the "safety" provision of Article I, § 1, which protects his "inherent and unalienable right[]" to "safety"; (2) Article I, § 6, which protects the "[r]ights of persons accused" not to "be deprived of life, liberty, property or privileges"; (3) Article I, § 6-A, which protects the right to "due process"; and (4) Article I, § 9, which guarantees the right to be free from cruel and usual punishment.

604.    As a direct and proximate cause and result of the foregoing, Plaintiff suffered substantial personal injuries of a disabling, debilitating, and permanent nature, severe and prolonged pain and suffering, loss of enjoyment of life, severe permanent mental and emotional

103

distress, and lost income and earning capacity, and will be caused to suffer all of the foregoing losses and damages into the foreseeable future.

605.    Pursuant to 14 M.R.S. § 853, the statute of limitations was tolled on account of Plaintiff's disabilities, which prevented her from protecting her legal rights and bringing this action against Defendants.

## THIRTEENTH CAUSE OF ACTION

42 U.S.C. § 1983 – Sexual Abuse in Violation of the Fourteenth and Eighth Amendments of the United States Constitution
(Plaintiff Jane Doe 1 against Defendants Patricia Poole, Kimberly Ackley, Marsha Thomas, Kimberly Shaw, and Kathy Wisecup)

606.    Plaintiff realleges each paragraph of this Complaint as if fully stated herein.

607.    Defendants, at all times relevant hereto, were acting under color of state law.

608.    Defendants repeatedly sexually abused, or failed to prevent repeated sexual abuse of, Plaintiff, while she was a minor and incarcerated at the Youth Center. There was no valid penological justification for Defendants inflicting and/or exposing Plaintiff to sexual abuse. Through this conduct, Defendants, in their individual capacities, violated Plaintiff's Fourteenth Amendment Due Process rights and Eighth Amendment right to be free from cruel and unusual punishment.

609.    As a direct and proximate cause and result of the foregoing, Plaintiff suffered substantial personal injuries of a disabling, debilitating, and permanent nature, severe and prolonged pain and suffering, loss of enjoyment of life, severe permanent mental and emotional distress, and lost income and earning capacity, and will be caused to suffer all of the foregoing losses and damages into the foreseeable future.

610.    Pursuant to 14 M.R.S. § 853, the statute of limitations was tolled on account of

104

Plaintiff's disabilities, which prevented her from protecting his legal rights and bringing this action against Defendant.

611.    At the time this cause of action arose Plaintiff was a minor. Thus, pursuant to 14 M.R.S §752-C this action may commence at any time.

## FOURTEENTH CAUSE OF ACTION

5 M.R.S § 4681(1-A) – Sexual Abuse in Violation of Article I, §§ 1, 6, 6-A, and 9 of the Maine Constitution
(Plaintiff Jane Doe 1 against Defendants Patricia Poole, Kimberly Ackley, Marsha Thomas, Kimberly Shaw, and Kathy Wisecup)

612.    Plaintiff realleges each paragraph of this Complaint as if fully stated herein.

613.    Defendants, at all times relevant hereto, were acting under the color of state law.

614.    Defendants repeatedly sexually abused, or failed to prevent repeated sexual abuse of, Plaintiff, while she was a minor and incarcerated at the Youth Center. There was no valid penological justification for Defendants inflicting and/or exposing Plaintiff to sexual abuse. Through this conduct, Defendants, in their individual capacity, violated Plaintiff's clearly established rights under the Maine Constitution, including: (1) the "safety" provision of Article I, § 1, which protects his "inherent and unalienable right[]" to "safety"; (2) Article I, § 6, which protects the "[r]ights of persons accused" not to "be deprived of life, liberty, property or privileges"; (3) Article I, § 6-A, which protects the right to "due process"; and (4) Article I, § 9, which guarantees the right to be free from cruel and usual punishment.

615.    As a direct and proximate cause and result of the foregoing, Plaintiff suffered substantial personal injuries of a disabling, debilitating, and permanent nature, severe and prolonged pain and suffering, loss of enjoyment of life, severe permanent mental and emotional

distress, and lost income and earning capacity, and will be caused to suffer all of the foregoing losses and damages into the foreseeable future.

616.   At the time this cause of action arose, Plaintiff was a minor. Thus, pursuant to 14 M.R.S. § 752-C this action may be commenced at any time.

### FIFTEENTH CAUSE OF ACTION

Maine State Law – Intentional Infliction of Emotional Distress
(Plaintiff Jane Doe 1 against Defendants Martin Magnusson, Mary Ann Saar, Lars Olsen, Robert Lancaster, Barbara Heath, Ralph Nicols, Steven Butts, Barry Lemery, John Napolitano, Scott DeWitt, James McDevitt, Svetla Popova, Patricia Poole, Pamela Creamer, Carrie Johnson, Kimberly Ackley, Kimberly Shaw, Marsha Thomas, Kathy Wisecup, Kenneth Factor, Michael Whelan, Norma Jean Duhamel, and Kelly Blanding)

617.   Plaintiff realleges each paragraph of this Complaint as if fully stated herein.

618.   Through their violations of Plaintiff's rights under the United States and Maine Constitutions, Defendants intentionally or recklessly, with conscious disregard of the likelihood of harm and/or severe emotional distress, inflicted severe emotional distress on Plaintiff.

619.   Defendants' conduct was so extreme and outrageous so as to as to exceed all possible bounds of decency and as to be regarded as atrocious, utterly intolerable in a civilized community. R.S. (Second) Torts, § 46, cmt. D.

620.   As a result of Defendants' conduct, as outlined herein, Plaintiff, while incarcerated as a child at the Youth Center, was subjected to repeated constitutional violations, at the hands of those acting under color of law, including unreasonable and excessive uses of force, restraints, and isolation, deliberate indifference to substantial risks of serious harm, and sexual abuse.

621.   Defendants' conduct was the actual, proximate, and factual cause of severe emotional distress of Plaintiff.

622.   As a result, Plaintiff suffered emotional distress so severe that no reasonable person

could be expected to endure it. Plaintiff suffered and continues to suffer great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation and loss of enjoyment of life; distrust, anxiety, and distress related to authority figures; depression, nightmares, nervousness, stress and/or other trauma; mental anguish, humiliation, embarrassment, insomnia, and fear.

623.    Plaintiff was also prevented and will continue to be prevented from performing Plaintiff's daily activities and obtaining the full enjoyment of life; has sustained and will continue to sustain loss of earnings and earning capacity; and/or has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling.

624.    The aforesaid injuries were due to willful, wanton, reckless, and intentional acts of Defendants and were in no way caused by any act or failure to act on the part of Plaintiff.

## SIXTEENTH CAUSE OF ACTION

42 U.S.C. § 1983 – Deliberate Indifference to Substantial Risks of Serious Harm in Violation of the Fourteenth and Eighth Amendments of the United States Constitution
(Plaintiff John Doe 1 against Defendants Mary Ann Saar, Robert Lancaster, Barbara Heath, Kenneth Factor, Stephen Hasson, David Clock, Daniel Thurlow, Daniel Dickson, and Michael Mack)

625.    Plaintiff realleges each paragraph of this Complaint as if fully stated herein.

626.    At all times relevant hereto, Defendants were acting under color of state law.

627.    At all times relevant hereto, Defendants, including their agents and employees, were entrusted and charged with the custody, care, and protection of Plaintiff, a minor, and exercised control over Plaintiff to the exclusion of others. As such, at all times relevant hereto, Defendants, in their individual capacities, had a duty to protect and ensure the safety of Plaintiff during his incarceration at the Youth Center.

628.    At all times relevant hereto, Plaintiff had constitutional rights under the Fourteenth

and Eighth Amendments to be free from the deliberate indifference of a person, acting under color of law, to a substantial risk of serious harm, including, but not limited to, serious risks from physical harm, medical needs, and conditions of confinement.

629.    At all times relevant hereto, Defendants were aware of, observed, or participated in incidents of Plaintiff being subjected to unreasonable or excessive uses of force and restraints, and yet failed to take reasonable actions to abate such harm.

630.    At all times relevant hereto, Defendants were aware of, observed, or participated in incidents of Plaintiff being subjected to sexual abuse, including gratuitous strip-searches done without legitimate penological justification, and yet failed to take reasonable actions to abate such harm.

631.    At all times relevant hereto, Defendants were aware of, observed, or participated in the denial of Plaintiff receiving necessary and adequate medical care, including mental health care, and yet failed to take reasonable actions to abate such harm.

632.    At all times relevant hereto, Defendants were aware of, observed, or participated in the denial of education to Plaintiff, and yet failed to take reasonable actions to abate such harm.

633.    At all times relevant hereto, Defendants were aware of, observed, or participated in confining Plaintiff in conditions that amounted to punishment and/or posed a substantial risk of serious harm to her physical safety, including unreasonable and excessive periods of being housed in isolation, and yet failed to take reasonable actions to abate such harm.

634.    Defendants further knew or should have known that their direct actions, approval, and deliberate indifference to such conduct created an environment where MDOC staff continued, with impunity, to use unreasonable and excessive force and restraints in violation of Plaintiff's

Fourteenth Amendment Due Process rights and Eighth Amendment right to be free from cruel and unusual punishment.

635.    Defendants further knew or should have known that their direct actions, approval, or deliberate indifference to such conduct created an environment where MDOC staff continued, with impunity, to sexually abuse, including gratuitously strip-searching, Plaintiff in violation of Plaintiff's Fourteenth Amendment Due Process rights and Eighth Amendment right to be free from cruel and unusual punishment.

636.    Defendants further knew or should have known that their direct actions, approval, or deliberate indifference to such conduct created an environment where MDOC staff continued, with impunity, to deny Plaintiff adequate and necessary medical care, including mental health care, in violation of Plaintiff's Fourteenth Amendment Due Process rights and Eighth Amendment right to be free from cruel and unusual punishment.

637.    Defendants further knew or should have known that their direct actions, approval, or deliberate indifference to such conduct created an environment where MDOC staff continued, with impunity, to deny Plaintiff an education in violation of Plaintiff's Fourteenth Amendment Due Process rights and Eighth Amendment right to be free from cruel and unusual punishment.

638.    Defendants further knew or should have known that their direct actions, approval, and deliberate indifference to such conduct created an environment where MDOC staff continued, with impunity, to confine Plaintiff in conditions of confinement that amounted to punishment and/or posed a substantial risk of serious harm to his physical safety, including unreasonable and excessive periods of being housed in isolation, in violation of Plaintiff's Fourteenth Amendment Due Process rights and Eighth Amendment right to be free from cruel and unusual punishment.

639.    As a direct and proximate cause and result of the foregoing Plaintiff suffered

substantial personal injuries of a disabling, debilitating, and permanent nature, severe and prolonged pain and suffering, loss of enjoyment of life, severe permanent mental and emotional distress, and lost income and earning capacity, and will be caused to suffer all of the foregoing losses and damages into the foreseeable future.

640. Pursuant to 14 M.R.S. § 853, the statute of limitations was tolled on account of Plaintiff's disabilities.

## SEVENTEENTH CAUSE OF ACTION

5 M.R.S. § 4682(1-A) – Deliberate Indifference to Substantial Risks of Serious Harm in Violation of Article I, §§ 1, 6, 6-A, and 9 of the Maine Constitution
(Plaintiff John Doe 1 against Defendants Mary Ann Saar, Robert Lancaster, Barbara Heath, Kenneth Factor, Stephen Hasson, David Clock, Daniel Thurlow, Daniel Dickson, and Michael Mack)

641. Plaintiff realleges each paragraph of this Complaint as if fully stated herein.

642. At all times relevant hereto, Defendants were acting under the color of state law.

643. At all times relevant hereto, Defendants, including their agents and employees, were entrusted and charged with the custody, care, and protection of Plaintiff, a minor, and exercised control over Plaintiff to the exclusion of others. As such, at all times relevant hereto, Defendants, in their individual capacities, had a duty to protect and ensure the safety of Plaintiff during his incarceration at the Youth Center.

644. At all times relevant hereto, Plaintiff had constitutional rights under the Maine Constitution to be free from the deliberate indifference of a person, acting under color of law, to a substantial risk of serious harm, including serious risks from physical harm, medical needs, and conditions of confinement.

645. At all times relevant hereto, Defendants were aware of, observed, or participated in

incidents of Plaintiff being subjected to unreasonable or excessive uses of force and restraints, and yet failed to take reasonable actions to abate such harm.

646.    At all times relevant hereto, Defendants were aware of, observed, or participated in incidents of Plaintiff being subjected to sexual abuse, including gratuitous strip-searches done without legitimate penological justification, and yet failed to take reasonable actions to abate such harm.

647.    At all times relevant hereto, Defendants were aware of, observed, or participated in the denial of Plaintiff receiving necessary and adequate medical care, including mental health care, and yet failed to take reasonable actions to abate such harm.

648.    At all times relevant hereto, Defendants were aware of, observed, or participated in the denial of education to Plaintiff and yet failed to take reasonable action to abate such harm.

649.    At all times relevant hereto, Defendants were aware of, observed, or participated in confining Plaintiff in conditions that amounted to punishment and/or posed a substantial risk of serious harm to his physical safety, including unreasonable and excessive periods of being housed in isolation, and yet failed to take reasonable actions to abate such harm.

650.    Defendants further knew or should have known that their direct actions, approval, and deliberate indifference to such conduct created an environment where MDOC staff continued, with impunity, to use unreasonable and excessive force and restraints against Plaintiff in violation of Plaintiff's Article I, §§ 1, 6, 6-A, and 9 rights.

651.    Defendants further knew or should have known that their direct actions, approval, and deliberate indifference to such conduct created an environment where MDOC staff continued, with impunity, to sexually abuse, including gratuitously strip-searching, Plaintiff in violation of Plaintiff's Article I, §§ 1, 6, 6-A, and 9 rights.

652.    Defendants further knew or should have known that their direct actions, approval, and deliberate indifference to such conduct created an environment where MDOC staff continued, with impunity, to deny Plaintiff necessary and adequate medical care, including mental health care, in violation of Plaintiff's Article I, §§ 1, 6, 6-A, and 9 rights.

653.    Defendants further knew or should have known that their direct actions, approval, and deliberate indifference to such conduct created an environment where MDOC staff continued, with impunity, to deny Plaintiff an education in violation of Plaintiff's Article I, §§ 1, 6, 6-A, and 9 rights.

654.    Defendants further knew or should have known that their direct actions, approval, and deliberate indifference to such conduct created an environment where MDOC staff continued, with impunity, to confine Plaintiff in conditions of confinement that amounted to punishment and/or posed a substantial risk of serious harm to his physical safety, including unreasonable and excessive periods of being housed in isolation, in violation of Plaintiff's Article I, §§ 1, 6, 6-A, and 9 rights.

655.    As a direct and proximate cause and result of the foregoing Plaintiff suffered substantial personal injuries of a disabling, debilitating, and permanent nature, severe and prolonged pain and suffering, loss of enjoyment of life, severe permanent mental and emotional distress, and lost income and earning capacity, and will be caused to suffer all of the foregoing losses and damages into the foreseeable future.

656.    Pursuant to 14 M.R.S. § 853, the statute of limitations was tolled on account of Plaintiff's disabilities.

## EIGHTEENTH CAUSE OF ACTION

112

42 U.S.C. § 1983– Use of Unreasonable and Excessive Isolation in Violation of the Fourteenth and Eighth Amendments of the United States Constitution
(Plaintiff John Doe 1 against Defendants Mary Ann Saar, Robert Lancaster, Barbara Heath, Kenneth Factor, Stephen Hasson, David Clock, Daniel Thurlow, Daniel Dickson, and Michael Mack)

657.    Plaintiff realleges each paragraph of this Complaint as if fully stated herein.

658.    Defendants, at all times relevant hereto, were acting under color of state law.

659.    Defendants routinely placed and approved the placement of Plaintiff in solitary confinement as punishment and kept Plaintiff in solitary confinement for extended durations of time that were unjustified by legitimate penological needs. In doing so, Defendants, in their individual capacities, violated Plaintiff's clearly established Fourteenth Amendment Due Process rights and Eighth Amendment right to be free from cruel and unusual punishment.

660.    As a direct and proximate cause and result of the foregoing, Plaintiff suffered substantial personal injuries of a disabling, debilitating, and permanent nature, severe and prolonged pain and suffering, loss of enjoyment of life, severe permanent mental and emotional distress, and lost income and earning capacity, and will be caused to suffer all of the foregoing losses and damages into the foreseeable future.

661.    Pursuant to 14 M.R.S. § 853, the statute of limitations was tolled on account of Plaintiff's disabilities, which prevented him from protecting his legal rights and bringing this action against Defendants.

### NINETEENTH CAUSE OF ACTION

5 M.R.S. § 4682(1-A) – Use of Unreasonable and Excessive Isolation in Violation of Article I, §§ 1, 6, 6-A, and 9 of the Maine Constitution
(Plaintiff John Doe 1 against Defendants Mary Ann Saar, Robert Lancaster, Barbara Heath, Kenneth Factor, Stephen Hasson, David Clock, Daniel Thurlow, Daniel Dickson, and Michael Mack)

662.    Plaintiff realleges each paragraph of this Complaint as if fully stated herein.

113

663.    Defendants, at all times relevant hereto, were acting under color of state law.

664.    Defendants routinely placed and approved the placement of Plaintiff in solitary confinement as punishment and kept Plaintiff in solitary confinement for extended durations of time that were unjustified by legitimate penological needs. In doing so, Defendants, in their individual capacities, violated Plaintiff's clearly established rights under the Maine Constitution, including: (1) the "safety" provision of Article I, § 1, which protects his "inherent and unalienable right[]" to "safety"; (2) Article I, § 6, which protects the "[r]ights of persons accused" not to "be deprived of life, liberty, property or privileges"; (3) Article I, § 6-A, which protects the right to "due process"; and (4) Article I, § 9, which guarantees the right to be free from cruel and usual punishment.

665.    As a direct and proximate cause and result of the foregoing, Plaintiff suffered substantial personal injuries of a disabling, debilitating, and permanent nature, severe and prolonged pain and suffering, loss of enjoyment of life, severe permanent mental and emotional distress, and lost income and earning capacity, and will be caused to suffer all of the foregoing losses and damages into the foreseeable future.

666.    Pursuant to 14 M.R.S. § 853, the statute of limitations was tolled on account of Plaintiff's disabilities, which prevented him from protecting his legal rights and bringing this action against Defendants.

**TWENTIETH CAUSE OF ACTION**

42 U.S.C. § 1983 – Unreasonable and Excessive Use of Force and Restraints in Violation of the
Fourteenth and Eighth Amendments of the United States Constitution
(Plaintiff John Doe 1 against Defendants Mary Ann Saar, Robert Lancaster, Barbara Heath,
Kenneth Factor, Stephen Hasson, David Clock, Daniel Thurlow, Daniel Dickson,
Daniel Kane, and Michael Mack)

667.    Plaintiff realleges each paragraph of this Complaint as if fully stated herein.

114

668.    Defendants, at all times relevant hereto, were acting under color of state law.

669.    Defendants used, approved, failed to intervene, and acted with deliberate indifference to unreasonable and excessive uses of force against Plaintiff that amounted to punishment and were unjustified by legitimate penological needs. In doing so, Defendants, in their individual capacities, violated Plaintiff's clearly established Fourteenth Amendment Due Process rights and Eighth Amendment right to be free from cruel and unusual punishment.

670.    Defendants used, approved, failed to intervene, and acted with deliberate indifference to the placement of Plaintiff in restraints for purposes of punishment rather than legitimate penological needs. Further, Defendants directly kept, approved, failed to intervene, or acted with deliberate indifference to Plaintiff remaining in such unreasonable and excessive restraints for extended durations of time. In doing so, Defendants, in their individual capacities, violated Plaintiff's clearly established Fourteenth Amendment Due Process rights and Eighth Amendment right to be free from cruel and unusual punishment.

671.    As a direct and proximate cause and result of the foregoing, Plaintiff suffered substantial personal injuries of a disabling, debilitating, and permanent nature, severe and prolonged pain and suffering, loss of enjoyment of life, severe permanent mental and emotional distress, and lost income and earning capacity, and will be caused to suffer all of the foregoing losses and damages into the foreseeable future.

672.    Pursuant to 14 M.R.S. § 853, the statute of limitations was tolled on account of Plaintiff's disabilities, which prevented him from protecting his legal rights and bringing this action against Defendants.

### TWENTY-FIRST CAUSE OF ACTION

5 M.R.S. § 4682(1-A) – Unreasonable and Excessive Use of Force and Restraints in Violation of Article I, §§ 1, 6, 6-A, and 9 of the Maine Constitution
(Plaintiff John Doe 1 against Defendants Mary Ann Saar, Robert Lancaster, Barbara Heath, Kenneth Factor, Stephen Hasson, David Clock, Daniel Thurlow, Daniel Dickson, Daniel Kane, and Michael Mack)

673.    Plaintiff realleges each paragraph of this Complaint as if fully stated herein.

674.    Defendants, at all times relevant hereto, were acting under color of state law.

675.    Defendants used, approved, failed to intervene, and acted with deliberate indifference to unreasonable and excessive uses of force against Plaintiff that amounted to punishment and were unjustified by legitimate penological needs. In doing so, Defendants, in their individual capacities, violated Plaintiff's clearly established rights under the Maine Constitution, including: (1) the "safety" provision of Article I, § 1, which protects his "inherent and unalienable right[]" to "safety"; (2) Article I, § 6, which protects the "[r]ights of persons accused" not to "be deprived of life, liberty, property or privileges"; (3) Article I, § 6-A, which protects the right to "due process"; and (4) Article I, § 9, which guarantees the right to be free from cruel and usual punishment.

676.    Defendants used, approved, failed to intervene, and acted with deliberate indifference to the placement of Plaintiff in restraints for purposes of punishment rather than legitimate penological needs. Further, Defendants directly kept, approved, failed to intervene, or acted with deliberate indifference to Plaintiff remaining in such unreasonable and excessive restraints for extended durations of time. In doing so, Defendants, in their individual capacities, violated Plaintiff's clearly established rights under the Maine Constitution, including: (1) the "safety" provision of Article I, § 1, which protects his "inherent and unalienable right[]" to "safety"; (2) Article I, § 6, which protects the "[r]ights of persons accused" not to "be deprived of

116

life, liberty, property or privileges"; (3) Article I, § 6-A, which protects the right to "due process"; and (4) Article I, § 9, which guarantees the right to be free from cruel and usual punishment.

677.    As a direct and proximate cause and result of the foregoing, Plaintiff suffered substantial personal injuries of a disabling, debilitating, and permanent nature, severe and prolonged pain and suffering, loss of enjoyment of life, severe permanent mental and emotional distress, and lost income and earning capacity, and will be caused to suffer all of the foregoing losses and damages into the foreseeable future.

678.    Pursuant to 14 M.R.S. § 853, the statute of limitations was tolled on account of Plaintiff's disabilities, which prevented him from protecting his legal rights and bringing this action against Defendants.

## TWENTY-SECOND CAUSE OF ACTION

42 U.S.C. § 1983 – Denial of Necessary Medical Treatment and Deliberate Indifference to
Serious Medical Needs in Violation of the Fourteenth and Eighth
Amendments of the United States Constitution
(Plaintiff John Doe 1 against Defendants Mary Ann Saar, Robert Lancaster, Barbara Heath,
Kenneth Factor, Stephen Hasson, David Clock, Daniel Thurlow,
Daniel Dickson, and Michael Mack)

679.    Plaintiff realleges each paragraph of this Complaint as if fully stated herein.

680.    Defendants, at all times relevant hereto, were acting under color of state law.

681.    Defendants, at all times relevant hereto, knew or should have known that Plaintiff suffered from severe mental illness that necessitated Plaintiff receiving medical care for that mental illness and placed Plaintiff at a substantial risk of serious harm if such treatment was not provided.

682.    Defendants, at all times relevant hereto, were responsible for ensuring Plaintiff was receiving appropriate and necessary medical care, including mental health care.

117

683.     Defendants, at all times relevant hereto, knew or should have known that Plaintiff was not receiving the necessary mental health care treatment, and that his conditions of confinement, including unreasonable and excessive isolation, were causing his mental health to further deteriorate and resulting in further damage.

684.     Defendants acted with deliberate indifference to this substantial risk of serious harm by failing to provide Plaintiff with any reasonable and adequate medical and mental health care treatment in violation of Plaintiff's Fourteenth Amendment Due Process rights and Eighth Amendment right to be free from cruel and unusual punishment.

685.     As a direct and proximate cause and result of the foregoing, Plaintiff suffered substantial personal injuries of a disabling, debilitating, and permanent nature, severe and prolonged pain and suffering, loss of enjoyment of life, severe permanent mental and emotional distress, and lost income and earning capacity, and will be caused to suffer all of the foregoing losses and damages into the foreseeable future.

686.     Pursuant to 14 M.R.S. § 853, the statute of limitations was tolled on account of Plaintiff's disabilities, which prevented him from protecting his legal rights and bringing this action against Defendants.

**TWENTY-THIRD CAUSE OF ACTION**

5 M.R.S. § 4682(1-A) – Denial of Necessary Medical Treatment and Deliberate Indifference to Serious Medical Needs in Violation of Article I, §§ 1, 6, 6-A, and 9 of the Maine Constitution (Plaintiff John Doe 1 against Defendants Mary Ann Saar, Robert Lancaster, Barbara Heath, Kenneth Factor, Stephen Hasson, David Clock, Daniel Thurlow, Daniel Dickson, and Michael Mack)

687.     Plaintiff realleges each paragraph of this Complaint as if fully stated herein.

688.     Defendants, at all times relevant hereto, were acting under color of state law.

689.     Defendants, at all times relevant to this action, knew or should have known that

Plaintiff suffered from severe mental illness that necessitated Plaintiff receiving medical care for that mental illness and placed Plaintiff at a substantial risk of serious harm if such treatment was not provided.

690.    Defendants, at all times relevant hereto, were responsible for ensuring Plaintiff was receiving appropriate medical care, including mental health care.

691.    Defendants, at all times relevant hereto, knew or should have known that Plaintiff was not receiving the necessary mental health care treatment, and that his conditions of confinement, including unreasonable and excessive isolation, were causing his mental health to further deteriorate and resulting in further damage.

692.    Defendants acted with deliberate indifference to this substantial risk of serious harm by failing to provide Plaintiff with any reasonable and adequate medical and mental health care treatment in violation of Plaintiff's clearly established rights under the Maine Constitution, including: (1) the "safety" provision of Article I, § 1, which protects his "inherent and unalienable right[]" to "safety"; (2) Article I, § 6, which protects the "[r]ights of persons accused" not to "be deprived of life, liberty, property or privileges"; (3) Article I, § 6-A, which protects the right to "due process"; and (4) Article I, § 9, which guarantees the right to be free from cruel and usual punishment.

693.    As a direct and proximate cause and result of the foregoing, Plaintiff suffered substantial personal injuries of a disabling, debilitating, and permanent nature, severe and prolonged pain and suffering, loss of enjoyment of life, severe permanent mental and emotional distress, and lost income and earning capacity, and will be caused to suffer all of the foregoing losses and damages into the foreseeable future.

694.    Pursuant to 14 M.R.S. § 853, the statute of limitations was tolled on account of

119

Plaintiff's disabilities, which prevented him from protecting his legal rights and bringing this action against Defendants.

### TWENTY-FOURTH CAUSE OF ACTION

42 U.S.C. § 1983 – Sexual Abuse in Violation of the Fourteenth and Eighth Amendments of the United States Constitution
(Plaintiff John Doe 1 against Defendant Daniel Thurlow, David Clock, and Daniel Dickson)

695.    Plaintiff realleges each paragraph of this Complaint as if fully stated herein.

696.    Defendants, at all times relevant hereto, were acting under color of state law.

697.    Defendants repeatedly sexually abused, or failed to prevent the repeated sexual abuse of Plaintiff, while he was a minor and incarcerated at the Youth Center. There was no valid penological justification for Defendants inflicting and/or exposing Plaintiff to sexual abuse. Through this conduct, Defendants, in their individual capacities, violated Plaintiff's Fourteenth Amendment Due Process rights and Eighth Amendment right to be free from cruel and unusual punishment.

698.    As a direct and proximate cause and result of the foregoing, Plaintiff suffered substantial personal injuries of a disabling, debilitating, and permanent nature, severe and prolonged pain and suffering, loss of enjoyment of life, severe permanent mental and emotional distress, and lost income and earning capacity, and will be caused to suffer all of the foregoing losses and damages into the foreseeable future.

699.    Pursuant to 14 M.R.S. § 853, the statute of limitations was tolled on account of Plaintiff's disabilities, which prevented him from protecting his legal rights and bringing this action against Defendants.

700.    At the time this cause of action arose, Plaintiff was a minor. Thus, pursuant to 14 M.R.S § 752-C this action may be commenced at any time.

## TWENTY-FIFTH CAUSE OF ACTION

5 M.R.S § 4681(1-A) – Sexual Abuse in Violation of Article I, §§ 1, 6, 6-A, and 9 of the Maine Constitution
(Plaintiff John Doe 1 against Defendants Daniel Thurlow, David Clock, and
Daniel Dickson)

701.    Plaintiff realleges each paragraph of this Complaint as if fully stated herein.

702.    Defendants, at all times relevant hereto, were acting under color of state law.

703.    Defendants repeatedly sexually abused, or failed to prevent the repeated sexual abuse of, Plaintiff, while she was a minor and incarcerated at the Youth Center. There was no valid penological justification for Defendants inflicting and/or exposing Plaintiff to sexual abuse. Through this conduct, Defendants, in their individual capacity, violated Plaintiff's clearly established rights under the Maine Constitution, including: (1) the "safety" provision of Article I, § 1, which protects his "inherent and unalienable right[]" to "safety"; (2) Article I, § 6, which protects the "[r]ights of persons accused" not to "be deprived of life, liberty, property or privileges"; (3) Article I, § 6-A, which protects the right to "due process"; and (4) Article I, § 9, which guarantees the right to be free from cruel and usual punishment.

704.    As a direct and proximate cause and result of the foregoing, Plaintiff suffered substantial personal injuries of a disabling, debilitating, and permanent nature, severe and prolonged pain and suffering, loss of enjoyment of life, severe permanent mental and emotional distress, and lost income and earning capacity, and will be caused to suffer all of the foregoing losses and damages into the foreseeable future.

705.    At the time this cause of action arose, Plaintiff was a minor. Thus, pursuant to 14 M.R.S. § 752-C this action may be commenced at any time.

## TWENTY-SIXTH  CAUSE OF ACTION

Maine State Law – Intentional Infliction of Emotional Distress
(Plaintiff John Doe 1 against Defendants Mary Ann Saar, Robert Lancaster, Barbara Heath, Kenneth Factor, Stephen Hasson, David Clock, Daniel Thurlow, Daniel Dickson, Daniel Kane, and Michael Mack)

706.   Plaintiff realleges each paragraph of this Complaint as if fully stated herein.

707.   Through their violations of Plaintiff's rights under the United States and Maine Constitutions, Defendants intentionally or recklessly, with conscious disregard of the likelihood of harm and/or severe emotional distress, inflicted severe emotional distress on Plaintiff.

708.   Defendants' conduct was so extreme and outrageous so as to as to exceed all possible bounds of decency and as to be regarded as atrocious and utterly intolerable in a civilized community. R.S. (Second) Torts, § 46, cmt. D.

709.   As a result of Defendants' conduct, as outlined herein, Plaintiff, while incarcerated at the Youth Center, was subjected to repeated constitutional violations, at the hands of those acting under color of law, including unreasonable and excessive uses of force, restraints, and isolation, deliberate indifference to substantial risks of serious harm, and sexual abuse.

710.   Defendants' conduct was the actual, proximate, and factual cause of severe emotional distress of Plaintiff.

711.   As a result, Plaintiff suffered emotional distress so severe that no reasonable person could be expected to endure it. Plaintiff suffered and continues to suffer great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation and loss of enjoyment of life; distrust, anxiety, and distress related to authority figures; depression, nightmares, nervousness, stress and/or other trauma; mental anguish, humiliation, embarrassment, insomnia, and fear.

712.   Plaintiff was also prevented and will continue to be prevented from performing

Plaintiff's daily activities and obtaining the full enjoyment of life; has sustained and will continue to sustain loss of earnings and earning capacity; and/or has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling.

713. The aforesaid injuries were due to willful, wanton, reckless, and intentional acts of Defendants and were in no way caused by any act or failure to act on the part of Plaintiff.

## TWENTY-SEVENTH CAUSE OF ACTION

42 U.S.C. § 1983 – Deliberate Indifference to Substantial Risks of Serious Harm in Violation of the Fourteenth and Eighth Amendments of the United States Constitution (Plaintiff John Doe 2 against Defendants Martin Magnusson, Mary Ann Saar, Lars Olsen, Robert Lancaster, Barbara Heath, Daniel Boisot, Stephen Hasson, Roy Guzman, Michael Mack, Scott DeWitt, Leo Albert, Adrien Dufresne, Steven Rogers, Ewa Lewandowska, Peter McDermott, Garret Smith, Sean Clancy, and Lisa Tilly)

714. Plaintiff realleges each paragraph of this Complaint as if fully stated herein.

715. At all times relevant hereto, Defendants were acting under color of state law.

716. At all times relevant hereto, Defendants, including their agents and employees, were entrusted charged with the custody, care, and protection of Plaintiff, a minor, and exercised control over Plaintiff to the exclusion of others. As such, at all times relevant hereto, Defendants, in their individual capacities, had a duty to protect and ensure the safety of Plaintiff during his incarceration at the Youth Center.

717. At all times relevant hereto, Plaintiff had constitutional rights under the Fourteenth and Eighth Amendments to be free from the deliberate indifference of a person, acting under color of law, to a substantial risk of serious harm, including, but not limited to, serious risks from physical harm, medical needs, and conditions of confinement.

718. At all times relevant hereto, Defendants were aware of, observed, or participated in

incidents of Plaintiff being subjected to unreasonable or excessive uses of force and restraints, and yet failed to take reasonable actions to abate such harm.

719.    At all times relevant hereto, Defendants were aware of, observed, or participated in incidents of Plaintiff being subjected to sexual abuse, including gratuitous strip-searches done without legitimate penological justification, and yet failed to take reasonable actions to abate such harm.

720.    At all times relevant hereto, Defendants were aware of, observed, or participated in the denial of Plaintiff receiving necessary and adequate medical care, including mental health care, and yet failed to take reasonable actions to abate such harm.

721.    At all times relevant hereto, Defendants were aware of, observed, or participated in the denial of education to Plaintiff and yet failed to take reasonable actions to abate such harm.

722.    At all times relevant hereto, Defendants were aware of, observed, or participated in confining Plaintiff in conditions that amounted to punishment and/or posed a substantial risk of serious harm to his safety, including unreasonable and excessive periods of being housed in isolation, and yet failed to take any reasonable action to abate such harm.

723.    Defendants further knew or should have known that their direct actions, approval, and deliberate indifference to such conduct created an environment where MDOC staff continued, with impunity, to use unreasonable and excessive force and restraints in violation of Plaintiff's Fourteenth Amendment Due Process rights and Eighth Amendment right to be free from cruel and unusual punishment .

724.    Defendants further knew or should have known that their direct actions, approval, and deliberate indifference to such conduct created an environment where MDOC staff continued, with impunity, to sexually abuse, including gratuitously strip-searching, Plaintiff in violation of

Plaintiff's Fourteenth Amendment Due Process rights and Eighth Amendment right to be free from cruel and unusual punishment.

725.    Defendants further knew or should have known that their direct actions, approval, and deliberate indifference to such conduct created an environment where MDOC staff continued, with impunity, to deny Plaintiff adequate and necessary medical care, including mental health care, in violation of Plaintiff's Fourteenth Amendment Due Process rights and Eighth Amendment right to be free from cruel and unusual punishment.

726.    Defendants further knew or should have known that their direct actions, approval, and deliberate indifference to such conduct created an environment where MDOC staff continued, with impunity, to deny Plaintiff an education in violation of Plaintiff's Fourteenth Amendment right to safety and care while committed to MDOC custody.

727.    Defendants further knew or should have known that their direct actions, approval, and deliberate indifference to such conduct created an environment where MDOC staff continued, with impunity, to confine Plaintiff in conditions of confinement that amounted to punishment and/or posed a substantial risk of serious harm to his physical safety, including unreasonable and excessive periods of being housed in isolation, in violation of Plaintiff's Fourteenth Amendment Due Process rights and Eighth Amendment right to be free from cruel and unusual punishment.

728.    As a direct and proximate cause and result of the foregoing Plaintiff suffered substantial personal injuries of a disabling, debilitating, and permanent nature, severe and prolonged pain and suffering, loss of enjoyment of life, severe permanent mental and emotional distress, and lost income and earning capacity, and will be caused to suffer all of the foregoing losses and damages into the foreseeable future.

729.    Pursuant to 14 M.R.S. § 853, the statute of limitations was tolled on account of

125

Plaintiff's disabilities.

## TWENTY-EIGHTH CAUSE OF ACTION

5 M.R.S. § 4682(1-A) – Deliberate Indifference to Substantial Risks of Serious Harm in Violation of Article I, §§ 1, 6, 6-A, and 9 of the Maine Constitution
(Plaintiff John Doe 2 against Defendants Martin Magnusson, Mary Ann Saar, Lars Olsen, Robert Lancaster, Barbara Heath, Daniel Boisot, Stephen Hasson, Roy Guzman, Michael Mack, Scott DeWitt, Leo Albert, Adrien Dufresne, Steven Rogers, Ewa Lewandowska, Peter McDermott, Garret Smith, Sean Clancy, and Lisa Tilly)

730.    Plaintiff realleges each paragraph of this Complaint as if fully stated herein.

731.    At all times relevant hereto, Defendants were acting under color of state law.

732.    At all times relevant hereto, Defendants, including their agents and employees, were entrusted and charged with the custody, care, and protection of Plaintiff, a minor, and exercised control over Plaintiff to the exclusion of others. As such, at all times relevant hereto, Defendants, in their individual capacities, had a duty to protect and ensure the safety of Plaintiff during his incarceration at the Youth Center.

733.    At all times relevant hereto, Plaintiff had constitutional rights under the Maine Constitution to be free from the deliberate indifference of a person, acting under color of law, to a substantial risk of serious harm, including serious risks from physical harm, medical needs, and conditions of confinement.

734.    At all times relevant hereto, Defendants were aware of, observed, or participated in incidents of Plaintiff being subjected to unreasonable or excessive uses of force and restraints and yet failed to take reasonable actions to abate such harm.

735.    At all times relevant hereto, Defendants were aware of, observed, or participated in

incidents of Plaintiff being subjected to sexual abuse, including gratuitous strip-searches done without legitimate penological justification, and yet failed to take reasonable actions to abate such harm.

736.    At all times relevant hereto, Defendants were aware of, observed, or participated in the denial of Plaintiff receiving necessary and adequate medical care, including mental health care, and yet failed to take reasonable actions to abate such harm.

737.    At all times relevant hereto, Defendants were aware of, observed, or participated in the denial of education to Plaintiff and yet failed to take reasonable action to abate such harm.

738.    At all times relevant hereto, Defendants were aware of, observed, or participated in confining Plaintiff in conditions that amounted to punishment and/or posed a substantial risk of serious harm to his physical safety, including unreasonable and excessive periods of being housed in isolation, and yet failed to take reasonable actions to abate such harm.

739.    Defendants further knew or should have known that their direct actions, approval, and deliberate indifference to such conduct created an environment where MDOC staff continued, with impunity, to use unreasonable and excessive force and restraints against Plaintiff in violation of Plaintiff's Article I, §§ 1, 6, 6-A, and 9 rights.

740.    Defendants further knew or should have known that their direct actions, approval, and deliberate indifference to such conduct created an environment where MDOC staff continued, with impunity, to sexually abuse, including gratuitously strip-searching, Plaintiff in violation of Plaintiff's Article I, §§ 1, 6, 6-A, and 9 rights.

741.    Defendants further knew or should have known that their direct actions, approval,

and deliberate indifference to such conduct created an environment where MDOC staff continued, with impunity, to deny Plaintiff necessary and adequate medical care, including mental health care, in violation of Plaintiff's Article I, §§ 1, 6, 6-A, and 9 rights.

742.   Defendants further knew or should have known that their direct actions, approval, and deliberate indifference to such conduct created an environment where MDOC staff continued, with impunity, to deny Plaintiff an education in violation of Plaintiff's Article I, §§ 1, 6, 6-A, and 9 rights.

743.   Defendants further knew or should have known that their direct actions, approval, and deliberate indifference to such conduct created an environment where MDOC staff continued, with impunity, to confine Plaintiff in conditions of confinement that amounted to punishment and/or posed a substantial risk of serious harm to his physical safety, including unreasonable and excessive periods of being housed in isolation, in violation of Plaintiff's Article I, §§ 1, 6, 6-A, and 9 rights.

744.   As a direct and proximate cause and result of the foregoing Plaintiff suffered substantial personal injuries of a disabling, debilitating, and permanent nature, severe and prolonged pain and suffering, loss of enjoyment of life, severe permanent mental and emotional distress, and lost income and earning capacity, and will be caused to suffer all of the foregoing losses and damages into the foreseeable future.

745.   Pursuant to 14 M.R.S. § 853, the statute of limitations was tolled on account of Plaintiff's disabilities.

## TWENTY-NINTH CAUSE OF ACTION

42 U.S.C. § 1983– Use of Unreasonable and Excessive Isolation in Violation of the Fourteenth and Eighth Amendments of the United States Constitution

(Plaintiff John Doe 2 against Defendants Martin Magnusson, Mary Ann Saar, Lars Olsen, Robert Lancaster, Barbara Heath, Daniel Boisot, Stephen Hasson, Roy Guzman, Michael Mack, Scott DeWitt, Leo Albert, Adrien Dufresne, Steven Rogers, Ewa Lewandowska, Peter McDermott, Garret Smith, Sean Clancy, and Lisa Tilly)

746.    Plaintiff realleges each paragraph of this Complaint as if fully stated herein.

747.    Defendants, at all times relevant hereto, were acting under color of state law.

748.    Defendants routinely placed and approved the placement of Plaintiff in solitary confinement as punishment and kept Plaintiff in solitary confinement for extended durations of time that were unjustified by legitimate penological needs. In doing so, Defendants, in their individual capacities, violated Plaintiff's clearly established Fourteenth Amendment Due Process rights and Eighth Amendment right to be free from cruel and unusual punishment.

749.    As a direct and proximate cause and result of the foregoing, Plaintiff suffered substantial personal injuries of a disabling, debilitating, and permanent nature, severe and prolonged pain and suffering, loss of enjoyment of life, severe permanent mental and emotional distress, and lost income and earning capacity, and will be caused to suffer all of the foregoing losses and damages into the foreseeable future.

750.    Pursuant to 14 M.R.S. § 853, the statute of limitations was tolled on account of Plaintiff's disabilities, which prevented him from protecting his legal rights and bringing this action against Defendants.

## THIRTIETH CAUSE OF ACTION

5 M.R.S. § 4682(1-A) – Use of Unreasonable and Excessive Isolation in Violation of Article I, §§ 1, 6, 6-A, and 9 of the Maine Constitution
(Plaintiff John Doe 2 against Defendants Martin Magnusson, Mary Ann Saar, Lars Olsen, Robert Lancaster, Barbara Heath, Daniel Boisot, Stephen Hasson, Roy Guzman, Michael Mack, Scott DeWitt, Leo Albert, Adrien Dufresne, Steven Rogers, Ewa Lewandowska, Peter McDermott, Garret Smith, Sean Clancy, and Lisa Tilly)

751.    Plaintiff realleges each paragraph of this Complaint as if fully stated herein.

752.    Defendants at all times relevant to this action were acting under color of state law.

753.    Defendants routinely placed and approved the placement of Plaintiff in solitary confinement as punishment and kept Plaintiff in solitary confinement for extended durations of time that were unjustified by legitimate penological needs. In doing so, Defendants, in their individual capacities, violated Plaintiff's clearly established rights under the Maine Constitution, including: (1) the "safety" provision of Article I, § 1, which protects his "inherent and unalienable right[]" to "safety"; (2) Article I, § 6, which protects the "[r]ights of persons accused" not to "be deprived of life, liberty, property or privileges"; (3) Article I, § 6-A, which protects the right to "due process"; and (4) Article I, § 9, which guarantees the right to be free from cruel and usual punishment.

754.    As a direct and proximate cause and result of the foregoing, Plaintiff suffered substantial personal injuries of a disabling, debilitating, and permanent nature, severe and prolonged pain and suffering, loss of enjoyment of life, severe permanent mental and emotional distress, and lost income and earning capacity, and will be caused to suffer all of the foregoing losses and damages into the foreseeable future.

755.    Pursuant to 14 M.R.S. § 853, the statute of limitations was tolled on account of Plaintiff's disabilities, which prevented him from protecting his legal rights and bringing this action against Defendants.

## THIRTY-FIRST CAUSE OF ACTION

42 U.S.C. § 1983 – Unreasonable and Excessive Use of Force and Restraints in Violation of the Fourteenth and Eighth Amendments of the United States Constitution
(Plaintiff John Doe 2 against Defendants Martin Magnusson, Mary Ann Saar, Lars Olsen, Robert Lancaster, Barbara Heath, Daniel Boisot, Stephen Hasson, Roy Guzman, Michael Mack, Scott DeWitt, Steven Rogers, and Garret Smith)

756.    Plaintiff realleges each paragraph of this Complaint as if fully stated herein.

757.    Defendants, at all times relevant hereto, were acting under color of state law.

758.    Defendants used, approved, failed to intervene, and acted with deliberate indifference to unreasonable and excessive uses of force against Plaintiff that amounted to punishment and were unjustified by legitimate penological needs. In doing so, Defendants, in their individual capacities, violated Plaintiff's clearly established Fourteenth Amendment Due Process rights and Eighth Amendment right to be free from cruel and unusual punishment.

759.    Defendants used, approved, failed to intervene, and acted with deliberate indifference to the placement of Plaintiff in restraints for purposes of punishment rather than legitimate penological needs. Further, Defendants directly kept, approved, failed to intervene, or acted with deliberate indifference to Plaintiff remaining in such unreasonable and excessive restraints for extended durations of time. In doing so, Defendants, in their individual capacities, violated Plaintiff's clearly established Fourteenth Amendment Due Process rights and Eighth Amendment right to be free from cruel and unusual punishment.

760.    As a direct and proximate cause and result of the foregoing, Plaintiff suffered substantial personal injuries of a disabling, debilitating, and permanent nature, severe and prolonged pain and suffering, loss of enjoyment of life, severe permanent mental and emotional distress, and lost income and earning capacity, and will be caused to suffer all of the foregoing losses and damages into the foreseeable future.

761.    Pursuant to 14 M.R.S. § 853, the statute of limitations was tolled on account of Plaintiff's disabilities, which prevented him from protecting his legal rights and bringing this action against Defendants.

### THIRTY-SECOND CAUSE OF ACTION

5 M.R.S. § 4682(1-A) – Unreasonable and Excessive Use of Force and Restraints in Violation of Article I, §§ 1, 6, 6-A, and 9 of the Maine Constitution
(Plaintiff John Doe 2 against Defendants Martin Magnusson, Mary Ann Saar, Lars Olsen, Robert Lancaster, Barbara Heath, Daniel Boisot, Stephen Hasson, Roy Guzman, Michael Mack, Scott DeWitt, Steven Rogers, and Garret Smith)

762.    Plaintiff realleges each paragraph of this Complaint as if fully stated herein.

763.    Defendants, at all times relevant hereto, were acting under color of state law.

764.    Defendants used, approved, failed to intervene, and acted with deliberate indifference to unreasonable and excessive uses of force against Plaintiff that amounted to punishment and were unjustified by legitimate penological needs. In doing so, Defendants, in their individual capacities, violated Plaintiff's clearly established rights under the Maine Constitution, including: (1) the "safety" provision of Article I, § 1, which protects his "inherent and unalienable right[]" to "safety"; (2) Article I, § 6, which protects the "[r]ights of persons accused" not to "be deprived of life, liberty, property or privileges"; (3) Article I, § 6-A, which protects the right to "due process"; and (4) Article I, § 9, which guarantees the right to be free from cruel and usual punishment.

765.    Defendants used, approved, failed to intervene, and acted with deliberate indifference to the placement of Plaintiff in restraints for purposes of punishment rather than legitimate penological needs. Further, Defendants directly kept, approved, failed to intervene, or acted with deliberate indifference to Plaintiff remaining in such unreasonable and excessive restraints for extended durations of time. In doing so, Defendants, in their individual capacities, violated Plaintiff's clearly established rights under the Maine Constitution, including: (1) the "safety" provision of Article I, § 1, which protects his "inherent and unalienable right[]" to "safety"; (2) Article I, § 6, which protects the "[r]ights of persons accused" not to "be deprived of

life, liberty, property or privileges"; (3) Article I, § 6-A, which protects the right to "due process"; and (4) Article I, § 9, which guarantees the right to be free from cruel and usual punishment.

766.    As a direct and proximate cause and result of the foregoing, Plaintiff suffered substantial personal injuries of a disabling, debilitating, and permanent nature, severe and prolonged pain and suffering, loss of enjoyment of life, severe permanent mental and emotional distress, and lost income and earning capacity, and will be caused to suffer all of the foregoing losses and damages into the foreseeable future.

767.    Pursuant to 14 M.R.S. § 853, the statute of limitations was tolled on account of Plaintiff's disabilities, which prevented him from protecting his legal rights and bringing this action against Defendants.

### THIRTY-THIRD CAUSE OF ACTION

42 U.S.C. § 1983 – Denial of Necessary Medical Treatment and Deliberate Indifference to Serious Medical Needs in Violation of the Fourteenth and Eighth Amendments of the United States Constitution
(Plaintiff John Doe 2 against Defendants Martin Magnusson, Mary Ann Saar, Lars Olsen, Robert Lancaster, Barbara Heath, Daniel Boisot, Stephen Hasson, Roy Guzman, Michael Mack, Scott DeWitt, Leo Albert, Adrien Dufresne, Steven Rogers, Ewa Lewandowska, Peter McDermott, Garret Smith, Sean Clancy, and Lisa Tilly)

768.    Plaintiff realleges each paragraph of this Complaint as if fully stated herein.

769.    Defendants, at all times relevant hereto, were acting under color of state law.

770.    Defendants, at all times relevant hereto, knew or should have known that Plaintiff suffered from severe mental illness that necessitated Plaintiff receiving medical care for that mental illness and placed Plaintiff at a substantial risk of serious harm if such treatment was not provided.

771.    Defendants, at all times relevant hereto, were responsible for ensuring Plaintiff was receiving appropriate and necessary medical care, including mental health care.

772.    Defendants, at all times relevant hereto, knew or should have known that Plaintiff was not receiving the necessary mental health care treatment, and that his conditions of confinement, including unreasonable and excessive isolation, were causing his mental health to further deteriorate and resulting in further damage.

773.    Defendants acted with deliberate indifference to this substantial risk of serious harm by failing to provide Plaintiff with any reasonable and adequate medical and mental health care treatment in violation of Plaintiff's Fourteenth Amendment Due Process rights and Eighth Amendment right to be free from cruel and unusual punishment.

774.    As a direct and proximate cause and result of the foregoing, Plaintiff suffered substantial personal injuries of a disabling, debilitating, and permanent nature, severe and prolonged pain and suffering, loss of enjoyment of life, severe permanent mental and emotional distress, and lost income and earning capacity, and will be caused to suffer all of the foregoing losses and damages into the foreseeable future.

775.    Pursuant to 14 M.R.S. § 853, the statute of limitations was tolled on account of Plaintiff's disabilities, which prevented him from protecting his legal rights and bringing this action against Defendants.

### THIRTY-FOURTH CAUSE OF ACTION

5 M.R.S. § 4682(1-A) – Denial of Necessary Medical Treatment and Deliberate Indifference to Serious Medical Needs in Violation of Article I, §§ 1, 6, 6-A, and 9 of the Maine Constitution (Plaintiff John Doe 2 against Defendants Martin Magnusson, Mary Ann Saar, Lars Olsen, Robert Lancaster, Barbara Heath, Daniel Boisot, Stephen Hasson, Roy Guzman, Michael Mack, Scott DeWitt, Leo Albert, Adrien Dufresne, Steven Rogers, Ewa Lewandowska, Peter McDermott, Garret Smith, Sean Clancy, and Lisa Tilly)

776.    Plaintiff realleges each paragraph of this Complaint as if fully stated herein.

777.    Defendants, at all times relevant hereto, were acting under color of state law.

778.    Defendants, at all times relevant hereto, knew or should have known that Plaintiff suffered from severe mental illness that necessitated Plaintiff receiving medical care for that mental illness and placed Plaintiff at a substantial risk of serious harm if such treatment was not provided.

779.    Defendants, at all times relevant to these actions, were responsible for ensuring Plaintiff was receiving appropriate medical care, including mental health care.

780.    Defendants, at all times relevant hereto, knew or should have known that Plaintiff was not receiving the necessary mental health care treatment, and that his conditions of confinement, including unreasonable and excessive isolation, were causing his mental health to further deteriorate and resulting in further damage.

781.    Defendants acted with deliberate indifference to this substantial risk of serious harm by failing to provide Plaintiff with any reasonable and adequate medical and mental health care treatment in violation of Plaintiff's clearly established rights under the Maine Constitution, including: (1) the "safety" provision of Article I, § 1, which protects his "inherent and unalienable right[]" to "safety"; (2) Article I, § 6, which protects the "[r]ights of persons accused" not to "be deprived of life, liberty, property or privileges"; (3) Article I, § 6-A, which protects the right to "due process"; and (4) Article I, § 9, which guarantees the right to be free from cruel and usual punishment.

782.    As a direct and proximate cause and result of the foregoing, Plaintiff suffered substantial personal injuries of a disabling, debilitating, and permanent nature, severe and prolonged pain and suffering, loss of enjoyment of life, severe permanent mental and emotional distress, and lost income and earning capacity, and will be caused to suffer all of the foregoing losses and damages into the foreseeable future.

783.    Pursuant to 14 M.R.S. § 853, the statute of limitations was tolled on account of Plaintiff's disabilities, which prevented him from protecting his legal rights and bringing this action against Defendants.

## THIRTY-FIFTH CAUSE OF ACTION

42 U.S.C. § 1983 – Sexual Abuse in Violation of the Fourteenth and Eighth Amendments of the United States Constitution
(Plaintiff John Doe 2 against Defendant Garret Smith)

784.    Plaintiff realleges each paragraph of this Complaint as if fully stated herein.

785.     Defendant, at all times relevant to this action, was acting under color of state law.

786.    Defendant repeatedly sexually abused, or failed to prevent repeated sexual abuse of Plaintiff, while he was a minor and incarcerated at the Youth Center. There was no valid penological justification for Defendant inflicting and/or exposing Plaintiff to sexual abuse. Through this conduct, Defendant, in his individual capacity, violated Plaintiff's Fourteenth Amendment Due Process rights and Eighth Amendment right to be free from cruel and unusual punishment.

787.    As a direct and proximate cause and result of the foregoing, Plaintiff suffered substantial personal injuries of a disabling, debilitating, and permanent nature, severe and prolonged pain and suffering, loss of enjoyment of life, severe permanent mental and emotional distress, and lost income and earning capacity, and will be caused to suffer all of the foregoing losses and damages into the foreseeable future.

788.    Pursuant to 14 M.R.S. § 853, the statute of limitations was tolled on account of Plaintiff's disabilities, which prevented him from protecting his legal rights and bringing this action against Defendant.

789.    At the time this cause of action arose Plaintiff was a minor. Thus, pursuant to 14

136

M.R.S. §752-C this cause of action may be brought at any time.

## THIRTY-SIXTH CAUSE OF ACTION

5 M.R.S § 4681(1-A) – Sexual Abuse in Violation of Article I, §§ 1, 5, 6, 6-A, and 9 of the
Maine Constitution
(By Plaintiff John Doe 2 against Defendant Garret Smith)

790.    Plaintiff realleges each paragraph of this Complaint as if fully stated herein.

791.     Defendant, at all times relevant hereto, was acting under color of state law.

792.    Defendant repeatedly sexually abused, or failed to prevent repeated sexual abuse of, Plaintiff, while he was a minor and incarcerated at the Youth Center. There was no valid penological justification for Defendant inflicting and/or exposing Plaintiff to sexual abuse. Through this conduct, Defendant, in his individual capacity, violated Plaintiff's clearly established rights under the Maine Constitution, including: (1) the "safety" provision of Article I, § 1, which protects his "inherent and unalienable right[]" to "safety"; (2) Article I, § 6, which protects the "[r]ights of persons accused" not to "be deprived of life, liberty, property or privileges"; (3) Article I, § 6-A, which protects the right to "due process"; and (4) Article I, § 9, which guarantees the right to be free from cruel and usual punishment.

793.    As a direct and proximate cause and result of the foregoing, Plaintiff suffered substantial personal injuries of a disabling, debilitating, and permanent nature, severe and prolonged pain and suffering, loss of enjoyment of life, severe permanent mental and emotional distress, and lost income and earning capacity, and will be caused to suffer all of the foregoing losses and damages into the foreseeable future.

794.    At the time this cause of action arose, Plaintiff was a minor. Thus, pursuant to 14 M.R.S. § 752-C this action may be commenced at any time.

## THIRTY-SEVENTH CAUSE OF ACTION

137

Maine State Law – Intentional Infliction of Emotional Distress
(Plaintiff John Doe 2 against Defendants Martin Magnusson, Mary Ann Saar, Lars Olsen, Robert Lancaster, Barbara Heath, Daniel Boisot, Stephen Hasson, Roy Guzman, Michael Mack, Scott DeWitt, Leo Albert, Adrien Dufresne, Steven Rogers, Ewa Lewandowska, Peter McDermott, Garret Smith, Sean Clancy, and Lisa Tilly)

795.    Plaintiff realleges each paragraph of this Complaint as if fully stated herein.

796.    Through their violations of Plaintiff's rights under the United States and Maine Constitutions, Defendants intentionally or recklessly, with conscious disregard of the likelihood of harm and/or severe emotional distress, inflicted severe emotional distress on Plaintiff.

797.    Defendants' conduct was so extreme and outrageous so as to as to exceed all possible bounds of decency and as to be regarded as atrocious and utterly intolerable in a civilized community. R.S. (Second) Torts, § 46, cmt. D.

798.    Defendants' conduct was executed in such a way as to inflict emotional distress and to harm Plaintiff, emotionally, mentally, physically, and psychologically.

799.    As a result of Defendants' conduct, as outlined herein, Plaintiff, while incarcerated at the Youth Center, was subjected to repeated constitutional violations, at the hands of those acting under color of law, including unreasonable and excessive uses of force, restraints, and isolation, deliberate indifference to substantial risks of serious harm, and sexual abuse.

800.    Defendants' conduct was the actual, proximate, and factual cause of severe emotional distress of Plaintiff.

801.    Plaintiff has suffered and continues to suffer great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life; distrust, anxiety, and distress related

to authority figures; depression, nightmares, nervousness, stress, and/or other trauma; mental anguish, humiliation, embarrassment, insomnia, and fear.

802.    Plaintiff was also prevented and will continue to be prevented from performing Plaintiff's daily activities and obtaining the full enjoyment of life; has sustained and will continue to sustain loss of earnings and earning capacity; and/or has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling.

803.    The aforesaid injuries were due to willful, wanton, reckless, and intentional acts of Defendants and were in no way caused by any act or failure to act on the part of Plaintiff.

## THIRTY-EIGHTH CAUSE OF ACTION

42 U.S.C. § 1983 – Deliberate Indifference to Substantial Risks of Serious Harm in Violation of the Fourteenth and Eighth Amendments of the United States Constitution (Plaintiff John Doe 3 against Defendants Martin Magnusson, Mary Ann Saar, Lars Olsen, Robert Lancaster, Barbara Heath, Michael Mack, Daniel Thurlow, Michael Whelan, John Coyne, Christopher Coyne, Jeffrey Tardiff, Steven Rogers, David Clock, Garret Smith, James Bell, FNU Bell, Matthew Nee, Timothy Foust, FNU Farr, and FNU Owens)

804.    Plaintiff realleges each paragraph of this Complaint as if fully stated herein.

805.    At all times relevant hereto, Defendants were acting under color of state law.

806.    At all times relevant hereto, Defendants, including their agents and employees, were entrusted and charged with the custody, care, and protection of Plaintiff, a minor, and exercised control over Plaintiff to the exclusion of others. As such, at all times relevant hereto, Defendants, in their individual capacities, had a duty to protect and ensure the safety of Plaintiff during his incarceration at the Youth Center.

807.    At all times relevant hereto, Plaintiff had constitutional rights under the Fourteenth

and Eighth Amendments to be free from the deliberate indifference of a person, acting under color of law, to a substantial risk of serious harm, including, but not limited to, serious risks from physical harm, medical needs, and conditions of confinement.

808. At all times relevant hereto, Defendants were aware of, observed, or participated in incidents of Plaintiff being subjected to unreasonable or excessive uses of force and restraints, and yet failed to take reasonable actions to abate such harm.

809. At all times relevant hereto, Defendants were aware of, observed, or participated in incidents of Plaintiff being subjected to sexual abuse, including gratuitous strip-searches done without legitimate penological justification, and yet failed to take reasonable actions to abate such harm.

810. At all times relevant hereto, Defendants were aware of, observed, or participated in the denial of Plaintiff receiving necessary and adequate medical care, including mental health care, and yet failed to take reasonable actions to abate such harm.

811. At all times relevant hereto, Defendants were aware of, observed, or participated in the denial of education to Plaintiff, and yet failed to take reasonable actions to abate such harm.

812. At all times relevant hereto, Defendants were aware of, observed, or participated in confining Plaintiff in conditions that amounted to punishment and/or posed a substantial risk of serious harm to his physical safety, including unreasonable and excessive periods of being housed in isolation, and yet failed to take reasonable actions to abate such harm.

813. Defendants further knew or should have known that their direct actions, approval, and deliberate indifference to such conduct created an environment where MDOC staff continued, with impunity, to use unreasonable and excessive force and restraints in violation of Plaintiff's

Fourteenth Amendment Due Process rights and Eighth Amendment right to be free from cruel and unusual punishment.

814. Defendants further knew or should have known that their direct actions, approval, and deliberate indifference to such conduct created an environment where MDOC staff continued, with impunity, to sexually abuse, including gratuitously strip-searching, Plaintiff in violation of Plaintiff's Fourteenth Amendment Due Process rights and Eighth Amendment right to be free from cruel and unusual punishment.

815. Defendants further knew or should have known that their direct actions, approval, and deliberate indifference created an environment where MDOC staff continued, with impunity, to deny Plaintiff adequate and necessary medical care, including mental health care, in violation of Plaintiff's Fourteenth Amendment Due Process rights and Eighth Amendment right to be free from cruel and unusual punishment.

816. Defendants further knew or should have known that their direct actions, approval, and deliberate indifference to such conduct created an environment where MDOC staff continued, with impunity, to deny Plaintiff an education in violation of Plaintiff's Fourteenth Amendment Due Process rights and Eighth Amendment right to be free from cruel and unusual punishment.

817. Defendants further knew or should have known that their direct actions, approval, and deliberate indifference to such conduct created an environment where MDOC staff continued, with impunity, to confine Plaintiff in conditions of confinement that amounted to punishment and/or posed a substantial risk of serious harm to her physical safety, including unreasonable and excessive periods of being housed in isolation, in violation of Plaintiff's Fourteenth Amendment Due Process rights and Eighth Amendment right to be free from cruel and unusual punishment.

818. As a direct and proximate cause and result of the foregoing Plaintiff suffered

substantial personal injuries of a disabling, debilitating, and permanent nature, severe and prolonged pain and suffering, loss of enjoyment of life, severe permanent mental and emotional distress, and lost income and earning capacity, and will be caused to suffer all of the foregoing losses and damages into the foreseeable future.

819.    Pursuant to 14 M.R.S. § 853, the statute of limitations was tolled on account of Plaintiff's disabilities.

## THIRTY-NINTH CAUSE OF ACTION

5 M.R.S. § 4682(1-A) – Deliberate Indifference to Substantial Risks of Serious Harm in in Violation of Article I, §§ 1, 6, 6-A, and 9 of the Maine Constitution
(Plaintiff John Doe 3 against Defendants Martin Magnusson, Mary Ann Saar, Lars Olsen, Robert Lancaster, Barbara Heath, Michael Mack, Daniel Thurlow, Michael Whelan, John Coyne, Christopher Coyne, Jeffrey Tardiff, Steven Rogers, David Clock, Garret Smith, James Bell, FNU Bell, Matthew Nee, Timothy Foust, FNU Farr, and FNU Owens)

820.    Plaintiff realleges each paragraph of the Complaint as is fully stated herein.

821.    At all times relevant hereto, Defendants were acting under color of state law.

822.    At all times relevant hereto, Defendants, including their agents and employees, were entrusted and charged with the custody, care, and protection of Plaintiff, a minor, and exercised control over Plaintiff to the exclusion of others. As such, at all times relevant hereto, Defendants, in their individual capacities, had a duty to protect and ensure the safety of Plaintiff during his incarceration at the Youth Center.

823.    At all times relevant hereto, Plaintiff had constitutional rights under the Maine Constitution to be free from the deliberate indifference of a person, acting under color of law, to a substantial risk of serious harm, including serious risks from physical harm, medical needs, and conditions of confinement.

824.    At all times relevant hereto, Defendants were aware of, observed, or participated in

incidents of Plaintiff being subjected to unreasonable or excessive uses of force and restraints, and yet failed to take reasonable actions to abate such harm.

825.     At all times relevant hereto, Defendants were aware of, observed, or participated in incidents of Plaintiff being subjected to sexual abuse, including gratuitous strip-searches done without legitimate penological justification, and yet failed to take reasonable actions to abate such harm.

826.     At all times relevant hereto, Defendants were aware of, observed, or participated in the denial of Plaintiff receiving necessary and adequate medical care, including mental health care, and yet failed to take reasonable actions to abate such harm.

827.     At all times relevant hereto, Defendants were aware of, observed, or participated in the denial of education to Plaintiff and yet failed to take reasonable action to abate such harm.

828.     At all times relevant hereto, Defendants were aware of, observed, or participated in confining Plaintiff in conditions that amounted to punishment and/or posed a substantial risk of serious harm to his physical safety, including unreasonable and excessive periods of being housed in isolation, and yet failed to take reasonable actions to abate such harm.

829.     Defendants further knew or should have known that their direct actions, approval, and deliberate indifference to such conduct created an environment where MDOC staff continued, with impunity, to use unreasonable and excessive force, and restraints against Plaintiff in violation of Plaintiff's Article I, §§ 1, 6, 6-A, and 9 rights.

830.     Defendants further knew or should have known that their direct actions, approval, and deliberate indifference to such conduct created an environment where MDOC staff continued, with impunity, to gratuitously strip-search Plaintiff in violation of Plaintiff's Article I, §§ 1, 6, 6-A, and 9 rights.

831.    Defendants further knew or should have known that their direct actions, approval, and deliberate indifference to such conduct created an environment where MDOC staff continued, with impunity, to deny Plaintiff necessary and adequate medical care, including mental health care, in violation of Plaintiff's Article I, §§ 1, 6, 6-A, and 9 rights.

832.    Defendants further knew or should have known that their direct actions, approval, and deliberate indifference to such conduct created an environment where MDOC staff continued, with impunity, to deny Plaintiff an education in violation of Plaintiff's Article I, §§ 1, 6, 6-A, and 9 rights.

833.    Defendants further knew or should have known that their direct actions, approval, and deliberate indifference to such conduct created an environment where MDOC staff continued, with impunity, to confine Plaintiff in conditions of confinement that amounted to punishment and/or posed a substantial risk of serious harm to his physical safety, including unreasonable and excessive periods of being housed in isolation, in violation of Plaintiff's Article I, §§ 1, 6, 6-A, and 9 rights.

834.    As a direct and proximate cause and result of the foregoing Plaintiff suffered substantial personal injuries of a disabling, debilitating, and permanent nature, severe and prolonged pain and suffering, loss of enjoyment of life, severe permanent mental and emotional distress, and lost income and earning capacity, and will be caused to suffer all of the foregoing losses and damages into the foreseeable future.

835.    Pursuant to 14 M.R.S. § 853, the statute of limitations was tolled on account of Plaintiff's disabilities.

**FORTIETH CAUSE OF ACTION**

144

42 U.S.C. § 1983– Use of Unreasonable and Excessive Isolation in Violation of the Fourteenth and Eighth Amendments of the United States Constitution
(Plaintiff John Doe 3 against Defendants Martin Magnusson, Mary Ann Saar, Lars Olsen, Robert Lancaster, Barbara Heath, Michael Mack, Daniel Thurlow, Michael Whelan, John Coyne, Christopher Coyne, Jeffrey Tardiff, Steven Rogers, David Clock, Garret Smith, James Bell, FNU Bell, Matthew Nee, Timothy Foust, FNU Farr, and FNU Owens)

836.    Plaintiff realleges each paragraph of this Complaint as if fully stated herein.

837.    Defendants, at all times relevant hereto, were acting under color of state law.

838.    Defendants routinely placed and approved the placement of Plaintiff in solitary confinement as punishment and kept Plaintiff in solitary confinement for extended durations of time that were unjustified by legitimate penological needs. In doing so, Defendants, in their individual capacities, violated Plaintiff's clearly established Fourteenth Amendment Due Process rights and Eighth Amendment right to be free from cruel and unusual punishment.

839.    By routinely placing and approving the placement of Plaintiff in solitary confinement as punishment, and keeping him there for extended durations, Defendants, in their individual capacities, violated Plaintiff's clearly established due process rights guaranteed by Fourteenth Amendment.

840.    As a direct and proximate cause and result of the foregoing, Plaintiff suffered substantial personal injuries of a disabling, debilitating, and permanent nature, severe and prolonged pain and suffering, loss of enjoyment of life, severe permanent mental and emotional distress, and lost income and earning capacity, and will be caused to suffer all of the foregoing losses and damages into the foreseeable future.

841.    Pursuant to 14 M.R.S. § 853, the statute of limitations was tolled on account of Plaintiffs' disabilities, which prevented him from protecting his legal rights and bringing this action against Defendants.

145

## FORTY-FIRST CAUSE OF ACTION

5 M.R.S. § 4682(1-A) – Use of Unreasonable and Excessive Isolation in Violation of Article I, §§ 1, 6, 6-A, and 9 of the Maine Constitution
(Plaintiff John Doe 3 against Defendants Martin Magnusson, Mary Ann Saar, Lars Olsen, Robert Lancaster, Barbara Heath, Michael Mack, Daniel Thurlow, Michael Whelan, John Coyne, Christopher Coyne, Jeffrey Tardiff, Steven Rogers, David Clock, Garret Smith, James Bell, FNU Bell, Matthew Nee, Timothy Foust, FNU Farr, and FNU Owens)

842.    Plaintiff realleges each paragraph of this Complaint as if fully stated herein.

843.    Defendants, at all times relevant hereto, were acting under color of state law.

844.    Defendants routinely placed and approved the placement of Plaintiff in solitary confinement as punishment and kept Plaintiff in solitary confinement for extended durations of time that were unjustified by legitimate penological needs. In doing so, Defendants, in their individual capacities, violated Plaintiff's clearly established rights under the Maine Constitution, including: (1) the "safety" provision of Article I, § 1, which protects his "inherent and unalienable right[]" to "safety"; (2) Article I, § 6, which protects the "[r]ights of persons accused" not to "be deprived of life, liberty, property or privileges"; (3) Article I, § 6-A, which protects the right to "due process"; and (4) Article I, § 9, which guarantees the right to be free from cruel and usual punishment.

845.    As a direct and proximate cause and result of the foregoing, Plaintiff suffered substantial personal injuries of a disabling, debilitating, and permanent nature, severe and prolonged pain and suffering, loss of enjoyment of life, severe permanent mental and emotional distress, and lost income and earning capacity, and will be caused to suffer all of the foregoing losses and damages into the foreseeable future.

846.    Pursuant to 14 M.R.S. § 853, the statute of limitations was tolled on account of

146

Plaintiff's disabilities, which prevented him from protecting his legal rights and bringing this action against Defendants.

## FORTY-SECOND CAUSE OF ACTION

42 U.S.C. § 1983 – Unreasonable and Excessive Use of Force and Restraints in Violation of the Fourteenth and Eighth Amendments of the United States Constitution
(Plaintiff John Doe 3 against Defendants Martin Magnusson, Mary Ann Saar, Lars Olsen, Robert Lancaster, Barbara Heath, Michael Mack, Daniel Thurlow, Michael Whelan, John Coyne, Christopher Coyne, Jeffrey Tardiff, Steven Rogers, David Clock, Garret Smith, James Bell, FNU Bell, Matthew Nee, Timothy Foust, FNU Farr, and FNU Owens)

847.    Plaintiff realleges each paragraph of this Complaint as if fully stated herein.

848.    Defendants, at all times relevant hereto, were acting under color of state law.

849.    Defendants used, approved, failed to intervene, and acted with deliberate indifference to unreasonable and excessive uses of force against Plaintiff that amounted to punishment and were unjustified by legitimate penological needs. In doing so, Defendants, in their individual capacities, violated Plaintiff's clearly established Fourteenth Amendment Due Process rights and Eighth Amendment right to be free from cruel and unusual punishment.

850.    Defendants used, approved, failed to intervene, and acted with deliberate indifference to the placement of Plaintiff in restraints for purposes of punishment rather than legitimate penological needs. Further, Defendants directly kept, approved, failed to intervene, or acted with deliberate indifference to Plaintiff remaining in such unreasonable and excessive restraints for extended durations of time. In doing so, Defendants, in their individual capacities, violated Plaintiff's clearly established Fourteenth Amendment Due Process rights and Eighth Amendment right to be free from cruel and unusual punishment.

851.    As a direct and proximate cause and result of the foregoing, Plaintiff suffered

147

substantial personal injuries of a disabling, debilitating, and permanent nature, severe and prolonged pain and suffering, loss of enjoyment of life, severe permanent mental and emotional distress, and lost income and earning capacity, and will be caused to suffer all of the foregoing losses and damages into the foreseeable future.

852.    Pursuant to 14 M.R.S. § 853, the statute of limitations was tolled on account of Plaintiff's disabilities, which prevented him from protecting his legal rights and bringing this action against Defendants.

### FORTY-THIRD CAUSE OF ACTION

5 M.R.S. § 4682(1-A) – Unreasonable and Excessive Use of Force and Restraints in Violation of Article I, §§ 1, 6, 6-A, and 9 of the Maine Constitution
(Plaintiff John Doe 3 against Defendants Martin Magnusson, Mary Ann Saar, Lars Olsen, Robert Lancaster, Barbara Heath, Michael Mack, Daniel Thurlow, Michael Whelan, John Coyne, Christopher Coyne, Jeffrey Tardiff, Steven Rogers, David Clock, Garret Smith, James Bell, FNU Bell, Matthew Nee, Timothy Foust, FNU Farr, and FNU Owens)

853.    Plaintiff realleges each paragraph of this Complaint as if fully stated herein.

854.     Defendants, at all times relevant hereto, were acting under color of state law.

855.     Defendants used, approved, failed to intervene, and acted with deliberate indifference to unreasonable and excessive uses of force against Plaintiff that amounted to punishment and were unjustified by legitimate penological needs. In doing so, Defendants, in their individual capacities, violated Plaintiff's clearly established rights under the Maine Constitution, including: (1) the "safety" provision of Article I, § 1, which protects his "inherent and unalienable right[]" to "safety"; (2) Article I, § 6, which protects the "[r]ights of persons accused" not to "be deprived of life, liberty, property or privileges"; (3) Article I, § 6-A, which protects the right to "due process"; and (4) Article I, § 9, which guarantees the right to be free from cruel and usual punishment.

856.    Defendants used, approved, failed to intervene, and acted with deliberate indifference to the placement of Plaintiff in restraints for purposes of punishment rather than legitimate penological needs. Further, Defendants directly kept, approved, failed to intervene, or acted with deliberate indifference to Plaintiff remaining in such unreasonable and excessive restraints for extended durations of time. In doing so, Defendants, in their individual capacities, violated Plaintiff's clearly established rights under the Maine Constitution, including: (1) the "safety" provision of Article I, § 1, which protects his "inherent and unalienable right[]" to "safety"; (2) Article I, § 6, which protects the "[r]ights of persons accused" not to "be deprived of life, liberty, property or privileges"; (3) Article I, § 6-A, which protects the right to "due process"; and (4) Article I, § 9, which guarantees the right to be free from cruel and usual punishment.

857.    As a direct and proximate cause and result of the foregoing, Plaintiff suffered substantial personal injuries of a disabling, debilitating, and permanent nature, severe and prolonged pain and suffering, loss of enjoyment of life, severe permanent mental and emotional distress, and lost income and earning capacity, and will be caused to suffer all of the foregoing losses and damages into the foreseeable future.

858.    Pursuant to 14 M.R.S. § 853, the statute of limitations was tolled on account of Plaintiff's disabilities, which prevented him from protecting his legal rights and bringing this action against Defendants.

## FORTY-FOURTH CAUSE OF ACTION

42 U.S.C. § 1983 – Denial of Necessary Medical Treatment and Deliberate Indifference to
Serious Medical Needs in Violation of the Fourteenth and Eighth Amendments
of the United States Constitution
(Plaintiff John Doe 3 against Defendants Martin Magnusson, Mary Ann Saar, Lars Olsen, Robert
Lancaster, Barbara Heath, Michael Mack, Daniel Thurlow, Michael Whelan, John Coyne,
Christopher Coyne, Jeffrey Tardiff, Steven Rogers, David Clock, Garret Smith, James Bell, FNU
Bell, Matthew Nee, Timothy Foust, FNU Farr, and FNU Owens)

859.    Plaintiff realleges each paragraph of this Complaint as if fully stated herein.

860.    Defendants, at all times relevant hereto, were acting under color of state law.

861.    Defendants, at all times relevant hereto, knew or should have known Plaintiff suffered from severe mental illness that necessitated Plaintiff receiving medical care for that mental illness and placed Plaintiff at a substantial risk of serious harm if such treatment was not provided.

862.    Defendants, at all times relevant hereto, were responsible for ensuring Plaintiff was receiving appropriate and necessary medical care, including mental health care.

863.    Defendants, at all times relevant hereto, knew or should have known that Plaintiff was not receiving the necessary mental health care treatment, and that his conditions of confinement, including unreasonable and excessive isolation, were causing his mental health to further deteriorate and resulting in further damage.

864.    Defendants acted with deliberate indifference to this substantial risk of serious harm by failing to provide Plaintiff with any reasonable and adequate medical and mental health care treatment in violation of Plaintiff's Fourteenth Amendment Due Process rights and Eighth Amendment right to be free from cruel and unusual punishment.

865.    As a direct and proximate cause and result of the foregoing, Plaintiff suffered substantial personal injuries of a disabling, debilitating, and permanent nature, severe and prolonged pain and suffering, loss of enjoyment of life, severe permanent mental and emotional distress, and lost income and earning capacity, and will be caused to suffer all of the foregoing losses and damages into the foreseeable future.

866.    Pursuant to 14 M.R.S. § 853, the statute of limitations was tolled on account of

Plaintiff's disabilities, which prevented him from protecting his legal rights and bringing this action against Defendants.

## FORTY-FIFTH CAUSE OF ACTION

5 M.R.S. § 4682(1-A) – Denial of Necessary Medical Treatment and Deliberate Indifference to Serious Medical Needs in Violation of Article I, §§ 1, 5, 6, 6-A, and 9 of the Maine Constitution (Plaintiff John Doe 3 against Defendants Martin Magnusson, Mary Ann Saar, Lars Olsen, Robert Lancaster, Barbara Heath, Michael Mack, Daniel Thurlow, Michael Whelan, John Coyne, Christopher Coyne, Jeffrey Tardiff, Steven Rogers, David Clock, Garret Smith, James Bell, FNU Bell, Matthew Nee, Timothy Foust, FNU Farr, and FNU Owens)

867.    Plaintiff realleges each paragraph of this Complaint as if fully stated herein.

868.    Defendants, at all times relevant hereto, were acting under color of state law.

869.    Defendants, at all times relevant hereto, knew or should have known that Plaintiff suffered from severe mental illness that necessitated Plaintiff receiving medical care for that mental illness and placed Plaintiff at a substantial risk of serious harm if such treatment was not provided.

870.    Defendants, at all times relevant hereto, were responsible for ensuring Plaintiff was receiving appropriate medical care, including mental health care

871.    Defendants, at all times relevant hereto, knew or should have known that Plaintiff was not receiving the necessary mental health care treatment, and that his conditions of confinement, including unreasonable and excessive isolation, were causing his mental health to further deteriorate and resulting in further damage.

872.    Defendants acted with deliberate indifference to this substantial risk of serious harm by failing to provide Plaintiff with any reasonable and adequate medical and mental health care treatment in violation of Plaintiff's clearly established rights under the Maine Constitution, including: (1) the "safety" provision of Article I, § 1, which protects his "inherent and unalienable

151

right[]" to "safety"; (2) Article I, § 6, which protects the "[r]ights of persons accused" not to "be deprived of life, liberty, property or privileges"; (3) Article I, § 6-A, which protects the right to "due process"; and (4) Article I, § 9, which guarantees the right to be free from cruel and usual punishment.

873.    As a direct and proximate cause and result of the foregoing, Plaintiff suffered substantial personal injuries of a disabling, debilitating, and permanent nature, severe and prolonged pain and suffering, loss of enjoyment of life, severe permanent mental and emotional distress, and lost income and earning capacity, and will be caused to suffer all of the foregoing losses and damages into the foreseeable future.

874.    Pursuant to 14 M.R.S. § 853, the statute of limitations was tolled on account of Plaintiff's disabilities, which prevented him from protecting his legal rights and bringing this action against Defendants.

## FORTY-SIXTH CAUSE OF ACTION

42 U.S.C. § 1983 – Sexual Abuse in Violation of the Fourteenth and Eighth Amendments
of the United States Constitution
(Plaintiff John Doe 3 against Defendant Daniel Thurlow)

875.    Plaintiff realleges each paragraph of this Complaint as if fully stated herein.

876.     Defendant, at all times relevant hereto, was acting under color of state law.

877.    Defendant repeatedly sexually abused, or failed to prevent repeated sexual abuse of, Plaintiff, while he was a minor and incarcerated at the Youth Center. There was no valid penological justification for Defendant inflicting and/or exposing Plaintiff to sexual abuse. Through this conduct, Defendant, in his individual capacity, violated Plaintiff's Fourteenth Amendment Due Process rights and Eighth Amendment right to be free from cruel and unusual punishment.

878.    As a direct and proximate cause and result of the foregoing, Plaintiff suffered substantial personal injuries of a disabling, debilitating, and permanent nature, severe and prolonged pain and suffering, loss of enjoyment of life, severe permanent mental and emotional distress, and lost income and earning capacity, and will be caused to suffer all of the foregoing losses and damages into the foreseeable future.

879.    Pursuant to 14 M.R.S. § 853, the statute of limitations was tolled on account of Plaintiff's disabilities, which prevented him from protecting his legal rights and bringing this action against Defendant.

880.    At the time this cause of action arose, Plaintiff was a minor. Thus, pursuant to 14 M.R.S. § 752-C this action may be commenced at any time.

### FORTY-SEVENTH CAUSE OF ACTION

5 M.R.S § 4681(1-A) – Sexual Abuse in Violation of Article I, §§ 1, 6, 6-A, and 9
of the Maine Constitution
(Plaintiff John Doe 3 against Defendant Daniel Thurlow)

881.    Plaintiff realleges each paragraph of this Complaint as if fully stated herein.

882.    Defendant, at all times relevant hereto, was acting under color of state law.

883.    Defendant repeatedly sexually abused, or failed to prevent repeated sexual abuse of, Plaintiff, while he was a minor and incarcerated at the Youth Center. There was no valid penological justification for Defendant inflicting and/or exposing Plaintiff to sexual abuse. Through this conduct, Defendant in his individual capacity, violated Plaintiff's clearly established rights under the Maine Constitution, including: (1) the "safety" provision of Article I, § 1, which protects his "inherent and unalienable right[]" to "safety"; (2) Article I, § 6, which protects the "[r]ights of persons accused" not to "be deprived of life, liberty, property or privileges"; (3) Article

I, § 6-A, which protects the right to "due process"; and (4) Article I, § 9, which guarantees the right to be free from cruel and usual rights.

884.    As a direct and proximate cause and result of the foregoing, Plaintiff suffered substantial personal injuries of a disabling, debilitating, and permanent nature, severe and prolonged pain and suffering, loss of enjoyment of life, severe permanent mental and emotional distress, and lost income and earning capacity, and will be caused to suffer all of the foregoing losses and damages into the foreseeable future.

885.    At the time this cause of action arose, Plaintiff was a minor. Thus, pursuant to 14 M.R.S. § 752-C this action may be commenced at any time.

### FORTY-EIGHTH CAUSE OF ACTION

Maine State Law – Intentional Infliction of Emotional Distress
(Plaintiff John Doe 3 against Defendants Martin Magnusson, Mary Ann Saar, Lars Olsen, Robert Lancaster, Barbara Heath, Michael Mack, Daniel Thurlow, Michael Whelan, John Coyne, Christopher Coyne, Jeffrey Tardiff, Steven Rogers, David Clock, Garret Smith, James Bell, FNU Bell, Matthew Nee, Timothy Foust, FNU Farr, and FNU Owens)

886.    Plaintiff realleges each paragraph of this Complaint as if fully stated herein.

887.    Through  their violations of Plaintiff's rights under the United States and Maine Constitutions, Defendants intentionally or recklessly, with conscious disregard of the likelihood of harm and/or severe emotional distress, inflicted severe emotional distress on Plaintiff.

888.    Defendants' conduct was so extreme and outrageous so as to as to exceed all possible bounds of decency and as to be regarded as atrocious and utterly intolerable in a civilized community. R.S. (Second) Torts, § 46, cmt. D.

889.    As a result of Defendants' conduct, as outlined herein, Plaintiff, while incarcerated

at the Youth Center, was subjected to repeated constitutional violations, at the hands of those acting under color of law, including unreasonable and excessive uses of force, restraints, and isolation, deliberate indifference to substantial risks of serious harm, and sexual abuse.

890.    Defendants' conduct was the actual, proximate, and factual cause of severe emotional distress of Plaintiff.

891.    As a result, Plaintiff suffered emotional distress so severe that no reasonable person could be expected to endure it. Plaintiff suffered and continues to suffer great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation and loss of enjoyment of life; distrust, anxiety, and distress related to authority figures; depression, nightmares, nervousness, stress and/or other trauma; mental anguish, humiliation, embarrassment, insomnia, and fear.

892.    Plaintiff was also prevented and will continue to be prevented from performing Plaintiff's daily activities and obtaining the full enjoyment of life; has sustained and will continue to sustain loss of earnings and earning capacity; and/or has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling.

893.    The aforesaid injuries were due to willful, wanton, reckless, and intentional acts of Defendants and were in no way caused by any act or failure to act on the part of Plaintiff.

### FORTY-NINTH CAUSE OF ACTION

42 U.S.C. § 1983 – Deliberate Indifference to Substantial Risks of Serious Harm in
Violation of the Fourteenth and Eighth Amendments of the United States Constitution
(Plaintiff John Doe 4 against Defendants Martin Magnusson, Mary Ann Saar, Lars Olsen, Robert
Lancaster, Barbara Heath, Daniel Thurlow, Michael Whelan, Christopher Coyne, Matthew Nee,
Timothy Foust, FNU Moreau, FNU Turner, and FNU Dotay)

894.    Plaintiff realleges each paragraph of this Complaint as if fully stated herein.

895.    At all times relevant hereto, Defendants were acting under color of state law.

896.    At all times relevant hereto, Defendants including their agents and employees, were entrusted and charged with the custody, care, and protection of Plaintiff, a minor, and exercised control over Plaintiff to the exclusion of others. As such, at all times relevant hereto, Defendants, in their individual capacities, had a duty to protect and ensure the safety of Plaintiff during his incarceration at the Youth Center.

897.    At all times relevant hereto, Plaintiff had constitutional rights under the Fourteenth and Eighth Amendments to be free from the deliberate indifference of a person, acting under color of law, to a substantial risk of serious harm, including, but not limited to, serious risks from physical harm, medical needs, and conditions of confinement.

898.    At all times relevant hereto, Defendants were aware of, observed, or participated in incidents of Plaintiff being subjected to unreasonable or excessive uses of force and restraints, and yet failed to take reasonable actions to abate such harm.

899.    At all times relevant hereto, Defendants were aware of, observed, or participated in incidents of Plaintiff being subjected to sexual abuse, including gratuitous strip-searches done without legitimate penological justification, and yet failed to take reasonable actions to abate such harm.

900.    At all times relevant hereto, Defendants were aware of, observed, or participated in the denial of Plaintiff receiving necessary and adequate medical care, including mental health care, and yet failed to take reasonable actions to abate such harm.

901.    At all times relevant hereto, Defendants were aware of, observed, or participated in the denial of education to Plaintiff, and yet failed to take reasonable actions to abate such harm.

902.    At all times relevant hereto, Defendants were aware of, observed, or participated in

confining Plaintiff in conditions that amounted to punishment and/or posed a substantial risk of serious harm to his physical safety, including unreasonable and excessive periods of being housed in isolation, and yet failed to take reasonable actions to abate such harm.

903.    Defendants further knew or should have known that their direct actions, approval, and deliberate indifference to such conduct created an environment where MDOC staff continued, with impunity, to use unreasonable and excessive force and restraints in violation of Plaintiff's Fourteenth Amendment Due Process rights and Eighth Amendment right to be free from cruel and unusual punishment.

904.    Defendants further knew or should have known that their direct actions, approval, and deliberate indifference to such conduct created an environment where MDOC staff continued, with impunity, to sexually abuse, including gratuitously strip-searching, Plaintiff in violation of Plaintiff's Fourteenth Amendment Due Process rights and Eighth Amendment right to be free from cruel and unusual punishment.

905.    Defendants further knew or should have known that their direct actions, approval, and deliberate indifference to such conduct created an environment where MDOC staff continued, with impunity, to deny Plaintiff adequate and necessary medical care, including mental health care, in violation of Plaintiff's Fourteenth Amendment Due Process rights and Eighth Amendment right to be free from cruel and unusual punishment.

906.    Defendants further knew or should have known that their direct actions, approval, and deliberate indifference to such conduct created an environment where MDOC staff continued, with impunity, to deny Plaintiff an education in violation of Plaintiff's Fourteenth Amendment Due Process rights and Eighth Amendment right to be free from cruel and unusual punishment.

907.    Defendants further knew or should have known that their direct actions, approval,

and deliberate indifference to such conduct created an environment where MDOC staff continued, with impunity, to confine Plaintiff in conditions of confinement that amounted to punishment and/or posed a substantial risk of serious harm to her physical safety, including unreasonable and excessive periods of being housed in isolation, in violation of Plaintiff's Fourteenth Amendment Due Process rights and Eighth Amendment right to be free from cruel and unusual punishment.

908.    As a direct and proximate cause and result of the foregoing Plaintiff suffered substantial personal injuries of a disabling, debilitating, and permanent nature, severe and prolonged pain and suffering, loss of enjoyment of life, severe permanent mental and emotional distress, and lost income and earning capacity, and will be caused to suffer all of the foregoing losses and damages into the foreseeable future.

909.    Pursuant to 14 M.R.S. § 853, the statute of limitations was tolled on account of Plaintiff's disabilities.

### FIFTIETH CAUSE OF ACTION

5 M.R.S. § 4682(1-A) – Deliberate Indifference to Substantial Risks of Serious Harm in Violation of Article I, §§ 1, 6, 6-A, and 9 of the Maine Constitution
(Plaintiff John Doe 4 against Defendants Martin Magnusson, Mary Ann Saar, Lars Olsen, Robert Lancaster, Barbara Heath, Daniel Thurlow, Michael Whelan, Christopher Coyne, Matthew Nee, Timothy Foust, FNU Moreau, FNU Turner, and FNU Dotay)

910.    Plaintiff realleges each paragraph of this Complaint as if fully stated herein.

911.    At all times relevant hereto, Defendants were acting under color of state law.

912.    At all times relevant hereto, Defendants, including their agents and employees, were entrusted and charged with the custody, care, and protection of Plaintiff, a minor, and exercised control over Plaintiff to the exclusion of others. As such, at all times relevant hereto, Defendants, in their individual capacities, had a duty to protect and ensure the safety of Plaintiff during his incarceration at the Youth Center.

913.    At all times relevant hereto, Plaintiff entrusted and charged with the custody, care, and protection of Plaintiff, a minor, and exercised control over Plaintiff to the exclusion of others. As such, at all times relevant hereto, Defendants, in their individual capacities, had a duty to protect and ensure the safety of Plaintiff during his incarceration at the Youth Center.

914.    At all times relevant hereto, Defendants were aware of, observed, or participated in incidents of Plaintiff being subjected to unreasonable or excessive uses of force and restraints and yet failed to take reasonable actions to abate such harm.

915.    At all times relevant hereto, Defendants were aware of, observed, or participated in incidents of Plaintiff being subjected to sexual abuse, including gratuitous strip-searches done without legitimate penological justification, and yet failed to take reasonable actions to abate such harm.

916.    At all times relevant hereto, Defendants were aware of, observed, or participated in the denial of Plaintiff receiving necessary and adequate medical care, including mental health care, and yet failed to take reasonable actions to abate such harm.

917.    At all times relevant hereto, Defendants were aware of, observed, or participated in the denial of education to Plaintiff, and yet failed to take reasonable action to abate such harm.

918.    At all times relevant hereto, Defendants were aware of, observed, or participated in confining Plaintiff in conditions that amounted to punishment and/or posed a substantial risk of serious harm to his physical safety, including unreasonable and excessive periods of being housed in isolation, and yet failed to take reasonable actions to abate such harm.

919.    Defendants further knew or should have known that their direct actions, approval,

and deliberate indifference to such conduct created an environment where MDOC staff continued, with impunity, to use unreasonable and excessive force, and restraints against Plaintiff in violation of Plaintiff's Article I, §§ 1, 6, 6-A, and 9 rights.

920.    Defendants further knew or should have known that their direct actions, approval, and deliberate indifference to such conduct created an environment where MDOC staff continued, with impunity, to sexually abuse, including gratuitously strip-searching, Plaintiff in violation of Plaintiff's Article I, §§ 1, 6, 6-A, and 9 rights.

921.    Defendants further knew or should have known that their direct actions, approval, and deliberate indifference to such conduct created an environment where MDOC staff continued, with impunity, to deny Plaintiff necessary and adequate medical care, including mental health care, in violation of Plaintiff's Article I, §§ 1, 6, 6-A, and 9 rights.

922.    Defendants further knew or should have known that their direct actions, approval, and deliberate indifference to such conduct created an environment where MDOC staff continued, with impunity, to deny Plaintiff necessary and adequate medical care, including mental health care, in violation of Plaintiff's Article I, §§ 1, 6, 6-A, and 9 rights.

923.    Defendants further knew or should have known that their direct actions, approval, and deliberate indifference to such conduct created an environment where MDOC staff continued, with impunity, to confine Plaintiff in conditions of confinement that amounted to punishment and/or posed a substantial risk of serious harm to his physical safety, including unreasonable and excessive periods of being housed in isolation, in violation of Plaintiff's Article I, §§ 1, 6, 6-A, and 9 rights.

924.    As a direct and proximate cause and result of the foregoing Plaintiff suffered

substantial personal injuries of a disabling, debilitating, and permanent nature, severe and prolonged pain and suffering, loss of enjoyment of life, severe permanent mental and emotional distress, and lost income and earning capacity, and will be caused to suffer all of the foregoing losses and damages into the foreseeable future.

925.    Pursuant to 14 M.R.S. § 853, the statute of limitations was tolled on account of Plaintiff's disabilities.

### FIFTY-FIRST CAUSE OF ACTION

42 U.S.C. § 1983 – Use of Unreasonable and Excessive Isolation in Violation of the Fourteenth and Eighth Amendments of the United States Constitution
(Plaintiff John Doe 4 against Defendants Martin Magnusson, Mary Ann Saar, Lars Olsen, Robert Lancaster, Barbara Heath, Daniel Thurlow, Michael Whelan, Christopher Coyne, Matthew Nee, Timothy Foust, FNU Moreau, FNU Turner, and FNU Dotay)

926.    Plaintiff realleges each paragraph of this Complaint as if fully stated herein.

927.    Defendants, at all times relevant hereto, were acting under color of state law.

928.    Defendants routinely placed and approved the placement of Plaintiff in solitary confinement as punishment and kept Plaintiff in solitary confinement for extended durations of time that were unjustified by legitimate penological needs. In doing so, Defendants, in their individual capacities, violated Plaintiff's clearly established Fourteenth Amendment Due Process rights and Eighth Amendment right to be free from cruel and unusual punishment.

929.    As a direct and proximate cause and result of the foregoing, Plaintiff suffered substantial personal injuries of a disabling, debilitating, and permanent nature, severe and prolonged pain and suffering, loss of enjoyment of life, severe permanent mental and emotional distress, and lost income and earning capacity, and will be caused to suffer all of the foregoing losses and damages into the foreseeable future.

930.    Pursuant to 14 M.R.S. § 853, the statute of limitations was tolled on account of

Plaintiff's disabilities, which prevented him from protecting his legal rights and bringing this action against Defendants.

## FIFTY-SECOND CAUSE OF ACTION

5 M.R.S. § 4682(1-A) – Use of Unreasonable and Excessive Isolation in Violation of Article I, §§ 1, 6, 6-A, and 9 of the Maine Constitution
(Plaintiff John Doe 4 against Defendants Martin Magnusson, Mary Ann Saar, Lars Olsen, Robert Lancaster, Barbara Heath, Daniel Thurlow, Michael Whelan, Christopher Coyne, Matthew Nee, Timothy Foust, FNU Moreau, FNU Turner, and FNU Dotay)

931.    Plaintiff realleges each paragraph of this Complaint as if fully stated herein.

932.    Defendants, at all times relevant hereto, were acting under color of state law.

933.    Defendants routinely placed and approved the placement of Plaintiff in solitary confinement as punishment and kept Plaintiff in solitary confinement for extended durations of time that were unjustified by legitimate penological needs. In doing so, Defendants, in their individual capacities, violated Plaintiff's clearly established rights under the Maine Constitution, including: (1) the "safety" provision of Article I, § 1, which protects his "inherent and unalienable right[]" to "safety"; (2) Article I, § 6, which protects the "[r]ights of persons accused" not to "be deprived of life, liberty, property or privileges"; (3) Article I, § 6-A, which protects the right to "due process"; and (4) Article I, § 9, which guarantees the right to be free from cruel and usual punishment.

934.    As a direct and proximate cause and result of the foregoing, Plaintiff suffered substantial personal injuries of a disabling, debilitating, and permanent nature, severe and prolonged pain and suffering, loss of enjoyment of life, severe permanent mental and emotional distress, and lost income and earning capacity, and will be caused to suffer all of the foregoing losses and damages into the foreseeable future.

935.    Pursuant to 14 M.R.S. § 853, the statute of limitations was tolled on account of

Plaintiff's disabilities, which prevented him from protecting his legal rights and bringing this action against Defendants.

## FIFTY-THIRD CAUSE OF ACTION

42 U.S.C. § 1983 – Unreasonable and Excessive Use of Force and Restraints in Violation of the Fourteenth and Eighth Amendments of the United States Constitution
(Plaintiff John Doe 4 against Defendants Martin Magnusson, Mary Ann Saar, Lars Olsen, Robert Lancaster, Barbara Heath, Daniel Thurlow, Michael Whelan, Christopher Coyne, Matthew Nee, Timothy Foust, David Clock,
FNU Moreau, FNU Turner, and FNU Dotay)

936.    Plaintiff realleges each paragraph of this Complaint as if fully stated herein.

937.    Defendants, at all times relevant hereto, were acting under color of state law.

938.    Defendants used, approved, failed to intervene, and acted with deliberate indifference to unreasonable and excessive uses of force against Plaintiff that amounted to punishment and were unjustified by legitimate penological needs. In doing so, Defendants, in their individual capacities, violated Plaintiff's clearly established Fourteenth Amendment Due Process rights and Eighth Amendment right to be free from cruel and unusual punishment.

939.    Defendants used, approved, failed to intervene, and acted with deliberate indifference to the placement of Plaintiff in restraints for purposes of punishment rather than legitimate penological needs. Further, Defendants directly kept, approved, failed to intervene, or acted with deliberate indifference to Plaintiff remaining in such unreasonable and excessive restraints for extended durations of time. In doing so, Defendants, in their individual capacities, violated Plaintiff's clearly established Fourteenth Amendment Due Process rights and Eighth Amendment right to be free from cruel and unusual punishment.

940.    As a direct and proximate cause and result of the foregoing, Plaintiff suffered

substantial personal injuries of a disabling, debilitating, and permanent nature, severe and prolonged pain and suffering, loss of enjoyment of life, severe permanent mental and emotional distress, and lost income and earning capacity, and will be caused to suffer all of the foregoing losses and damages into the foreseeable future.

941.    Pursuant to 14 M.R.S. § 853, the statute of limitations was tolled on account of Plaintiff's disabilities, which prevented him from protecting his legal rights and bringing this action against Defendants.

## FIFTY-FOURTH CAUSE OF ACTION

5 M.R.S. § 4682(1-A) – Unreasonable and Excessive Use of Force and Restraints in Violation of Article I, §§ 1, 6, 6-A, and 9 of the Maine Constitution
(Plaintiff John Doe 4 against Defendants Martin Magnusson, Mary Ann Saar, Lars Olsen, Robert Lancaster, Barbara Heath, Daniel Thurlow, Michael Whelan, Christopher Coyne, Matthew Nee, Timothy Foust, FNU Moreau, FNU Turner, and FNU Dotay)

942.    Plaintiff realleges each paragraph of this Complaint as if fully stated herein.

943.    Defendants, at all times relevant hereto, were acting under color of state law.

944.    Defendants used, approved, failed to intervene, and acted with deliberate indifference to unreasonable and excessive uses of force against Plaintiff that amounted to punishment and were unjustified by legitimate penological needs. In doing so, Defendants, in their individual capacities, violated Plaintiff's clearly established rights under the Maine Constitution, including: (1) the "safety" provision of Article I, § 1, which protects his "inherent and unalienable right[]" to "safety"; (2) Article I, § 6, which protects the "[r]ights of persons accused" not to "be deprived of life, liberty, property or privileges"; (3) Article I, § 6-A, which protects the right to "due process"; and (4) Article I, § 9, which guarantees the right to be free from cruel and usual punishment.

945.    Defendants used, approved, failed to intervene, and acted with deliberate

164

indifference to unreasonable and excessive uses of force against Plaintiff that amounted to punishment and were unjustified by legitimate penological needs. In doing so, Defendants, in their individual capacities, violated Plaintiff's clearly established rights under the Maine Constitution, including: (1) the "safety" provision of Article I, § 1, which protects his "inherent and unalienable right[]" to "safety"; (2) Article I, § 6, which protects the "[r]ights of persons accused" not to "be deprived of life, liberty, property or privileges"; (3) Article I, § 6-A, which protects the right to "due process"; and (4) Article I, § 9, which guarantees the right to be free from cruel and usual punishment.

946.    As a direct and proximate cause and result of the foregoing, Plaintiff suffered substantial personal injuries of a disabling, debilitating, and permanent nature, severe and prolonged pain and suffering, loss of enjoyment of life, severe permanent mental and emotional distress, and lost income and earning capacity, and will be caused to suffer all of the foregoing losses and damages into the foreseeable future.

947.    Pursuant to 14 M.R.S. § 853, the statute of limitations was tolled on account of Plaintiff's disabilities, which prevented him from protecting his legal rights and bringing this action against Defendants.

### FIFTY-FIFTH CAUSE OF ACTION

42 U.S.C. § 1983 – Denial of Necessary Medical Treatment and Deliberate Indifference to Serious Medical Needs in Violation of the Fourteenth and Eighth Amendments of the United States Constitution
(Plaintiff John Doe 4 against Defendants Martin Magnusson, Mary Ann Saar, Lars Olsen, Robert Lancaster, Barbara Heath, Daniel Thurlow, Michael Whelan, Christopher Coyne, Matthew Nee, Timothy Foust, FNU Moreau, FNU Turner, and FNU Dotay)

948.    Plaintiff realleges each paragraph of this Complaint as if fully stated herein.

949.    Defendants, at all times relevant hereto, were acting under color of state law.

165

950.    Defendants, at all times relevant hereto, knew or should have known that Plaintiff suffered from severe mental illness that necessitated Plaintiff receiving medical care for that mental illness and placed Plaintiff at a substantial risk of serious harm if such treatment was not provided.

951.    Defendants, at all times relevant hereto, were responsible for ensuring Plaintiff was receiving appropriate and necessary medical care, including mental health care.

952.    Defendants, at all times relevant hereto, knew or should have known that Plaintiff was not receiving the necessary mental health care treatment, and that his conditions of confinement, including unreasonable and excessive isolation, were causing his mental health to further deteriorate and resulting in further damage.

953.    Defendants acted with deliberate indifference to this substantial risk of serious harm by failing to provide Plaintiff with any reasonable and adequate medical and mental health care treatment in violation of Plaintiff's Fourteenth Amendment Due Process rights and Eighth Amendment right to be free from cruel and unusual punishment.

954.    As a direct and proximate cause and result of the foregoing, Plaintiff suffered substantial personal injuries of a disabling, debilitating, and permanent nature, severe and prolonged pain and suffering, loss of enjoyment of life, severe permanent mental and emotional distress, and lost income and earning capacity, and will be caused to suffer all of the foregoing losses and damages into the foreseeable future.

955.    Pursuant to 14 M.R.S. § 853, the statute of limitations was tolled on account of Plaintiff's disabilities, which prevented him from protecting his legal rights and bringing this action against Defendants.

**FIFTY-SIXTH CAUSE OF ACTION**

5 M.R.S. § 4682(1-A) – Denial of Necessary Medical Treatment and Deliberate Indifference to Serious Medical Needs in Violation of Article I, §§ 1, 6, 6-A, and 9 of the Maine Constitution (Plaintiff John Doe 4 against Defendants Martin Magnusson, Mary Ann Saar, Lars Olsen, Robert Lancaster, Barbara Heath, Daniel Thurlow, Michael Whelan, Christopher Coyne, Matthew Nee, Timothy Foust, FNU Moreau, FNU Turner, and FNU Dotay)

956.    Plaintiff realleges each paragraph of this Complaint as if fully stated herein.

957.    Defendants, at all times relevant hereto, were acting under color of state law.

958.    Defendants, at all times relevant hereto, knew or should have known that Plaintiff suffered from severe mental illness that necessitated Plaintiff receiving medical care for that mental illness and placed Plaintiff at a substantial risk of serious harm if such treatment was not provided.

959.    Defendants, at all times relevant hereto, were responsible for ensuring Plaintiff was receiving appropriate medical care, including mental health care.

960.    Defendants, at all times relevant hereto, knew or should have known that Plaintiff was not receiving the necessary mental health care treatment, and that his conditions of confinement, including unreasonable and excessive isolation, were causing his mental health to further deteriorate and resulting in further damage.

961.    Defendants acted with deliberate indifference to this substantial risk of serious harm by failing to provide Plaintiff with any reasonable and adequate medical and mental health care treatment in violation of Plaintiff's clearly established rights under the Maine Constitution, including: (1) the "safety" provision of Article I, § 1, which protects his "inherent and unalienable right[]" to "safety"; (2) Article I, § 6, which protects the "[r]ights of persons accused" not to "be deprived of life, liberty, property or privileges"; (3) Article I, § 6-A, which protects the right to

167

"due process"; and (4) Article I, § 9, which guarantees the right to be free from cruel and usual punishment.

962.    As a direct and proximate cause and result of the foregoing, Plaintiff suffered substantial personal injuries of a disabling, debilitating, and permanent nature, severe and prolonged pain and suffering, loss of enjoyment of life, severe permanent mental and emotional distress, and lost income and earning capacity, and will be caused to suffer all of the foregoing losses and damages into the foreseeable future.

963.    Pursuant to 14 M.R.S. § 853, the statute of limitations was tolled on account of Plaintiff's disabilities, which prevented him from protecting his legal rights and bringing this action against Defendants.

## FIFTY-SEVENTH CAUSE OF ACTION

42 U.S.C. § 1983 – Sexual Abuse in Violation of the Fourteenth and Eighth
of the United States Constitution
(Plaintiff John Doe 4 against Defendant Daniel Thurlow)

964.    Plaintiff realleges each paragraph of this Complaint as if fully stated herein.

965.     Defendant, at all times relevant hereto, was acting under color of state law.

966.    Defendant repeatedly sexually abused, or failed to prevent repeated sexual abuse of, Plaintiff, while he was a minor and incarcerated at the Youth Center. There was no valid penological justification for Defendant inflicting and/or exposing Plaintiff to sexual abuse. Through this conduct, Defendant, in his individual capacity, violated Plaintiff's Fourteenth Amendment Due Process rights and Eighth Amendment right to be free from cruel and unusual punishment.

967.    As a direct and proximate cause and result of the foregoing, Plaintiff suffered

substantial personal injuries of a disabling, debilitating, and permanent nature, severe and prolonged pain and suffering, loss of enjoyment of life, severe permanent mental and emotional distress, and lost income and earning capacity, and will be caused to suffer all of the foregoing losses and damages into the foreseeable future.

968.    Pursuant to 14 M.R.S. § 853, the statute of limitations was tolled on account of Plaintiff's disabilities, which prevented him from protecting his legal rights and bringing this action against Defendant.

969.    At the time this cause of action arose, Plaintiff was a minor. Thus, pursuant to 14 M.R.S § 752-C this action may be commenced at any time.

## FIFTY-EIGHTH CAUSE OF ACTION

5 M.R.S § 4681(1-A) – Sexual Abuse in Violation of Article I, §§ 1, 6, 6-A, and 9
of the Maine Constitution
(Plaintiff John Doe 4 against Defendant Daniel Thurlow)

970.    Plaintiff realleges each paragraph of this Complaint as if fully stated herein.

971.     Defendant, at all times relevant hereto, was acting under color of state law.

972.    Defendant repeatedly sexually abused, or failed to prevent repeated sexual abuse of, Plaintiff, while he was a minor and incarcerated at the Youth Center. There was no valid penological justification for Defendant inflicting and/or exposing Plaintiff to sexual abuse. Through this conduct, Defendant in his individual capacity, violated Plaintiff's clearly established rights under the Maine Constitution, including: (1) the "safety" provision of Article I, § 1, which protects his "inherent and unalienable right[]" to "safety"; (2) Article I, § 6, which protects the "[r]ights of persons accused" not to "be deprived of life, liberty, property or privileges"; (3) Article I, § 6-A, which protects the right to "due process"; and (4) Article I, § 9, which guarantees the right to be free from cruel and usual punishment.

973.    As a direct and proximate cause and result of the foregoing, Plaintiff suffered substantial personal injuries of a disabling, debilitating, and permanent nature, severe and prolonged pain and suffering, loss of enjoyment of life, severe permanent mental and emotional distress, and lost income and earning capacity, and will be caused to suffer all of the foregoing losses and damages into the foreseeable future.

974.    At the time this cause of action arose, Plaintiff was a minor. Thus, pursuant to 14 M.R.S. § 752-C this action may be commenced at any time.

## FIFTY-NINTH CAUSE OF ACTION

Maine State Law – Intentional Infliction of Emotional Distress
(Plaintiff John Doe 4 against Defendants Martin Magnusson, Mary Ann Saar, Lars Olsen, Robert Lancaster, Barbara Heath, Daniel Thurlow, Michael Whelan, Christopher Coyne, Matthew Nee, Timothy Foust, FNU Moreau, FNU Turner, and FNU Dotay)

975.    Plaintiff realleges each paragraph of this Complaint as if fully stated herein.

976.    Through their violations of Plaintiff's rights under the United States and Maine Constitutions, Defendants intentionally or recklessly, with conscious disregard of the likelihood of harm and/or severe emotional distress, inflicted severe emotional distress on Plaintiff.

977.    Defendants' conduct was so extreme and outrageous so as to as to exceed all possible bounds of decency and as to be regarded as atrocious and utterly intolerable in a civilized community. R.S. (Second) Torts, § 46, cmt. D.

978.    As a result of Defendants' conduct, as outlined herein, Plaintiff, while incarcerated at the Youth Center, was subjected to repeated constitutional violations, at the hands of those acting under color of law, including unreasonable and excessive uses of force, restraints, and isolation, deliberate indifference to substantial risks of serious harm, and sexual abuse.

979.    Defendants' conduct was the actual, proximate, and factual cause of severe

emotional distress of Plaintiff

980.    As a result, Plaintiff suffered emotional distress so severe that no reasonable person could be expected to endure it. Plaintiff suffered and continues to suffer great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation and loss of enjoyment of life; distrust, anxiety, and distress related to authority figures; depression, nightmares, nervousness, stress and/or other trauma; mental anguish, humiliation, embarrassment, insomnia, and fear.

981.    Plaintiff was also prevented and will continue to be prevented from performing Plaintiff's daily activities and obtaining the full enjoyment of life; has sustained and will continue to sustain loss of earnings and earning capacity; and/or has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling.

982.    The aforesaid injuries were due to willful, wanton, reckless, and intentional acts of Defendants and were in no way caused by any act or failure to act on the part of Plaintiff.

## SIXTIETH CAUSE OF ACTION

42 U.S.C. § 1983 – Deliberate Indifference to Substantial Risks of Serious Harm in Violation of the Fourteenth and Eighth Amendments of the United States Constitution (Plaintiff John Doe 5 against Defendants Mary Ann Saar, Robert Lancaster, Barbara Heath, Daniel Thurlow, FNU Albertson, FNU Drew, and FNU Dardell)

983.    Plaintiff realleges each paragraph of this Complaint as if fully stated herein.

984.    At all times relevant hereto, Defendants were acting under color of state law.

985.    At all times relevant hereto, Defendants, including their agents and employees, were entrusted and charged with the custody, care, and protection of Plaintiff, a minor, and exercised control over Plaintiff to the exclusion of others. As such, at all times relevant hereto,

171

Defendants, in their individual capacities, had a duty to protect and ensure the safety of Plaintiff during his incarceration at the Youth Center.

986.    At all times relevant hereto, Plaintiff had constitutional rights under the Fourteenth and Eighth Amendments to be free from the deliberate indifference of a person, acting under color of law, to a substantial risk of serious harm, including, but not limited to, serious risks from physical harm, medical needs, and conditions of confinement.

987.    At all times relevant hereto, Defendants were aware of, observed, or participated in incidents of Plaintiff being subjected to unreasonable or excessive uses of force and restraints, and yet failed to take reasonable actions to abate such harm.

988.    At all times relevant hereto, Defendants were aware of, observed, or participated in incidents of Plaintiff being subjected to sexual abuse, including gratuitous strip-searches done without legitimate penological justification, and yet failed to take reasonable actions to abate such harm.

989.    At all times relevant hereto, Defendants were aware of, observed, or participated in the denial of Plaintiff receiving necessary and adequate medical care, including mental health care, and yet failed to take reasonable actions to abate such harm.

990.    At all times relevant hereto, Defendants were aware of, observed, or participated in the denial of education to Plaintiff and yet failed to take reasonable actions to abate such harm.

991.    At all times relevant hereto, Defendants were aware of, observed, or participated in confining Plaintiff in conditions that amounted to punishment and/or posed a substantial risk of serious harm to his physical safety, including unreasonable and excessive periods of being housed in isolation, and yet failed to take reasonable actions to abate such harm.

992.    Defendants further knew or should have known that their direct actions, approval,

172

and deliberate indifference to such conduct created an environment where MDOC staff continued, with impunity, to use unreasonable and excessive force and restraints in violation of Plaintiff's Fourteenth Amendment Due Process rights and Eighth Amendment right to be free from cruel and unusual punishment.

993. Defendants further knew or should have known that their direct actions, approval, and deliberate indifference to such conduct created an environment where MDOC staff continued, with impunity, to sexually abuse, including gratuitously strip-searching, Plaintiff in violation of Plaintiff's Fourteenth Amendment Due Process rights and Eighth Amendment right to be free from cruel and unusual punishment.

994. Defendants further knew or should have known that their direct actions, approval, and deliberate indifference to such conduct created an environment where MDOC staff continued, with impunity, to deny Plaintiff adequate and necessary medical care, including mental health care, in violation of Plaintiff's Fourteenth Amendment Due Process rights and Eighth Amendment right to be free from cruel and unusual punishment.

995. Defendants further knew or should have known that their direct actions, approval, and deliberate indifference to such conduct created an environment where MDOC staff continued, with impunity, to deny Plaintiff an education in violation of Plaintiff's Fourteenth Amendment Due Process rights and Eighth Amendment right to be free from cruel and unusual punishment.

996. Defendants further knew or should have known that their direct actions, approval, and deliberate indifference to such conduct created an environment where MDOC staff continued, with impunity, to confine Plaintiff in conditions of confinement that amounted to punishment and/or posed a substantial risk of serious harm to her physical safety, including unreasonable and

excessive periods of being housed in isolation, in violation of Plaintiff's Fourteenth Amendment Due Process rights and Eighth Amendment right to be free from cruel and unusual punishment.

997.    As a direct and proximate cause and result of the foregoing Plaintiff suffered substantial personal injuries of a disabling, debilitating, and permanent nature, severe and prolonged pain and suffering, loss of enjoyment of life, severe permanent mental and emotional distress, and lost income and earning capacity, and will be caused to suffer all of the foregoing losses and damages into the foreseeable future.

998.    Pursuant to 14 M.R.S. § 853, the statute of limitations was tolled on account of Plaintiff's disabilities.

### SIXTY-FIRST CAUSE OF ACTION

5 M.R.S. § 4682(1-A) – Deliberate Indifference to Substantial Risks of Serious Harm in Violation of Article I, §§ 1, 6, 6-A, and 9 of the Maine Constitution
(Plaintiff John Doe 5 against Defendants Mary Ann Saar, Robert Lancaster, Barbara Heath, Daniel Thurlow, FNU Albertson, and FNU Drew)

999.    Plaintiff realleges each paragraph of this Complaint as if fully stated herein.

1000.    At all times relevant hereto, Defendants were acting under color of state law.

1001.    At all times relevant hereto, Defendants, including their agents and employees, were entrusted and charged with the custody, care, and protection of Plaintiff, a minor, and exercised control over Plaintiff to the exclusion of others. As such, at all times relevant hereto, Defendants, in their individual capacities, had a duty to protect and ensure the safety of Plaintiff during his incarceration at the Youth Center.

1002.    At all times relevant hereto, Defendants were aware of, observed, or participated in incidents of Plaintiff being subjected to unreasonable or excessive uses of force and restraints, and yet failed to take reasonable actions to abate such harm.

1003.   At all times relevant hereto, Defendants were aware of, observed, or participated in incidents of Plaintiff being subjected to gratuitous strip-searches, done without legitimate penological justification, and yet failed to take reasonable actions to abate such harm.

1004.   At all times relevant hereto, Defendants were aware of, observed, or participated in the denial of Plaintiff receiving necessary and adequate medical care, including mental health care, and yet failed to take reasonable actions to abate such harm.

1005.   At all times relevant hereto, Defendants were aware of, observed, or participated in the denial of education to Plaintiff and yet failed to take reasonable action to abate such harm.

1006.   At all times relevant hereto, Defendants were aware of, observed, or participated in confining Plaintiff in conditions that amounted to punishment and/or posed a substantial risk of serious harm to his physical safety, including unreasonable and excessive periods of being housed in isolation, and yet failed to take reasonable actions to abate such harm.

1007.   Defendants further knew or should have known that their direct actions, approval, and deliberate indifference to such conduct created an environment where MDOC staff continued, with impunity, to use unreasonable and excessive force, and restraints against Plaintiff in violation of Plaintiff's Article I, §§ 1, 6, 6-A, and 9 rights.

1008.   Defendants further knew or should have known that their direct actions, approval, and deliberate indifference to such conduct created an environment where MDOC staff continued, with impunity, to gratuitously strip-search Plaintiff in violation of Plaintiff's Article I, §§ 1, 6, 6-A, and 9 rights.

1009.   Defendants further knew or should have known that their direct actions, approval,

and deliberate indifference to such conduct created an environment where MDOC staff continued, with impunity, to deny Plaintiff necessary and adequate medical care, including mental health care, in violation of Plaintiff's Article I, §§ 1, 6, 6-A, and 9 rights.

1010.   Defendants further knew or should have known that their direct actions, approval, and deliberate indifference to such conduct created an environment where MDOC staff continued, with impunity, to deny Plaintiff an education in violation of Plaintiff's Article I, §§ 1, 6, 6-A, and 9 rights .

1011.   Defendants further knew or should have known that their direct actions, approval, and deliberate indifference to such conduct created an environment where MDOC staff continued, with impunity, to confine Plaintiff in conditions of confinement that amounted to punishment and/or posed a substantial risk of serious harm to his physical safety, including unreasonable and excessive periods of being housed in isolation, in violation of Plaintiff's Article I, §§ 1, 6, 6-A, and 9 rights.

1012.   As a direct and proximate cause and result of the foregoing Plaintiff suffered substantial personal injuries of a disabling, debilitating, and permanent nature, severe and prolonged pain and suffering, loss of enjoyment of life, severe permanent mental and emotional distress, and lost income and earning capacity, and will be caused to suffer all of the foregoing losses and damages into the foreseeable future.

1013.   Pursuant to 14 M.R.S. § 853, the statute of limitations was tolled on account of Plaintiff's disabilities.

## SIXTY-SECONDTH CAUSE OF ACTION

42 U.S.C. § 1983– Use of Unreasonable and Excessive Isolation in Violation of the Fourteenth and Eighth Amendments of the United States Constitution

176

(Plaintiff John Doe 5 against Defendants Mary Ann Saar, Robert Lancaster, Barbara Heath, Daniel Thurlow, FNU Albertson, and FNU Drew)

1014.   Plaintiff realleges each paragraph of this Complaint as if fully stated herein.

1015.   Defendants, at all times relevant hereto, were acting under color of state law.

1016.   Defendants routinely placed and approved the placement of Plaintiff in solitary confinement as punishment and kept Plaintiff in solitary confinement for extended durations of time that were unjustified by legitimate penological needs. In doing so, Defendants, in their individual capacities, violated Plaintiff's clearly established Fourteenth Amendment Due Process rights and Eighth Amendment right to be free from cruel and unusual punishment.

1017.   As a direct and proximate cause and result of the foregoing, Plaintiff suffered substantial personal injuries of a disabling, debilitating, and permanent nature, severe and prolonged pain and suffering, loss of enjoyment of life, severe permanent mental and emotional distress, and lost income and earning capacity, and will be caused to suffer all of the foregoing losses and damages into the foreseeable future.

1018.   Pursuant to 14 M.R.S. § 853, the statute of limitations was tolled on account of Plaintiff's disabilities, which prevented him from protecting his legal rights and bringing this action against Defendants.

### SIXTY-THIRD CAUSE OF ACTION

5 M.R.S. § 4682(1-A) – Use of Unreasonable and Excessive Isolation in Violation of Article I, §§ 1, 6, 6-A, and 9 of the Maine Constitution
(Plaintiff John Doe 5 against Defendants Mary Ann Saar, Robert Lancaster, Barbara Heath, Daniel Thurlow, FNU Albertson, and FNU Drew)

1019.    Plaintiff realleges each paragraph of this Complaint as if fully stated herein.

1020.   Defendants, at all times relevant hereto, were acting under color of state law.

1021.   Defendants routinely placed and approved the placement of Plaintiff in solitary

177

confinement as punishment and kept Plaintiff in solitary confinement for extended durations of time that were unjustified by legitimate penological needs. In doing so, Defendants, in their individual capacities, violated Plaintiff's clearly established rights under the Maine Constitution, including: (1) the "safety" provision of Article I, § 1, which protects his "inherent and unalienable right[]" to "safety"; (2) Article I, § 6, which protects the "[r]ights of persons accused" not to "be deprived of life, liberty, property or privileges"; (3) Article I, § 6-A, which protects the right to "due process"; and (4) Article I, § 9, which guarantees the right to be free from cruel and usual punishment.

1022.   As a direct and proximate cause and result of the foregoing, Plaintiff suffered substantial personal injuries of a disabling, debilitating, and permanent nature, severe and prolonged pain and suffering, loss of enjoyment of life, severe permanent mental and emotional distress, and lost income and earning capacity, and will be caused to suffer all of the foregoing losses and damages into the foreseeable future.

1023.   Pursuant to 14 M.R.S. § 853, the statute of limitations was tolled on account of Plaintiff's disabilities, which prevented him from protecting his legal rights and bringing this action against Defendants.

### SIXTY-FOURTH CAUSE OF ACTION

42 U.S.C. § 1983 – Unreasonable and Excessive Use of Force and Restraints in Violation of the Fourteenth and Eighth Amendments of the United States Constitution
(Plaintiff John Doe 5 against Defendants Mary Ann Saar, Robert Lancaster, Barbara Heath, Daniel Thurlow, FNU Albertson, and FNU Drew)

1024.   Plaintiff realleges each paragraph of this Complaint as if fully stated herein.

1025.   Defendants, at all times relevant hereto, were acting under color of state law.

1026.   Defendants used, approved, failed to intervene, and acted with deliberate

indifference to unreasonable and excessive uses of force against Plaintiff that amounted to punishment and were unjustified by legitimate penological needs. In doing so, Defendants, in their individual capacities, violated Plaintiff's clearly established Fourteenth Amendment Due Process rights and Eighth Amendment right to be free from cruel and unusual punishment.

1027.   Defendants used, approved, failed to intervene, and acted with deliberate indifference to the placement of Plaintiff in restraints for purposes of punishment rather than legitimate penological needs. Further, Defendants directly kept, approved, failed to intervene, or acted with deliberate indifference to Plaintiff remaining in such unreasonable and excessive restraints for extended durations of time. In doing so, Defendants, in their individual capacities, violated Plaintiff's clearly established Fourteenth Amendment Due Process rights and Eighth Amendment right to be free from cruel and unusual punishment.

1028.   As a direct and proximate cause and result of the foregoing, Plaintiff suffered substantial personal injuries of a disabling, debilitating, and permanent nature, severe and prolonged pain and suffering, loss of enjoyment of life, severe permanent mental and emotional distress, and lost income and earning capacity, and will be caused to suffer all of the foregoing losses and damages into the foreseeable future.

1029.   Pursuant to 14 M.R.S. § 853, the statute of limitations was tolled on account of Plaintiff's disabilities, which prevented him from protecting his legal rights and bringing this action against Defendants.

## SIXTY-FIFTH CAUSE OF ACTION

5 M.R.S. § 4682(1-A) – Unreasonable and Excessive Use of Force and Restraints in Violation of Article I, §§ 1, 6, 6-A, and 9 of the Maine Constitution
(Plaintiff John Doe 5 against Defendants Mary Ann Saar, Robert Lancaster, Barbara Heath, Daniel Thurlow, FNU Albertson, and FNU Drew)

179

1030.  Plaintiff realleges each paragraph of this Complaint as if fully stated herein.

1031.  Defendants, at all times relevant hereto, were acting under color of state law.

1032.  Defendants used, approved, failed to intervene, and acted with deliberate indifference to unreasonable and excessive uses of force against Plaintiff that amounted to punishment and were unjustified by legitimate penological needs. In doing so, Defendants, in their individual capacities, violated Plaintiff's clearly established rights under the Maine Constitution, including: (1) the "safety" provision of Article I, § 1, which protects his "inherent and unalienable right[]" to "safety"; (2) Article I, § 6, which protects the "[r]ights of persons accused" not to "be deprived of life, liberty, property or privileges"; (3) Article I, § 6-A, which protects the right to "due process"; and (4) Article I, § 9, which guarantees the right to be free from cruel and usual punishment.

1033.  Defendants used, approved, failed to intervene, and acted with deliberate indifference to the placement of Plaintiff in restraints for purposes of punishment rather than legitimate penological needs. Further, Defendants directly kept, approved, failed to intervene, or acted with deliberate indifference to Plaintiff remaining in such unreasonable and excessive restraints for extended durations of time. In doing so, Defendants, in their individual capacities, violated Plaintiff's clearly established rights under the Maine Constitution, including: (1) the "safety" provision of Article I, § 1, which protects his "inherent and unalienable right[]" to "safety"; (2) Article I, § 6, which protects the "[r]ights of persons accused" not to "be deprived of life, liberty, property or privileges"; (3) Article I, § 6-A, which protects the right to "due process"; and (4) Article I, § 9, which guarantees the right to be free from cruel and usual punishment.

1034.  As a direct and proximate cause and result of the foregoing, Plaintiff suffered

substantial personal injuries of a disabling, debilitating, and permanent nature, severe and prolonged pain and suffering, loss of enjoyment of life, severe permanent mental and emotional distress, and lost income and earning capacity, and will be caused to suffer all of the foregoing losses and damages into the foreseeable future.

1035.    Pursuant to 14 M.R.S. § 853, the statute of limitations was tolled on account of Plaintiff's disabilities, which prevented him from protecting his legal rights and bringing this action against Defendants.

### SIXTY-SIXTH CAUSE OF ACTION

42 U.S.C. § 1983 – Denial of Necessary Medical Treatment and Deliberate Indifference to
Serious Medical Needs in Violation of the Fourteenth and Eighth Amendments
of the United States Constitution
(Plaintiff John Doe 5 against Defendants Mary Ann Saar, Robert Lancaster, Barbara Heath,
Daniel Thurlow, FNU Albertson, and FNU Drew)

1036.    Plaintiff realleges each paragraph of this Complaint as if fully stated herein.

1037.    Defendants, at all times relevant hereto, were acting under color of state law.

1038.    Defendants, at all times relevant hereto, knew or should have known that Plaintiff suffered from severe mental illness that necessitated Plaintiff receiving medical care for that mental illness and placed Plaintiff at a substantial risk of serious harm if such treatment was not provided.

1039.    Defendants, at all times relevant hereto, were responsible for ensuring Plaintiff was receiving appropriate and necessary medical care, including mental health care.

1040.    Defendants, at all times relevant hereto, knew or should have known that Plaintiff was not receiving the necessary mental health care treatment, and that his conditions of confinement, including unreasonable and excessive isolation, were causing his mental health to further deteriorate and resulting in further damage.

1041.    Defendants acted with deliberate indifference to this substantial risk of serious harm by failing to provide Plaintiff with any reasonable and adequate medical and mental health care treatment in violation of Plaintiff's Fourteenth Amendment Due Process rights and Eighth Amendment right to be free from cruel and unusual punishment.

1042.    As a direct and proximate cause and result of the foregoing, Plaintiff suffered substantial personal injuries of a disabling, debilitating, and permanent nature, severe and prolonged pain and suffering, loss of enjoyment of life, severe permanent mental and emotional distress, and lost income and earning capacity, and will be caused to suffer all of the foregoing losses and damages into the foreseeable future.

1043.    Pursuant to 14 M.R.S. § 853, the statute of limitations was tolled on account of Plaintiff's disabilities, which prevented him from protecting his legal rights and bringing this action against Defendants.

### SIXTY-SEVENTH CAUSE OF ACTION

5 M.R.S. § 4682(1-A) – Denial of Necessary Medical Treatment and Deliberate Indifference to Serious Medical Needs in Violation of Article I, §§ 1, 6, 6-A, and 9 of the Maine Constitution (Plaintiff John Doe 5 against Defendants Mary Ann Saar, Robert Lancaster, Barbara Heath, Daniel Thurlow, FNU Albertson, and FNU Drew)

1044.    Plaintiff realleges each paragraph of this Complaint as if fully stated herein.

1045.    Defendants, at all times relevant hereto, were acting under color of state law.

1046.    Defendants, at all times relevant hereto, knew or should have known that Plaintiff suffered from severe mental illness that necessitated Plaintiff receiving medical care for that mental illness and placed Plaintiff at a substantial risk of serious harm if such treatment was not provided.

1047.    Defendants, at all times relevant hereto, were responsible for ensuring Plaintiff was

receiving appropriate medical care, including mental health care.

1048.  Defendants, at all times relevant hereto, knew or should have known that Plaintiff was not receiving the necessary mental health care treatment, and that his conditions of confinement, including unreasonable and excessive isolation, were causing his mental health to further deteriorate and resulting in further damage.

1049.  Defendants acted with deliberate indifference to this substantial risk of serious harm by failing to provide Plaintiff with any reasonable and adequate medical and mental health care treatment in violation of Plaintiff's clearly established rights under the Maine Constitution, including: (1) the "safety" provision of Article I, § 1, which protects his "inherent and unalienable right[]" to "safety"; (2) Article I, § 6, which protects the "[r]ights of persons accused" not to "be deprived of life, liberty, property or privileges"; (3) Article I, § 6-A, which protects the right to "due process"; and (4) Article I, § 9, which guarantees the right to be free from cruel and usual punishment.

1050.  As a direct and proximate cause and result of the foregoing, Plaintiff suffered substantial personal injuries of a disabling, debilitating, and permanent nature, severe and prolonged pain and suffering, loss of enjoyment of life, severe permanent mental and emotional distress, and lost income and earning capacity, and will be caused to suffer all of the foregoing losses and damages into the foreseeable future.

1051.  Pursuant to 14 M.R.S. § 853, the statute of limitations was tolled on account of Plaintiff's disabilities, which prevented him from protecting his legal rights and bringing this action against Defendants.

## SIXTY-EIGHTH CAUSE OF ACTION

42 U.S.C. § 1983 – Sexual Abuse in Violation of the Fourteenth and Eighth Amendments

of the United States Constitution
(Plaintiff John Doe 5 against Defendants Daniel Thurlow and FNU Dardell)

1052.   Plaintiff realleges each paragraph of this Complaint as if fully stated herein.

1053.    Defendants, at all times relevant hereto, were acting under color of state law.

1054.   Defendants repeatedly sexually abused, or failed to prevent repeated sexual abuse of, Plaintiff, while he was a minor and incarcerated at the Youth Center. There was no valid penological justification for Defendants inflicting and/or exposing Plaintiff to sexual abuse. Through this conduct, Defendants, in their individual capacities, violated Plaintiff's Fourteenth Amendment Due Process rights and Eighth Amendment right to be free from cruel and unusual punishment.

1055.   As a direct and proximate cause and result of the foregoing, Plaintiff suffered substantial personal injuries of a disabling, debilitating, and permanent nature, severe and prolonged pain and suffering, loss of enjoyment of life, severe permanent mental and emotional distress, and lost income and earning capacity, and will be caused to suffer all of the foregoing losses and damages into the foreseeable future.

1056.   Pursuant to 14 M.R.S. § 853, the statute of limitations was tolled on account of Plaintiff's disabilities, which prevented him from protecting his legal rights and bringing this action against Defendant.

1057.   At the time this cause of action arose, Plaintiff was a minor. Thus, pursuant to 14 M.R.S § 752-C this cause of action may be commenced at any time.

### SIXTY-NINTH CAUSE OF ACTION

5 M.R.S § 4681(1-A) – Sexual Abuse in Violation of Article I, §§ 1, 6, 6-A, and 9
of the Maine Constitution
(Plaintiff John Doe 5 against Defendants Daniel Thurlow and FNU Dardell)

184

1058.  Plaintiff realleges each paragraph of this Complaint as if fully stated herein.

1059.   Defendants, at all times relevant hereto, were acting under color of state law.

1060.  Defendants repeatedly sexually abused, or failed to prevent repeated sexual abuse of, Plaintiff, while he was a minor and incarcerated at the Youth Center. There was no valid penological justification for Defendants inflicting and/or exposing Plaintiff to sexual abuse. Through this conduct, Defendants, in their individual capacity, violated Plaintiff's clearly established rights under the Maine Constitution, including: (1) the "safety" provision of Article I, § 1, which protects his "inherent and unalienable right[]" to "safety"; (2) Article I, § 6, which protects the "[r]ights of persons accused" not to "be deprived of life, liberty, property or privileges"; (3) Article I, § 6-A, which protects the right to "due process"; and (4) Article I, § 9, which guarantees the right to be free from cruel and usual punishment.

1061.  As a direct and proximate cause and result of the foregoing, Plaintiff suffered substantial personal injuries of a disabling, debilitating, and permanent nature, severe and prolonged pain and suffering, loss of enjoyment of life, severe permanent mental and emotional distress, and lost income and earning capacity, and will be caused to suffer all of the foregoing losses and damages into the foreseeable future.

1062.  At the time this cause of action arose, Plaintiff was a minor. Thus, pursuant to 14 M.R.S. § 752-C this action may be commenced at any time.

## SEVENTIETH CAUSE OF ACTION

Maine State Law – Intentional Infliction of Emotional Distress
(Plaintiff John Doe 5 against Defendants Mary Ann Saar, Robert Lancaster, Barbara Heath, Daniel Thurlow, FNU Albertson, FNU Drew, FNU Dardell)

1063.  Plaintiff realleges each paragraph of this Complaint as if fully stated herein. .

1064.  Through their violations of Plaintiff's rights under the United States and Maine

185

Constitutions, Defendants intentionally or recklessly, with conscious disregard of the likelihood of harm and/or severe emotional distress, inflicted severe emotional distress on Plaintiff.

1065.   Defendants' conduct was so extreme and outrageous so as to as to exceed all possible bounds of decency and as to be regarded as atrocious and utterly intolerable in a civilized community. R.S. (Second) Torts, § 46, cmt. D.

1066.   As a result of Defendants' conduct, as outlined herein, Plaintiff, while incarcerated at the Youth Center, was subjected to repeated constitutional violations, at the hands of those acting under color of law, including unreasonable and excessive uses of force, restraints, and isolation, deliberate indifference to substantial risks of serious harm, and sexual abuse.

1067.   Defendants' conduct was the actual, proximate, and factual cause of severe emotional distress of Plaintiff.

1068.   As a result, Plaintiff suffered emotional distress so severe that no reasonable person could be expected to endure it. Plaintiff has suffered and continues to suffer great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation and loss of enjoyment of life; distrust, anxiety, and distress related to authority figures; depression, nightmares, nervousness, stress and/or other trauma; mental anguish, humiliation, embarrassment, insomnia, and fear.

1069.   Plaintiff was also prevented and will continue to be prevented from performing Plaintiff's daily activities and obtaining the full enjoyment of life; has sustained and will continue to sustain loss of earnings and earning capacity; and/or has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling.

1070.   The aforesaid injuries were due to willful, wanton, reckless, and intentional acts of Defendants and were in no way caused by any act or failure to act on the part of Plaintiff.

## SEVENTY-FIRST CAUSE OF ACTION

42 U.S.C. § 1983 – Deliberate Indifference to Substantial Risks of Serious Harm in
Violation of the Fourteenth and Eighth Amendments of the United States Constitution
(Plaintiff John Doe 6 against Defendants Mary Ann Saar, Robert Lancaster, Barbara Heath,
Daniel Thurlow, FNU Hanson, Scott DeWitt, Shirley Antonowicz, Norma Jean Duhamel,
Scott Lamry, Kenneth Factor, and David Ford)

1071.   Plaintiff realleges each paragraph of this Complaint as if fully stated herein.

1072.   Defendants, at all times relevant hereto, were acting under color of state law.

1073.   At all times relevant hereto, Defendants, including their agents and employees, were entrusted and charged with the custody, care, and protection of Plaintiff, a minor, and exercised control over Plaintiff to the exclusion of others. As such, at all times relevant hereto, Defendants, in their individual capacities, had a duty to protect and ensure the safety of Plaintiff during his incarceration at the Youth Center.

1074.   At all times relevant hereto, Plaintiff had constitutional rights under the Fourteenth and Eighth Amendments to be free from the deliberate indifference of a person, acting under color of law, to a substantial risk of serious harm, including, but not limited to, serious risks from physical harm, medical needs, and conditions of confinement.

1075.   At all times relevant hereto, Defendants were aware of, observed, or participated in incidents of Plaintiff being subjected to unreasonable or excessive uses of force and restraints, and yet failed to take reasonable actions to abate such harm.

1076.   At all times relevant hereto, Defendants were aware of, observed, or participated in incidents of Plaintiff being subjected to sexual abuse, including gratuitous strip-searches done without legitimate penological justification, and yet failed to take reasonable actions to abate such harm.

1077.   At all times relevant hereto, Defendants were aware of, observed, or participated in

the denial of Plaintiff receiving necessary and adequate medical care, including mental health care, and yet failed to take reasonable actions to abate such harm.

1078.   At all times relevant hereto, Defendants were aware of, observed, or participated in the denial of education to Plaintiff, and yet failed to take reasonable actions to abate such harm.

1079.   At all times relevant hereto, Defendants were aware of, observed, or participated in confining Plaintiff in conditions that amounted to punishment and/or posed a substantial risk of serious harm to his physical safety, including unreasonable and excessive periods of being housed in isolation, and yet failed to take reasonable actions to abate such harm.

1080.   Defendants further knew or should have known that their direct actions, approval, and deliberate indifference to such conduct created an environment where MDOC staff continued, with impunity, to use unreasonable and excessive force and restraints in violation of Plaintiff's Fourteenth Amendment Due Process rights and Eighth Amendment right to be free from cruel and unusual punishment.

1081.   Defendants further knew or should have known that their direct actions, approval, and deliberate indifference to such conduct created an environment where MDOC staff continued, with impunity, to sexually abuse, including gratuitously strip-searching, Plaintiff in violation of Plaintiff's Fourteenth Amendment Due Process rights and Eighth Amendment right to be free from cruel and unusual punishment.

1082.   Defendants further knew or should have known that their direct actions, approval, and deliberate indifference to such conduct created an environment where MDOC staff continued, with impunity, to deny Plaintiff adequate and necessary medical care, including mental health care, in violation of Plaintiff's Fourteenth Amendment Due Process rights and Eighth Amendment right to be free from cruel and unusual punishment.

1083.  Defendants further knew or should have known that their direct actions, approval, and deliberate indifference to such conduct created an environment where MDOC staff continued, with impunity, to deny Plaintiff an education in violation of Plaintiff's Fourteenth Amendment Due Process rights and Eighth Amendment right to be free from cruel and unusual punishment.

1084.  Defendants further knew or should have known that their direct actions, approval, and deliberate indifference to such conduct created an environment where MDOC staff continued, with impunity, to confine Plaintiff in conditions of confinement that amounted to punishment and/or posed a substantial risk of serious harm to her physical safety, including unreasonable and excessive periods of being housed in isolation, in violation of Plaintiff's Fourteenth Amendment Due Process rights and Eighth Amendment right to be free from cruel and unusual punishment.

1085.  As a direct and proximate cause and result of the foregoing Plaintiff suffered substantial personal injuries of a disabling, debilitating, and permanent nature, severe and prolonged pain and suffering, loss of enjoyment of life, severe permanent mental and emotional distress, and lost income and earning capacity, and will be caused to suffer all of the foregoing losses and damages into the foreseeable future.

1086.  Pursuant to 14 M.R.S. § 853, the statute of limitations was tolled on account of Plaintiff's disabilities.

### SEVENTH-SECOND CAUSE OF ACTION

5 M.R.S. § 4682(1-A) – Deliberate Indifference to Substantial Risks of Serious Harm in Violation of Article I, §§ 1, 6, 6-A, and 9 of the Maine Constitution
(Plaintiff John Doe 6 against Defendants Mary Ann Saar, Robert Lancaster, Barbara Heath, Daniel Thurlow, FNU Hanson, Scott DeWitt, Shirley Antonowicz, Norma Jean Duhamel, Scott Lamry, Kenneth Factor, and David Ford)

1087.  Plaintiff realleges each paragraph of this Complaint as if fully stated herein.

1088.  Defendants, at all times relevant hereto, were acting under color of state law.

189

1089.   At all times relevant hereto, Defendants, including their agents and employees, were entrusted and charged with the custody, care, and protection of Plaintiff, a minor, and exercised control over Plaintiff to the exclusion of others. As such, at all times relevant hereto, Defendants, in their individual capacities, had a duty to protect and ensure the safety of Plaintiff during his incarceration at the Youth Center.

1090.   At all times relevant hereto, Plaintiff had constitutional rights under the Maine Constitution to be free from the deliberate indifference of a person, acting under color of law, to a substantial risk of serious harm, including serious risks from physical harm, medical needs, and conditions of confinement.

1091.   At all times relevant hereto, Defendants were aware of, observed, or participated in incidents of Plaintiff being subjected to unreasonable or excessive uses of force and restraints, and yet failed to take reasonable actions to abate such harm.

1092.   At all times relevant hereto, Defendants were aware of, observed, or participated in incidents of Plaintiff being subjected to sexual abuse, including gratuitous strip-searches done without legitimate penological justification, and yet failed to take reasonable actions to abate such harm.

1093.   At all times relevant hereto, Defendants were aware of, observed, or participated in the denial of Plaintiff receiving necessary and adequate medical care, including mental health care, and yet failed to take reasonable actions to abate such harm.

1094.   At all times relevant hereto, Defendants were aware of, observed, or participated in the denial of education to Plaintiff and yet failed to take reasonable action to abate such harm.

1095.   At all times relevant hereto, Defendants were aware of, observed, or participated in

confining Plaintiff in conditions that amounted to punishment and/or posed a substantial risk of serious harm to his physical safety, including unreasonable and excessive periods of being housed in isolation, and yet failed to take reasonable actions to abate such harm.

1096. Defendants further knew or should have known that their direct actions, approval, and deliberate indifference to such conduct created an environment where MDOC staff continued, with impunity, to use unreasonable and excessive force, and restraints against Plaintiff in violation of Plaintiff's Article I, §§ 1, 6, 6-A, and 9 rights.

1097. Defendants further knew or should have known that their direct actions, approval, and deliberate indifference to such conduct created an environment where MDOC staff continued, with impunity, to sexually abuse, including gratuitously strip-searching, Plaintiff in violation of Plaintiff's Article I, §§ 1, 6, 6-A, and 9 rights.

1098. Defendants further knew or should have known that their direct actions, approval, and deliberate indifference to such conduct created an environment where MDOC staff continued, with impunity, to deny Plaintiff necessary and adequate medical care, including mental health care, in violation of Plaintiff's Article I, §§ 1, 6, 6-A, and 9 rights.

1099. Defendants further knew or should have known that their direct actions, approval, and deliberate indifference to such conduct created an environment where MDOC staff continued, with impunity, to deny Plaintiff an education in violation of Plaintiff's Article I, §§ 1, 6, 6-A, and 9 rights.

1100. Defendants further knew or should have known that their direct actions, approval, and deliberate indifference to such conduct created an environment where MDOC staff continued, with impunity, to confine Plaintiff in conditions of confinement that amounted to punishment and/or posed a substantial risk of serious harm to his physical safety, including unreasonable and

excessive periods of being housed in isolation, in violation of Plaintiff's Article I, §§ 1, 6, 6-A, and 9 rights.

1101.   As a direct and proximate cause and result of the foregoing Plaintiff suffered substantial personal injuries of a disabling, debilitating, and permanent nature, severe and prolonged pain and suffering, loss of enjoyment of life, severe permanent mental and emotional distress, and lost income and earning capacity, and will be caused to suffer all of the foregoing losses and damages into the foreseeable future.

1102.   Pursuant to 14 M.R.S. § 853, the statute of limitations was tolled on account of Plaintiff's disabilities.

### SEVENTY-THIRD CAUSE OF ACTION

42 U.S.C. § 1983 – Use of Unreasonable and Excessive Isolation in Violation of the Fourteenth and Eighth Amendments of the United States Constitution
(Plaintiff John Doe 6 against Defendants Mary Ann Saar, Robert Lancaster, Barbara Heath, Daniel Thurlow, FNU Hanson, Scott DeWitt, Shirley Antonowicz, Norma Jean Duhamel, Scott Lamry, Kenneth Factor, and David Ford)

1103.   Plaintiff realleges each paragraph of this Complaint as if fully stated herein.

1104.   Defendants, at all times relevant hereto, were acting under color of state law.

1105.   Defendants routinely placed and approved the placement of Plaintiff in solitary confinement as punishment and kept Plaintiff in solitary confinement for extended durations of time that were unjustified by legitimate penological needs. In doing so, Defendants, in their individual capacities, violated Plaintiff's clearly established Fourteenth Amendment Due Process rights and Eighth Amendment right to be free from cruel and unusual punishment.

1106.   As a direct and proximate cause and result of the foregoing, Plaintiff suffered substantial personal injuries of a disabling, debilitating, and permanent nature, severe and prolonged pain and suffering, loss of enjoyment of life, severe permanent mental and emotional

distress, and lost income and earning capacity, and will be caused to suffer all of the foregoing losses and damages into the foreseeable future.

1107.   Pursuant to 14 M.R.S. § 853, the statute of limitations was tolled on account of Plaintiff's disabilities, which prevented him from protecting his legal rights and bringing this action against Defendants.

### SEVENTY-FOURTH CAUSE OF ACTION

5 M.R.S. § 4682(1-A) – Use of Unreasonable and Excessive Isolation in Violation of Article I, §§ 1, 6, 6-A, and 9 of the Maine Constitution
(Plaintiff John Doe 6 against Defendants Mary Ann Saar, Robert Lancaster, Barbara Heath, Daniel Thurlow, FNU Hanson, Scott DeWitt, Shirley Antonowicz, Norma Jean Duhamel, Scott Lamry, Kenneth Factor, and David Ford)

1108.   Plaintiff realleges each paragraph of this Complaint as if fully stated herein.

1109.   Defendants, at all times relevant hereto, were acting under color of state law.

1110.   Defendants routinely placed and approved the placement of Plaintiff in solitary confinement as punishment and kept Plaintiff in solitary confinement for extended durations of time that were unjustified by legitimate penological needs. In doing so, Defendants, in their individual capacities, violated Plaintiff's clearly established rights under the Maine Constitution, including: (1) the "safety" provision of Article I, § 1, which protects his "inherent and unalienable right[]" to "safety"; (2) Article I, § 6, which protects the "[r]ights of persons accused" not to "be deprived of life, liberty, property or privileges"; (3) Article I, § 6-A, which protects the right to "due process"; and (4) Article I, § 9, which guarantees the right to be free from cruel and usual punishment.

1111.   As a direct and proximate cause and result of the foregoing, Plaintiff suffered substantial personal injuries of a disabling, debilitating, and permanent nature, severe and prolonged pain and suffering, loss of enjoyment of life, severe permanent mental and emotional

193

distress, and lost income and earning capacity, and will be caused to suffer all of the foregoing losses and damages into the foreseeable future.

1112.   Pursuant to 14 M.R.S. § 853, the statute of limitations was tolled on account of Plaintiff's disabilities, which prevented him from protecting his legal rights and bringing this action against Defendants.

**SEVENTY-FIFTH CAUSE OF ACTION**

42 U.S.C. § 1983 – Unreasonable and Excessive Use of Force and Restraints in Violation of the Fourteenth and Eighth Amendments of the United States Constitution
(Plaintiff John Doe 6 against Defendants Mary Ann Saar, Robert Lancaster, Barbara Heath, Daniel Thurlow, FNU Hanson, Scott DeWitt, Scott Lamry, Kenneth Factor, and David Ford)

1113.   Plaintiff realleges each paragraph of this Complaint as if fully stated herein.

1114.   Defendants, at all times relevant hereto, were acting under color of state law.

1115.   Defendants used, approved, failed to intervene, and acted with deliberate indifference to unreasonable and excessive uses of force against Plaintiff that amounted to punishment and were unjustified by legitimate penological needs. In doing so, Defendants, in their individual capacities, violated Plaintiff's clearly established Fourteenth Amendment Due Process rights and Eighth Amendment right to be free from cruel and unusual punishment.

1116.   Defendants used, approved, failed to intervene, and acted with deliberate indifference to the placement of Plaintiff in restraints for purposes of punishment rather than legitimate penological needs. Further, Defendants directly kept, approved, failed to intervene, or acted with deliberate indifference to Plaintiff remaining in such unreasonable and excessive restraints for extended durations of time. In doing so, Defendants, in their individual capacities, violated Plaintiff's clearly established Fourteenth Amendment Due Process rights and Eighth Amendment right to be free from cruel and unusual punishment.

194

1117.   As a direct and proximate cause and result of the foregoing, Plaintiff suffered substantial personal injuries of a disabling, debilitating, and permanent nature, severe and prolonged pain and suffering, loss of enjoyment of life, severe permanent mental and emotional distress, and lost income and earning capacity, and will be caused to suffer all of the foregoing losses and damages into the foreseeable future.

1118.   Pursuant to 14 M.R.S. § 853, the statute of limitations was tolled on account of Plaintiff's disabilities, which prevented him from protecting his legal rights and bringing this action against Defendants.

## SEVENTY-SIXTH CAUSE OF ACTION

5 M.R.S. § 4682(1-A) – Unreasonable and Excessive Use of Force and Restraints in Violation of Article I, §§ 1, 6, 6-A, and 9 of the Maine Constitution
(Plaintiff John Doe 6 against Defendants Mary Ann Saar, Robert Lancaster, Barbara Heath, Daniel Thurlow, FNU Hanson, Scott DeWitt, Scott Lamry, Kenneth Factor, and David Ford)

1119.   Plaintiff realleges each paragraph of this Complaint as if fully stated herein .

1120.   Defendants, at all times relevant hereto, were acting under color of state law.

1121.   Defendants used, approved, failed to intervene, and acted with deliberate indifference to unreasonable and excessive uses of force against Plaintiff that amounted to punishment and were unjustified by legitimate penological needs. In doing so, Defendants, in their individual capacities, violated Plaintiff's clearly established rights under the Maine Constitution, including: (1) the "safety" provision of Article I, § 1, which protects his "inherent and unalienable right[]" to "safety"; (2) Article I, § 6, which protects the "[r]ights of persons accused" not to "be deprived of life, liberty, property or privileges"; (3) Article I, § 6-A, which protects the right to "due process"; and (4) Article I, § 9, which guarantees the right to be free from cruel and usual punishment.

195

1122.   Defendants used, approved, failed to intervene, and acted with deliberate indifference to the placement of Plaintiff in restraints for purposes of punishment rather than legitimate penological needs. Further, Defendants directly kept, approved, failed to intervene, or acted with deliberate indifference to Plaintiff remaining in such unreasonable and excessive restraints for extended durations of time. In doing so, Defendants, in their individual capacities, violated Plaintiff's clearly established rights under the Maine Constitution, including: (1) the "safety" provision of Article I, § 1, which protects his "inherent and unalienable right[]" to "safety"; (2) Article I, § 6, which protects the "[r]ights of persons accused" not to "be deprived of life, liberty, property or privileges"; (3) Article I, § 6-A, which protects the right to "due process"; and (4) Article I, § 9, which guarantees the right to be free from cruel and usual punishment.

1123.   As a direct and proximate cause and result of the foregoing, Plaintiff suffered substantial personal injuries of a disabling, debilitating, and permanent nature, severe and prolonged pain and suffering, loss of enjoyment of life, severe permanent mental and emotional distress, and lost income and earning capacity, and will be caused to suffer all of the foregoing losses and damages into the foreseeable future.

1124.   Pursuant to 14 M.R.S. § 853, the statute of limitations was tolled on account of Plaintiff's disabilities, which prevented him from protecting his legal rights and bringing this action against Defendants.

### SEVENTY-SEVENTH CAUSE OF ACTION

42 U.S.C. § 1983 – Denial of Necessary Medical Treatment and Deliberate Indifference to Serious Medical Needs in Violation of the Fourteenth and Eighth Amendments of the United States Constitution
(Plaintiff John Doe 6 against Defendants Mary Ann Saar, Robert Lancaster, Barbara Heath, Daniel Thurlow, FNU Hanson, Scott DeWitt, Shirley Antonowicz, Norma Jean Duhamel, Scott Lamry, Kenneth Factor, and David Ford)

1125.    Plaintiff realleges each paragraph of this Complaint as if fully stated herein.

1126.    Defendants, at all times relevant hereto, were acting under color of state law.

1127.    Defendants, at all times relevant hereto, knew or should have known that Plaintiff suffered from severe mental illness that necessitated Plaintiff receiving medical care for that mental illness and placed Plaintiff at a substantial risk of serious harm if such treatment was not provided.

1128.    Defendants, at all times relevant hereto, were responsible for ensuring Plaintiff was receiving appropriate and necessary medical care, including mental health care.

1129.    Defendants, at all times relevant hereto, knew or should have known that Plaintiff was not receiving the necessary mental health care treatment, and that his conditions of confinement, including unreasonable and excessive isolation, were causing his mental health to further deteriorate and resulting in further damage.

1130.    Defendants acted with deliberate indifference to this substantial risk of serious harm by failing to provide Plaintiff with any reasonable and adequate medical and mental health care treatment in violation of Plaintiff's Fourteenth Amendment Due Process rights and Eighth Amendment right to be free from cruel and unusual punishment.

1131.    As a direct and proximate cause and result of the foregoing, Plaintiff suffered substantial personal injuries of a disabling, debilitating, and permanent nature, severe and prolonged pain and suffering, loss of enjoyment of life, severe permanent mental and emotional distress, and lost income and earning capacity, and will be caused to suffer all of the foregoing losses and damages into the foreseeable future.

1132.    Pursuant to 14 M.R.S. § 853, the statute of limitations was tolled on account of

Plaintiff's disabilities, which prevented him from protecting his legal rights and bringing this action against Defendants.

### SEVENTY-EIGHTH CAUSE OF ACTION

5 M.R.S. § 4682(1-A) – Denial of Necessary Medical Treatment and Deliberate Indifference to Serious Medical Needs in Violation of Article I, §§ 1, 6, 6-A, and 9 of the Maine Constitution (Plaintiff John Doe 6 against Defendants Mary Ann Saar, Robert Lancaster, Barbara Heath, Daniel Thurlow, FNU Hanson, Scott DeWitt, Shirley Antonowicz, Norma Jean Duhamel, Scott Lamry, Kenneth Factor, and David Ford)

1133.   Plaintiff realleges each paragraph of this Complaint as if fully stated herein.

1134.   Defendants, at all times relevant hereto, were acting under color of state law.

1135.   Defendants, at all times relevant hereto, knew or should have known that Plaintiff suffered from severe mental illness that necessitated Plaintiff receiving medical care for that mental illness and placed Plaintiff at a substantial risk of serious harm if such treatment was not provided.

1136.   Defendants, at all times relevant hereto, were responsible for ensuring Plaintiff was receiving appropriate medical care, including mental health care.

1137.   Defendants, at all times relevant to these actions, knew or should have known that Plaintiff was not receiving the necessary mental health care treatment, and that his conditions of confinement, including unreasonable and excessive isolation, were causing his mental health to further deteriorate and resulting in further damage.

1138.   Defendants acted with acted with deliberate indifference to this substantial risk of serious harm by failing to provide Plaintiff with any reasonable and adequate medical and mental health care treatment in violation of Plaintiff's clearly established rights under the Maine Constitution, including: (1) the "safety" provision of Article I, § 1, which protects his "inherent and unalienable right[]" to "safety"; (2) Article I, § 6, which protects the "[r]ights of persons

accused" not to "be deprived of life, liberty, property or privileges"; (3) Article I, § 6-A, which protects the right to "due process"; and (4) Article I, § 9, which guarantees the right to be free from cruel and usual punishment.

1139.   As a direct and proximate cause and result of the foregoing, Plaintiff suffered substantial personal injuries of a disabling, debilitating, and permanent nature, severe and prolonged pain and suffering, loss of enjoyment of life, severe permanent mental and emotional distress, and lost income and earning capacity, and will be caused to suffer all of the foregoing losses and damages into the foreseeable future.

1140.   Pursuant to 14 M.R.S. § 853, the statute of limitations was tolled on account of Plaintiff's disabilities, which prevented him from protecting his legal rights and bringing this action against Defendants.

## SEVENTY-NINTH CAUSE OF ACTION

Maine State Law – Intentional Infliction of Emotional Distress
(Plaintiff John Doe 6 against Defendants Mary Ann Saar, Robert Lancaster, Barbara Heath, Daniel Thurlow, FNU Hanson, Scott DeWitt, Shirley Antonowicz, Norma Jean Duhamel, Scott Lamry, Kenneth Factor, and David Ford)

1141.   Plaintiff realleges each paragraph of this Complaint as if fully stated herein.

1142.   Through their violations of Plaintiff's rights under the United States and Maine Constitutions, Defendants intentionally or recklessly, with conscious disregard of the likelihood of harm and/or severe emotional distress, inflicted severe emotional distress on Plaintiff realleges each paragraph of this Complaint as if fully stated herein  conduct of Defendants was extreme and outrageous so as to intentionally and recklessly cause severe emotional distress and was the actual, proximate, and factual cause of severe emotional distress of Plaintiff.

1143.   Defendants' conduct was so extreme and outrageous so as to as to exceed all

possible bounds of decency and as to be regarded as atrocious and utterly intolerable in a civilized community. R.S. (Second) Torts, § 46, cmt. D.

1144.   As a result of Defendants' conduct, as outlined herein, Plaintiff, while incarcerated at the Youth Center, was subjected to repeated constitutional violations, at the hands of those acting under color of law, including unreasonable and excessive uses of force, restraints, and isolation, deliberate indifference to substantial risks of serious harm, and sexual abuse.

1145.   Defendants' conduct was the actual, proximate, and factual cause of severe emotional distress of Plaintiff.

1146.   As a result, Plaintiff suffered emotional distress so severe that no reasonable person could be expected to endure it. Plaintiff has suffered and continues to suffer great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation and loss of enjoyment of life; distrust, anxiety, and distress related to authority figures; depression, nightmares, nervousness, stress and/or other trauma; mental anguish, humiliation, embarrassment, insomnia, and fear.

1147.   Plaintiff was also prevented and will continue to be prevented from performing Plaintiff's daily activities and obtaining the full enjoyment of life; has sustained and will continue to sustain loss of earnings and earning capacity; and/or has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling.

1148.   The aforesaid injuries were due to willful, wanton, reckless, and intentional acts of Defendants and were in no way caused by any act or failure to act on the part of Plaintiff.

## EIGHTIETH CAUSE OF ACTION

42 U.S.C. § 1983 – Deliberate Indifference to Substantial Risks of Serious Harm in Violation of the Fourteenth and Eighth Amendments of the United States Constitution

(Plaintiff John Doe 7 against Defendants Martin Magnusson, Mary Ann Saar, Lars Olsen, Robert Lancaster, Barbara Heath, Daniel Thurlow,, FNU Nelson, Daniel Dickson, Matthew Nee, Garret Smith, and Timothy Foust)

1149.   Plaintiff realleges each paragraph of this Complaint as if fully stated herein.

1150.   At all times relevant hereto, Defendants were acting under color of state law.

1151.   At all times relevant hereto, Defendants, including their agents and employees, were entrusted and charged with the custody, care, and protection of Plaintiff, a minor, and exercised control over Plaintiff to the exclusion of others. As such, at all times relevant hereto, Defendants, in their individual capacities, had a duty to protect and ensure the safety of Plaintiff during his incarceration at the Youth Center.

1152.   At all times relevant hereto, Plaintiff had constitutional rights under the Fourteenth and Eighth Amendments to be free from the deliberate indifference of a person, acting under color of law, to a substantial risk of serious harm, including, but not limited to, serious risks from physical harm, medical needs, and conditions of confinement.

1153.   At all times relevant hereto, Defendants were aware of, observed, or participated in incidents of Plaintiff being subjected to unreasonable or excessive uses of force and restraints, and yet failed to take reasonable actions to abate such harm.

1154.   At all times relevant hereto, Defendants were aware of, observed, or participated in incidents of Plaintiff being subjected to sexual abuse, including gratuitous strip-searches done without legitimate penological justification, and yet failed to take reasonable actions to abate such harm.

1155.   At all times relevant hereto, Defendants were aware of, observed, or participated in the denial of Plaintiff receiving necessary and adequate medical care, including mental health care, and yet failed to take reasonable actions to abate such harm.

1156. At all times relevant hereto, Defendants were aware of, observed, or participated in the denial of education to Plaintiff, and yet failed to take reasonable actions to abate such harm.

1157. At all times relevant hereto, Defendants were aware of, observed, or participated in confining Plaintiff in conditions that amounted to punishment and/or posed a substantial risk of serious harm to his physical safety, including unreasonable and excessive periods of being housed in isolation, and yet failed to take reasonable actions to abate such harm.

1158. Defendants further knew or should have known that their direct actions, approval, and deliberate indifference to such conduct created an environment where MDOC staff continued, with impunity, to use unreasonable and excessive force and restraints in violation of Plaintiff's Fourteenth Amendment Due Process rights and Eighth Amendment right to be free from cruel and unusual punishment.

1159. Defendants further knew or should have known that their direct actions, approval, and deliberate indifference to such conduct created an environment where MDOC staff continued, with impunity, to sexually abuse, including gratuitously strip-searching, Plaintiff in violation of Plaintiff's Fourteenth Amendment Due Process rights and Eighth Amendment right to be free from cruel and unusual punishment.

1160. Defendants further knew or should have known that their direct actions, approval, and deliberate indifference to such conduct created an environment where MDOC staff continued, with impunity, to deny Plaintiff adequate and necessary medical care, including mental health care, in violation of Plaintiff's Fourteenth Amendment Due Process rights and Eighth Amendment right to be free from cruel and unusual punishment.

1161. Defendants further knew or should have known that their direct actions, approval,

and deliberate indifference to such conduct created an environment where MDOC staff continued, with impunity, to deny Plaintiff an education in violation of Plaintiff's Fourteenth Amendment Due Process rights and Eighth Amendment right to be free from cruel and unusual punishment.

1162.   Defendants further knew or should have known that their direct actions, approval, and deliberate indifference to such conduct created an environment where MDOC staff continued, with impunity, to confine Plaintiff in conditions of confinement that amounted to punishment and/or posed a substantial risk of serious harm to her physical safety, including unreasonable and excessive periods of being housed in isolation, in violation of Plaintiff's Fourteenth Amendment Due Process rights and Eighth Amendment right to be free from cruel and unusual punishment.

1163.   As a direct and proximate cause and result of the foregoing Plaintiff suffered substantial personal injuries of a disabling, debilitating, and permanent nature, severe and prolonged pain and suffering, loss of enjoyment of life, severe permanent mental and emotional distress, and lost income and earning capacity, and will be caused to suffer all of the foregoing losses and damages into the foreseeable future.

1164.   Pursuant to 14 M.R.S. § 853, the statute of limitations was tolled on account of Plaintiff's disabilities.

## EIGHTY-FIRST CAUSE OF ACTION

5 M.R.S. § 4682(1-A) – Deliberate Indifference to Substantial Risks of Serious Harm in Violation of Article I, §§ 1, 6, 6-A, and 9 of the Maine Constitution
(Plaintiff John Doe 7 against Defendants Martin Magnusson, Mary Ann Saar, Lars Olsen, Robert Lancaster, Barbara Heath, Daniel Thurlow, FNU Nelson, Daniel Dickson, Matthew Nee, Garret Smith, and Timothy Foust)

1165.   Plaintiff realleges each paragraph of this Complaint as if fully stated herein.

1166.   At all times relevant hereto, Defendants were acting under color of state law.

1167.   At all times relevant hereto, Defendants, including their agents and employees,

were entrusted and charged with the custody, care, and protection of Plaintiff, a minor, and exercised control over Plaintiff to the exclusion of others. As such, at all times relevant hereto, Defendants, in their individual capacities, had a duty to protect and ensure the safety of Plaintiff during his incarceration at the Youth Center.

1168. At all times relevant hereto, Plaintiff had constitutional rights under the Maine Constitution to be free from the deliberate indifference of a person, acting under color of law, to a substantial risk of serious harm, including serious risks from physical harm, medical needs, and conditions of confinement.

1169. At all times relevant hereto, Defendants were aware of, observed, or participated in incidents of Plaintiff being subjected to unreasonable or excessive uses of force and restraints, and yet failed to take reasonable actions to abate such harm.

1170. At all times relevant hereto, Defendants were aware of, observed, or participated in incidents of Plaintiff being subjected to sexual abuse, including gratuitous strip-searches done without legitimate penological justification, and yet failed to take reasonable actions to abate such harm.

1171. At all times relevant hereto, Defendants were aware of, observed, or participated in the denial of Plaintiff receiving necessary and adequate medical care, including mental health care, and yet failed to take reasonable actions to abate such harm.

1172. At all times relevant hereto, Defendants were aware of, observed, or participated in the denial of education to Plaintiff, and yet failed to take reasonable action to abate such harm.

1173. At all times relevant hereto, Defendants were aware of, observed, or participated in

confining Plaintiff in conditions that amounted to punishment and/or posed a substantial risk of serious harm to his physical safety, including unreasonable and excessive periods of being housed in isolation, and yet failed to take reasonable actions to abate such harm.

1174. Defendants further knew or should have known that their direct actions, approval, and deliberate indifference to such conduct created an environment where MDOC staff continued, with impunity, to use unreasonable and excessive force, and restraints against Plaintiff in violation of Plaintiff's Article I, §§ 1, 6, 6-A, and 9 rights.

1175. Defendants further knew or should have known that their direct actions, approval, and deliberate indifference to such conduct created an environment where MDOC staff continued, with impunity, to sexually abuse, including gratuitously strip-searching, Plaintiff in violation of Plaintiff's Article I, §§ 1, 6, 6-A, and 9 rights.

1176. Defendants further knew or should have known that their direct actions, approval, and deliberate indifference to such conduct created an environment where MDOC staff continued, with impunity, to deny Plaintiff necessary and adequate medical care, including mental health care, in violation of Plaintiff's Article I, §§ 1, 6, 6-A, and 9 rights.

1177. Defendants further knew or should have known that their direct actions, approval, and deliberate indifference to such conduct created an environment where MDOC staff continued, with impunity, to deny Plaintiff an education in violation of Plaintiff's Article I, §§ 1, 6, 6-A, and 9 rights.

1178. Defendants further knew or should have known that their direct actions, approval, and deliberate indifference to such conduct created an environment where MDOC staff continued, with impunity, to confine Plaintiff in conditions of confinement that amounted to punishment and/or posed a substantial risk of serious harm to his physical safety, including unreasonable and

excessive periods of being housed in isolation, in violation of Plaintiff's Article I, §§ 1, 6, 6-A, and 9 rights.

1179.   As a direct and proximate cause and result of the foregoing Plaintiff suffered substantial personal injuries of a disabling, debilitating, and permanent nature, severe and prolonged pain and suffering, loss of enjoyment of life, severe permanent mental and emotional distress, and lost income and earning capacity, and will be caused to suffer all of the foregoing losses and damages into the foreseeable future.

1180.   Pursuant to 14 M.R.S. § 853, the statute of limitations was tolled on account of Plaintiff's disabilities.

## EIGHTY-SECOND CAUSE OF ACTION

42 U.S.C. § 1983 – Use of Unreasonable and Excessive Isolation in Violation of the Fourteenth and Eighth Amendments of the United States Constitution
(Plaintiff John Doe 7 against Defendants Martin Magnusson, Mary Ann Saar, Lars Olsen, Robert Lancaster, Barbara Heath, Daniel Thurlow, FNU Nelson, Daniel Dickson, Matthew Nee, Garret Smith, and Timothy Foust)

1181.   Plaintiff realleges each paragraph of this Complaint as if fully stated herein.

1182.   Defendants, at all times relevant hereto, were acting under color of state law.

1183.   Defendants routinely placed and approved the placement of Plaintiff in solitary confinement as punishment and kept Plaintiff in solitary confinement for extended durations of time that were unjustified by legitimate penological needs. In doing so, Defendants, in their individual capacities, violated Plaintiff's clearly established Fourteenth Amendment Due Process rights and Eighth Amendment right to be free from cruel and unusual punishment.

1184.   As a direct and proximate cause and result of the foregoing, Plaintiff suffered substantial personal injuries of a disabling, debilitating, and permanent nature, severe and prolonged pain and suffering, loss of enjoyment of life, severe permanent mental and emotional

distress, and lost income and earning capacity, and will be caused to suffer all of the foregoing losses and damages into the foreseeable future.

1185.   Pursuant to 14 M.R.S. § 853, the statute of limitations was tolled on account of Plaintiff's disabilities, which prevented him from protecting his legal rights and bringing this action against Defendants.

## EIGHTY-THIRD CAUSE OF ACTION

5 M.R.S. § 4682(1-A) – Use of Unreasonable and Excessive Isolation in Violation of Article I, §§ 1, 6, 6-A, and 9 of the Maine Constitution
(Plaintiff John Doe 7 against Defendants Martin Magnusson, Mary Ann Saar, Lars Olsen, Robert Lancaster, Barbara Heath, Daniel Thurlow, FNU Nelson, Daniel Dickson, Matthew Nee, Garret Smith, and Timothy Foust)

1186.    Plaintiff realleges each paragraph of this Complaint as if fully stated herein.

1187.   Defendants, at all times relevant hereto, were acting under color of state law.

1188.   Defendants routinely placed and approved the placement of Plaintiff in solitary confinement as punishment and kept Plaintiff in solitary confinement for extended durations of time that were unjustified by legitimate penological needs. In doing so, Defendants, in their individual capacities, violated Plaintiff's clearly established rights under the Maine Constitution, including: (1) the "safety" provision of Article I, § 1, which protects his "inherent and unalienable right[]" to "safety"; (2) Article I, § 6, which protects the "[r]ights of persons accused" not to "be deprived of life, liberty, property or privileges"; (3) Article I, § 6-A, which protects the right to "due process"; and (4) Article I, § 9, which guarantees the right to be free from cruel and usual punishment.

1189.   As a direct and proximate cause and result of the foregoing, Plaintiff suffered substantial personal injuries of a disabling, debilitating, and permanent nature, severe and prolonged pain and suffering, loss of enjoyment of life, severe permanent mental and emotional

distress, and lost income and earning capacity, and will be caused to suffer all of the foregoing losses and damages into the foreseeable future.

1190.   Pursuant to 14 M.R.S. § 853, the statute of limitations was tolled on account of Plaintiff's disabilities, which prevented him from protecting his legal rights and bringing this action against Defendants.

## EIGHTY-FOURTH CAUSE OF ACTION

42 U.S.C. § 1983 – Unreasonable and Excessive Use of Force and Restraints in Violation of the Fourteenth and Eighth Amendments of the United States Constitution
(Plaintiff John Doe 7 against Defendants Martin Magnusson, Mary Ann Saar, Lars Olsen, Robert Lancaster, Barbara Heath, Daniel Thurlow, FNU Nelson, Daniel Dickson, Matthew Nee, Garret Smith, and Timothy Foust)

1191.   Plaintiff realleges each paragraph of this Complaint as if fully stated herein.

1192.   Defendants, at all times relevant hereto, were acting under color of state law.

1193.   Defendants used, approved, failed to intervene, and acted with deliberate indifference to unreasonable and excessive uses of force against Plaintiff that amounted to punishment and were unjustified by legitimate penological needs. In doing so, Defendants, in their individual capacities, violated Plaintiff's clearly established Fourteenth Amendment Due Process rights and Eighth Amendment right to be free from cruel and unusual punishment.

1194.   Defendants used, approved, failed to intervene, and acted with deliberate indifference to the placement of Plaintiff in restraints for purposes of punishment rather than legitimate penological needs. Further, Defendants directly kept, approved, failed to intervene, or acted with deliberate indifference to Plaintiff remaining in such unreasonable and excessive restraints for extended durations of time. In doing so, Defendants, in their individual capacities, violated Plaintiff's clearly established Fourteenth Amendment Due Process rights and Eighth Amendment right to be free from cruel and unusual punishment.

1195. As a direct and proximate cause and result of the foregoing, Plaintiff suffered substantial personal injuries of a disabling, debilitating, and permanent nature, severe and prolonged pain and suffering, loss of enjoyment of life, severe permanent mental and emotional distress, and lost income and earning capacity, and will be caused to suffer all of the foregoing losses and damages into the foreseeable future.

1196. Pursuant to 14 M.R.S. § 853, the statute of limitations was tolled on account of Plaintiff's disabilities, which prevented him from protecting his legal rights and bringing this action against Defendants.

## EIGHTY-FIFTH CAUSE OF ACTION

5 M.R.S. § 4682(1-A) – Unreasonable and Excessive Use of Force and Restraints in Violation of Article I, §§ 1, 6, 6-A, and 9 of the Maine Constitution
(Plaintiff John Doe 7 against Defendants Martin Magnusson, Mary Ann Saar, Lars Olsen, Robert Lancaster, Barbara Heath, Daniel Thurlow, FNU Nelson, Daniel Dickson, Matthew Nee, Garret Smith, and Timothy Foust)

1197. Plaintiff realleges each paragraph of this Complaint as if fully stated herein.

1198. Defendants, at all times relevant hereto, were acting under color of state law.

1199. Defendants used, approved, failed to intervene, and acted with deliberate indifference to unreasonable and excessive uses of force against Plaintiff that amounted to punishment and were unjustified by legitimate penological needs. In doing so, Defendants, in their individual capacities, violated Plaintiff's clearly established rights under the Maine Constitution, including: (1) the "safety" provision of Article I, § 1, which protects his "inherent and unalienable right[]" to "safety"; (2) Article I, § 6, which protects the "[r]ights of persons accused" not to "be deprived of life, liberty, property or privileges"; (3) Article I, § 6-A, which protects the right to "due process"; and (4) Article I, § 9, which guarantees the right to be free from cruel and usual punishment.

1200.   Defendants used, approved, failed to intervene, and acted with deliberate indifference to the placement of Plaintiff in restraints for purposes of punishment rather than legitimate penological needs. Further, Defendants directly kept, approved, failed to intervene, or acted with deliberate indifference to Plaintiff remaining in such unreasonable and excessive restraints for extended durations of time. In doing so, Defendants, in their individual capacities, violated Plaintiff's clearly established rights under the Maine Constitution, including: (1) the "safety" provision of Article I, § 1, which protects his "inherent and unalienable right[]" to "safety"; (2) Article I, § 6, which protects the "[r]ights of persons accused" not to "be deprived of life, liberty, property or privileges"; (3) Article I, § 6-A, which protects the right to "due process"; and (4) Article I, § 9, which guarantees the right to be free from cruel and usual punishment.

1201.   As a direct and proximate cause and result of the foregoing, Plaintiff suffered substantial personal injuries of a disabling, debilitating, and permanent nature, severe and prolonged pain and suffering, loss of enjoyment of life, severe permanent mental and emotional distress, and lost income and earning capacity, and will be caused to suffer all of the foregoing losses and damages into the foreseeable future.

1202.   Pursuant to 14 M.R.S. § 853, the statute of limitations was tolled on account of Plaintiff's disabilities, which prevented him from protecting his legal rights and bringing this action against Defendants.

## EIGHTY-SIXTH CAUSE OF ACTION

42 U.S.C. § 1983 – Denial of Necessary Medical Treatment and Deliberate Indifference to
Serious Medical Needs in Violation of the Fourteenth and Eighth Amendments
of the United States Constitution
(Plaintiff John Doe 7 against Defendants Martin Magnusson, Mary Ann Saar, Lars Olsen, Robert
Lancaster, Barbara Heath, Daniel Thurlow, FNU Nelson, Daniel Dickson, Matthew Nee, Garret
Smith, and Timothy Foust)

1203.   Plaintiff realleges each paragraph of this Complaint as if fully stated herein.

1204.   Defendants, at all times relevant hereto, were acting under color of state law.

1205.   Defendants, at all times relevant hereto, knew or should have known that Plaintiff suffered from severe mental illness that necessitated Plaintiff receiving medical care for that mental illness and placed Plaintiff at a substantial risk of serious harm if such treatment was not provided.

1206.   Defendants, at all times relevant hereto, were responsible for ensuring Plaintiff was receiving appropriate and necessary medical care, including mental health care.

1207.   Defendants, at all times relevant hereto, knew or should have known that Plaintiff was not receiving the necessary mental health care treatment, and that his conditions of confinement, including unreasonable and excessive isolation, were causing his mental health to further deteriorate and resulting in further damage.

1208.   Defendants acted with deliberate indifference to this substantial risk of serious harm by failing to provide Plaintiff with any reasonable and adequate medical and mental health care treatment in violation of Plaintiff's Fourteenth Amendment Due Process rights and Eighth Amendment right to be free from cruel and unusual punishment.

1209.   As a direct and proximate cause and result of the foregoing, Plaintiff suffered substantial personal injuries of a disabling, debilitating, and permanent nature, severe and prolonged pain and suffering, loss of enjoyment of life, severe permanent mental and emotional distress, and lost income and earning capacity, and will be caused to suffer all of the foregoing losses and damages into the foreseeable future.

1210.   Pursuant to 14 M.R.S. § 853, the statute of limitations was tolled on account of

Plaintiff's disabilities, which prevented him from protecting his legal rights and bringing this action against Defendants.

**EIGHTY-SEVENTH CAUSE OF ACTION**

5 M.R.S. § 4682(1-A) – Denial of Necessary Medical Treatment and Deliberate Indifference to Serious Medical Needs in Violation of Article I, §§ 1, 6, 6-A, and 9 of the Maine Constitution (Plaintiff John Doe 7 against Defendants Martin Magnusson, Mary Ann Saar, Lars Olsen, Robert Lancaster, Barbara Heath, Daniel Thurlow, FNU Nelson, Daniel Dickson, Matthew Nee, Garret Smith, and Timothy Foust)

1211.   Plaintiff realleges each paragraph of this Complaint as if fully stated herein.

1212.   Defendants, at all times relevant hereto, were acting under color of state law.

1213.   Defendants, at all times relevant hereto, knew or should have known that Plaintiff suffered from severe mental illness that necessitated Plaintiff receiving medical care for that mental illness and placed Plaintiff at a substantial risk of serious harm if such treatment was not provided.

1214.   Defendants, at all times relevant hereto, were responsible for ensuring Plaintiff was receiving appropriate medical care, including mental health care.

1215.   Defendants, at all times relevant hereto, knew or should have known that Plaintiff was not receiving the necessary mental health care treatment, and that his conditions of confinement, including unreasonable and excessive isolation, were causing his mental health to further deteriorate and resulting in further damage.

1216.   Defendants acted with deliberate indifference to this substantial risk of serious harm by failing to provide Plaintiff with any reasonable and adequate medical and mental health care treatment in violation of Plaintiff's clearly established rights under the Maine Constitution, including: (1) the "safety" provision of Article I, § 1, which protects his "inherent and unalienable right[]" to "safety"; (2) Article I, § 6, which protects the "[r]ights of persons accused" not to "be

deprived of life, liberty, property or privileges"; (3) Article I, § 6-A, which protects the right to "due process"; and (4) Article I, § 9, which guarantees the right to be free from cruel and usual punishment.

1217.   As a direct and proximate cause and result of the foregoing, Plaintiff suffered substantial personal injuries of a disabling, debilitating, and permanent nature, severe and prolonged pain and suffering, loss of enjoyment of life, severe permanent mental and emotional distress, and lost income and earning capacity, and will be caused to suffer all of the foregoing losses and damages into the foreseeable future.

1218.   Pursuant to 14 M.R.S. § 853, the statute of limitations was tolled on account of Plaintiff's disabilities, which prevented him from protecting his legal rights and bringing this action against Defendants.

## EIGHTY-EIGHTH CAUSE OF ACTION

42 U.S.C. § 1983 – Sexual Abuse in Violation of the Fourteenth and Eighth Amendments of the United States Constitution
(Plaintiff John Doe 7 against Defendant Daniel Thurlow, and Garret Smith)

1219.   Plaintiff realleges each paragraph of this Complaint as if fully stated herein.

1220.   Defendants, at all times relevant hereto, were acting under color of state law.

1221.   Defendants repeatedly sexually abused, or failed to prevent repeated sexual abuse of, Plaintiff, while he was a minor and incarcerated at the Youth Center. There was no valid penological justification for Defendants inflicting and/or exposing Plaintiff to sexual abuse. Through this conduct, Defendants, in their individual capacities, violated Plaintiff's Fourteenth Amendment Due Process rights and Eighth Amendment right to be free from cruel and unusual punishment.

1222.   As a direct and proximate cause and result of the foregoing, Plaintiff suffered

213

substantial personal injuries of a disabling, debilitating, and permanent nature, severe and prolonged pain and suffering, loss of enjoyment of life, severe permanent mental and emotional distress, and lost income and earning capacity, and will be caused to suffer all of the foregoing losses and damages into the foreseeable future.

1223.   Pursuant to 14 M.R.S. § 853, the statute of limitations was tolled on account of Plaintiff's disabilities, which prevented him from protecting his legal rights and bringing this action against Defendants.

1224.   At the time this cause of action arose, Plaintiff was a minor.  Thus, pursuant to 14 M.R.S § 752-C this action may be commenced at any time.

### EIGHTY-NINTH CAUSE OF ACTION

5 M.R.S § 4681(1-A) – Sexual Abuse in Violation of Article I, §§ 1, 6, 6-A, and 9
of the Maine Constitution
(Plaintiff John Doe 7 against Defendants Daniel Thurlow, and Garret Smith)

1225.   Plaintiff realleges each paragraph of this Complaint as if fully stated herein.

1226.    Defendants, at all times relevant hereto, were acting under color of state law.

1227.   Defendants repeatedly sexually abused, or failed to prevent repeated sexual abuse of, Plaintiff, while he was a minor and incarcerated at the Youth Center. There was no valid penological justification for Defendants inflicting and/or exposing Plaintiff to sexual abuse. Through this conduct, Defendants, in their individual capacities, violated Plaintiff's clearly established rights under the Maine Constitution, including: (1) the "safety" provision of Article I, § 1, which protects his "inherent and unalienable right[]" to "safety"; (2) Article I, § 6, which protects the "[r]ights of persons accused" not to "be deprived of life, liberty, property or privileges"; (3) Article I, § 6-A, which protects the right to "due process"; and (4) Article I, § 9, which guarantees the right to be free from cruel and usual punishment.

1228.   As a direct and proximate cause and result of the foregoing, Plaintiff suffered substantial personal injuries of a disabling, debilitating, and permanent nature, severe and prolonged pain and suffering, loss of enjoyment of life, severe permanent mental and emotional distress, and lost income and earning capacity, and will be caused to suffer all of the foregoing losses and damages into the foreseeable future.

1229.   At the time this cause of action arose, Plaintiff was a minor. Thus, pursuant to 14 M.R.S. § 752-C this action may be commenced at any time.

### NINETIETH CAUSE OF ACTION

Maine State Law – Intentional Infliction of Emotional Distress
(Plaintiff John Doe 7 against Defendants Martin Magnusson, Mary Ann Saar, Lars Olsen, Robert Lancaster, Barbara Heath, Daniel Thurlow, FNU Nelson, Daniel Dickson, Matthew Nee, Garret Smith, and Timothy Foust)

1230.   Plaintiff realleges each paragraph of this Complaint as if fully stated herein.

1231.   Through their violations of Plaintiff's rights under the United States and Maine Constitutions, Defendants intentionally or recklessly, with conscious disregard of the likelihood of harm and/or severe emotional distress, inflicted severe emotional distress on Plaintiff.

1232.   Defendants' conduct was so extreme and outrageous so as to as to exceed all possible bounds of decency and as to be regarded as atrocious and utterly intolerable in a civilized community. R.S. (Second) Torts, § 46, cmt. D.

1233.   As a result of Defendants' conduct, as outlined herein, Plaintiff, while incarcerated at the Youth Center, was subjected to repeated constitutional violations, at the hands of those acting under color of law, including unreasonable and excessive uses of force, restraints, and isolation, deliberate indifference to substantial risks of serious harm, and sexual abuse.

1234.   Defendants' conduct was the actual, proximate, and factual cause of severe

emotional distress of Plaintiff.

1235.    As a result, Plaintiff suffered emotional distress so severe that no reasonable person could be expected to endure it. Plaintiff has suffered and continues to suffer great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation and loss of enjoyment of life; distrust, anxiety, and distress related to authority figures; depression, nightmares, nervousness, stress and/or other trauma; mental anguish, humiliation, embarrassment, insomnia, and fear.

1236.    Plaintiff was also prevented and will continue to be prevented from performing Plaintiff's daily activities and obtaining the full enjoyment of life; has sustained and will continue to sustain loss of earnings and earning capacity; and/or has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling.

1237.    The aforesaid injuries were due to willful, wanton, reckless, and intentional acts of Defendants and were in no way caused by any act or failure to act on the part of Plaintiff.

## NINETY-FIRST CAUSE OF ACTION

42 U.S.C. § 1983 – Deliberate Indifference to Substantial Risks of Serious Harm in Violation of the Fourteenth and Eighth Amendments of the United States Constitution
(Plaintiff John Doe 8 against Defendants Martin Magnusson, Mary Ann Saar, Lars Olsen, Robert Lancaster, Barbara Heath, Michael Mack, Brian MacDougall,
Daniel Thurlow, Scott Janosik, Scott Riska, FNU Thomas, and FNU Quinn)

1238.    Plaintiff realleges each paragraph of this Complaint as if fully stated herein.

1239.    At all times relevant hereto, Defendants were acting under color of state law.

1240.    At all times relevant hereto, Defendants, including their agents and employees, were charged with the custody, care, and protection of Plaintiff, a minor, and exercised control over Plaintiff to the exclusion of others. As such, at all times relevant hereto, Defendants, in their

individual capacities, had a duty to protect and ensure the safety of Plaintiff during his incarceration at the Youth Center.

1241.   At all times relevant hereto, Plaintiff had constitutional rights under the Fourteenth and Eighth Amendments to be free from the deliberate indifference of a person, acting under color of law, to a substantial risk of serious harm, including, but not limited to, serious risks from physical harm, medical needs, and conditions of confinement.

1242.   At all times relevant hereto, Defendants were aware of, observed, or participated in incidents of Plaintiff being subjected to unreasonable or excessive uses of force and restraints, and yet failed to take reasonable actions to abate such harm.

1243.   At all times relevant hereto, Defendants were aware of, observed, or participated in incidents of Plaintiff being subjected to sexual abuse, including gratuitous strip-searches done without legitimate penological justification, and yet failed to take reasonable actions to abate such harm.

1244.   At all times relevant hereto, Defendants were aware of, observed, or participated in the denial of Plaintiff receiving necessary and adequate medical care, including mental health care, and yet failed to take reasonable actions to abate such harm.

1245.   At all times relevant hereto, Defendants were aware of, observed, or participated in the denial of education to Plaintiff, and yet failed to take reasonable actions to abate such harm.

1246.   At all times relevant hereto, Defendants were aware of, observed, or participated in confining Plaintiff in conditions that amounted to punishment and/or posed a substantial risk of serious harm to his physical safety, including unreasonable and excessive periods of being housed in isolation, and yet failed to take reasonable actions to abate such harm.

1247.   Defendants further knew or should have known that their direct actions, approval,

and deliberate indifference to such conduct created an environment where MDOC staff continued, with impunity, to use unreasonable and excessive force and restraints in violation of Plaintiff's Fourteenth Amendment Due Process rights and Eighth Amendment right to be free from cruel and unusual punishment.

1248. Defendants further knew or should have known that their direct actions, approval, and deliberate indifference to such conduct created an environment where MDOC staff continued, with impunity, to sexually abuse, including gratuitously strip-searching, Plaintiff in violation of Plaintiff's Fourteenth Amendment Due Process rights and Eighth Amendment right to be free from cruel and unusual punishment

1249. Defendants further knew or should have known that their direct actions, approval, and deliberate indifference to such conduct created an environment where MDOC staff continued, with impunity, to deny Plaintiff adequate and necessary medical care, including mental health care, in violation of Plaintiff's Fourteenth Amendment Due Process rights and Eighth Amendment right to be free from cruel and unusual punishment.

1250. Defendants further knew or should have known that their direct actions, approval, and deliberate indifference to such conduct created an environment where MDOC staff continued, with impunity, to deny Plaintiff an education in violation of Plaintiff's Fourteenth Amendment Due Process rights and Eighth Amendment right to be free from cruel and unusual punishment.

1251. Defendants further knew or should have known that their direct actions, approval, and deliberate indifference to such conduct created an environment where MDOC staff continued, with impunity, to confine Plaintiff in conditions of confinement that amounted to punishment and/or posed a substantial risk of serious harm to her physical safety, including unreasonable and

excessive periods of being housed in isolation, in violation of Plaintiff's Fourteenth Amendment Due Process rights and Eighth Amendment right to be free from cruel and unusual punishment.

1252.   As a direct and proximate cause and result of the foregoing Plaintiff suffered substantial personal injuries of a disabling, debilitating, and permanent nature, severe and prolonged pain and suffering, loss of enjoyment of life, severe permanent mental and emotional distress, and lost income and earning capacity, and will be caused to suffer all of the foregoing losses and damages into the foreseeable future.

1253.   Pursuant to 14 M.R.S. § 853, the statute of limitations was tolled on account of Plaintiff's disabilities.

<strong>NINETY-SECOND CAUSE OF ACTION</strong>

5 M.R.S. § 4682(1-A) – Deliberate Indifference to Substantial Risks of Serious Harm in Violation of Article I, §§ 1, 6, 6-A, and 9 of the Maine Constitution
(Plaintiff John Doe 8 against Defendants Martin Magnusson, Mary Ann Saar, Lars Olsen, Robert Lancaster, Barbara Heath, Michael Mack, Brian MacDougall,
Daniel Thurlow, Scott Janosik, Scott Riska, FNU Thomas, and FNU Quinn)

1254.   Plaintiff realleges each paragraph of this Complaint as if fully stated herein.

1255.   At all times relevant hereto, Defendants were acting under color of state law.

1256.   At all times relevant hereto, Defendants, including their agents and employees, were entrusted and charged with the custody, care, and protection of Plaintiff, a minor, and exercised control over Plaintiff to the exclusion of others. As such, at all times relevant hereto, Defendants, in their individual capacities, had a duty to protect and ensure the safety of Plaintiff during his incarceration at the Youth Center.

1257.   At all times relevant hereto, Plaintiff had had constitutional rights under the Maine

Constitution to be free from the deliberate indifference of a person, acting under color of law, to a substantial risk of serious harm, including serious risks from physical harm, medical needs, and conditions of confinement.

1258.  At all times relevant hereto, Defendants were aware of, observed, or participated in incidents of Plaintiff being subjected to unreasonable or excessive uses of force and restraints, and yet failed to take reasonable actions to abate such harm.

1259.  At all times relevant hereto, Defendants were aware of, observed, or participated in incidents of Plaintiff being subjected to sexual abuse, including gratuitous strip-searches done without legitimate penological justification, and yet failed to take reasonable actions to abate such harm.

1260.  At all times relevant hereto, Defendants were aware of, observed, or participated in the denial of Plaintiff receiving necessary and adequate medical care, including mental health care, and yet failed to take reasonable actions to abate such harm.

1261.  At all times relevant hereto, Defendants were aware of, observed, or participated in the denial of education to Plaintiff, and yet failed to take reasonable action to abate such harm.

1262.  At all times relevant hereto, Defendants were aware of, observed, or participated in confining Plaintiff in conditions that amounted to punishment and/or posed a substantial risk of serious harm to his physical safety, including unreasonable and excessive periods of being housed in isolation, and yet failed to take reasonable actions to abate such harm.

1263.  Defendants further knew or should have known that their direct actions, approval, and deliberate indifference to such conduct created an environment where MDOC staff continued, with impunity, to use unreasonable and excessive force, and restraints against Plaintiff in violation of Plaintiff's Article I, §§ 1, 6, 6-A, and 9 rights.

1264. Defendants further knew or should have known that their direct actions, approval, and deliberate indifference to such conduct created an environment where MDOC staff continued, with impunity, to sexually abuse, including gratuitously strip-searching, Plaintiff in violation of Plaintiff's Article I, §§ 1, 6, 6-A, and 9 rights.

1265. Defendants further knew or should have known that their direct actions, approval, and deliberate indifference to such conduct created an environment where MDOC staff continued, with impunity, to deny Plaintiff necessary and adequate medical care, including mental health care, in violation of Plaintiff's Article I, §§ 1, 6, 6-A, and 9 rights.

1266. Defendants further knew or should have known that their direct actions, approval, and deliberate indifference to such conduct created an environment where MDOC staff continued, with impunity, to deny Plaintiff an education in violation of Plaintiff's Article I, §§ 1, 6, 6-A, and 9 rights.

1267. Defendants further knew or should have known that their direct actions, approval, and deliberate indifference to such conduct created an environment where MDOC staff continued, with impunity, to confine Plaintiff in conditions of confinement that amounted to punishment and/or posed a substantial risk of serious harm to his physical safety, including unreasonable and excessive periods of being housed in isolation, in violation of Plaintiff's Article I, §§ 1, 6, 6-A, and 9 rights.

1268. As a direct and proximate cause and result of the foregoing Plaintiff suffered substantial personal injuries of a disabling, debilitating, and permanent nature, severe and prolonged pain and suffering, loss of enjoyment of life, severe permanent mental and emotional distress, and lost income and earning capacity, and will be caused to suffer all of the foregoing losses and damages into the foreseeable future.

1269.  Pursuant to 14 M.R.S. § 853, the statute of limitations was tolled on account of Plaintiff's disabilities.

## NINETY-THIRD CAUSE OF ACTION

42 U.S.C. § 1983 – Use of Unreasonable and Excessive Isolation in Violation of the Fourteenth and Eighth Amendments of the United States Constitution
(Plaintiff John Doe 8 against Defendants Martin Magnusson, Mary Ann Saar, Lars Olsen, Robert Lancaster, Barbara Heath, Michael Mack, Brian MacDougall, Daniel Thurlow, Scott Janosik, Scott Riska, FNU Thomas, and FNU Quinn)

1270.  Plaintiff realleges each paragraph of this Complaint as if fully stated herein.

1271.  Defendants, at all times relevant hereto, were acting under color of state law.

1272.  Defendants routinely placed and approved the placement of Plaintiff in solitary confinement as punishment and kept Plaintiff in solitary confinement for extended durations of time that were unjustified by legitimate penological needs. In doing so, Defendants, in their individual capacities, violated Plaintiff's clearly established Fourteenth Amendment Due Process rights and Eighth Amendment right to be free from cruel and unusual punishment.

1273.  As a direct and proximate cause and result of the foregoing, Plaintiff suffered substantial personal injuries of a disabling, debilitating, and permanent nature, severe and prolonged pain and suffering, loss of enjoyment of life, severe permanent mental and emotional distress, and lost income and earning capacity, and will be caused to suffer all of the foregoing losses and damages into the foreseeable future.

1274.  Pursuant to 14 M.R.S. § 853, the statute of limitations was tolled on account of Plaintiff's disabilities, which prevented him from protecting his legal rights and bringing this action against Defendants.

## NINETY-FOURTH CAUSE OF ACTION

5 M.R.S. § 4682(1-A) – Use of Unreasonable and Excessive Isolation in Violation of

Article I, §§ 1, 6, 6-A, and 9 of the Maine Constitution
(Plaintiff John Doe 8 against Defendants Martin Magnusson, Mary Ann Saar, Lars Olsen, Robert Lancaster, Barbara Heath, Michael Mack, Brian MacDougall, Daniel Thurlow, Scott Janosik, Scott Riska, FNU Thomas, and FNU Quinn)

1275. Plaintiff realleges each paragraph of this Complaint as if fully stated herein.

1276. Defendants, at all times relevant hereto, were acting under color of state law.

1277. Defendants routinely placed and approved the placement of Plaintiff in solitary confinement as punishment and kept Plaintiff in solitary confinement for extended durations of time that were unjustified by legitimate penological needs. In doing so, Defendants, in their individual capacities, violated Plaintiff's clearly established rights under the Maine Constitution, including: (1) the "safety" provision of Article I, § 1, which protects his "inherent and unalienable right[]" to "safety"; (2) Article I, § 6, which protects the "[r]ights of persons accused" not to "be deprived of life, liberty, property or privileges"; (3) Article I, § 6-A, which protects the right to "due process"; and (4) Article I, § 9, which guarantees the right to be free from cruel and usual punishment.

1278. As a direct and proximate cause and result of the foregoing, Plaintiff suffered substantial personal injuries of a disabling, debilitating, and permanent nature, severe and prolonged pain and suffering, loss of enjoyment of life, severe permanent mental and emotional distress, and lost income and earning capacity, and will be caused to suffer all of the foregoing losses and damages into the foreseeable future.

1279. Pursuant to 14 M.R.S. § 853, the statute of limitations was tolled on account of Plaintiff's disabilities, which prevented him from protecting his legal rights and bringing this action against Defendants.

**NINETY-FIFTH CAUSE OF ACTION**

42 U.S.C. § 1983 – Unreasonable and Excessive Use of Force and Restraints in Violation of the Fourteenth and Eighth Amendments of the United States Constitution
(Plaintiff John Doe 8 against Defendants Martin Magnusson, Mary Ann Saar, Lars Olsen, Robert Lancaster, Michael Mack, Brian MacDougall, Daniel Thurlow, Scott Janosik, Scott Riska, FNU Thomas, and FNU Quinn)

1280.    Plaintiff realleges each paragraph of this Complaint as if fully stated herein.

1281.    Defendants, at all times relevant hereto, were acting under color of state law.

1282.    Defendants used, approved, failed to intervene, and acted with deliberate indifference to unreasonable and excessive uses of force against Plaintiff that amounted to punishment and were unjustified by legitimate penological needs. In doing so, Defendants, in their individual capacities, violated Plaintiff's clearly established Fourteenth Amendment Due Process rights and Eighth Amendment right to be free from cruel and unusual punishment.

1283.    Defendants used, approved, failed to intervene, and acted with deliberate indifference to the placement of Plaintiff in restraints for purposes of punishment rather than legitimate penological needs. Further, Defendants directly kept, approved, failed to intervene, or acted with deliberate indifference to Plaintiff remaining in such unreasonable and excessive restraints for extended durations of time. In doing so, Defendants, in their individual capacities, violated Plaintiff's clearly established Fourteenth Amendment Due Process rights and Eighth Amendment right to be free from cruel and unusual punishment.

1284.    As a direct and proximate cause and result of the foregoing, Plaintiff suffered substantial personal injuries of a disabling, debilitating, and permanent nature, severe and prolonged pain and suffering, loss of enjoyment of life, severe permanent mental and emotional distress, and lost income and earning capacity, and will be caused to suffer all of the foregoing losses and damages into the foreseeable future.

1285.    Pursuant to 14 M.R.S. § 853, the statute of limitations was tolled on account of

Plaintiff's disabilities, which prevented him from protecting his legal rights and bringing this action against Defendants.

## NINETY-SIXTH CAUSE OF ACTION

5 M.R.S. § 4682(1-A) – Unreasonable and Excessive Use of Force and Restraints in Violation of Article I, §§ 1, 6, 6-A, and 9 of the Maine Constitution
(Plaintiff John Doe 8 against Defendants Martin Magnusson, Mary Ann Saar, Lars Olsen, Robert Lancaster, Michael Mack, Brian MacDougall, Daniel Thurlow, Scott Janosik, Scott Riska, FNU Thomas, and FNU Quinn)

1286.   Plaintiff realleges each paragraph of this Complaint as if fully stated herein .

1287.   Defendants, at all times relevant hereto, were acting under color of state law.

1288.   Defendants used, approved, failed to intervene, and acted with deliberate indifference to unreasonable and excessive uses of force against Plaintiff that amounted to punishment and were unjustified by legitimate penological needs. In doing so, Defendants, in their individual capacities, violated Plaintiff's clearly established rights under the Maine Constitution, including: (1) the "safety" provision of Article I, § 1, which protects his "inherent and unalienable right[]" to "safety"; (2) Article I, § 6, which protects the "[r]ights of persons accused" not to "be deprived of life, liberty, property or privileges"; (3) Article I, § 6-A, which protects the right to "due process"; and (4) Article I, § 9, which guarantees the right to be free from cruel and usual punishment.

1289.   Defendants used, approved, failed to intervene, and acted with deliberate indifference to the placement of Plaintiff in restraints for purposes of punishment rather than legitimate penological needs. Further, Defendants directly kept, approved, failed to intervene, or acted with deliberate indifference to Plaintiff remaining in such unreasonable and excessive restraints for extended durations of time. In doing so, Defendants, in their individual capacities, violated Plaintiff's clearly established rights under the Maine Constitution, including: (1) the

225

"safety" provision of Article I, § 1, which protects his "inherent and unalienable right[]" to "safety"; (2) Article I, § 6, which protects the "[r]ights of persons accused" not to "be deprived of life, liberty, property or privileges"; (3) Article I, § 6-A, which protects the right to "due process"; and (4) Article I, § 9, which guarantees the right to be free from cruel and usual punishment.

1290.   As a direct and proximate cause and result of the foregoing, Plaintiff suffered substantial personal injuries of a disabling, debilitating, and permanent nature, severe and prolonged pain and suffering, loss of enjoyment of life, severe permanent mental and emotional distress, and lost income and earning capacity, and will be caused to suffer all of the foregoing losses and damages into the foreseeable future.

1291.   Pursuant to 14 M.R.S. § 853, the statute of limitations was tolled on account of Plaintiff's disabilities, which prevented him from protecting his legal rights and bringing this action against Defendants.

## NINETY-SEVENTH CAUSE OF ACTION

42 U.S.C. § 1983 – Denial of Necessary Medical Treatment and Deliberate Indifference to
Serious Medical Needs in Violation of the Fourteenth and Eighth Amendments
of the United States Constitution
(Plaintiff John Doe 8 against Defendants Martin Magnusson, Mary Ann Saar, Lars Olsen, Robert
Lancaster, Barbara Heath, Michael Mack, Brian MacDougall,
Daniel Thurlow, Scott Janosik, Scott Riska, FNU Thomas, and FNU Quinn)

1292.   Plaintiff realleges each paragraph of this Complaint as if fully stated herein.

1293.   Defendants, at all times relevant hereto, were acting under color of state law.

1294.   Defendants, at all times relevant hereto, knew or should have known that Plaintiff suffered from severe mental illness that necessitated Plaintiff receiving medical care for that mental illness and placed Plaintiff at a substantial risk of serious harm if such treatment was not provided.

226

1295.   Defendants, at all times relevant hereto, were responsible for ensuring Plaintiff was receiving appropriate and necessary medical care, including mental health care.

1296.   Defendants, at all times relevant hereto, knew or should have known that Plaintiff was not receiving the necessary mental health care treatment, and that his conditions of confinement, including unreasonable and excessive isolation, were causing his mental health to further deteriorate and resulting in further damage.

1297.   Defendants acted with deliberate indifference to this substantial risk of serious harm by failing to provide Plaintiff with any reasonable and adequate medical and mental health care treatment in violation of Plaintiff's Fourteenth Amendment Due Process rights and Eighth Amendment right to be free from cruel and unusual punishment.

1298.   As a direct and proximate cause and result of the foregoing, Plaintiff suffered substantial personal injuries of a disabling, debilitating, and permanent nature, severe and prolonged pain and suffering, loss of enjoyment of life, severe permanent mental and emotional distress, and lost income and earning capacity, and will be caused to suffer all of the foregoing losses and damages into the foreseeable future.

1299.   Pursuant to 14 M.R.S. § 853, the statute of limitations was tolled on account of Plaintiff's disabilities, which prevented him from protecting his legal rights and bringing this action against Defendants.

## NINETY-EIGHTH CAUSE OF ACTION

5 M.R.S. § 4682(1-A) – Denial of Necessary Medical Treatment and Deliberate Indifference to Serious Medical Needs in Violation of Article I, §§ 1, 6, 6-A, and 9 of the Maine Constitution (Plaintiff John Doe 8 against Defendants Martin Magnusson, Mary Ann Saar, Lars Olsen, Robert Lancaster, Barbara Heath, Michael Mack, Brian MacDougall, Daniel Thurlow, Scott Janosik, Scott Riska, FNU Thomas, and FNU Quinn)

1300.   Plaintiff realleges each paragraph of this Complaint as if fully stated herein.

227

1301.  Defendants, at all times relevant hereto, were acting under color of state law.

1302.  Defendants, at all times relevant hereto, knew or should have known that Plaintiff suffered from severe mental illness that necessitated Plaintiff receiving medical care for that mental illness and placed Plaintiff at a substantial risk of serious harm if such treatment was not provided.

1303.  Defendants, at all times relevant hereto, were responsible for ensuring Plaintiff was receiving appropriate medical care, including mental health care.

1304.  Defendants, at all times relevant hereto, knew or should have known that Plaintiff was not receiving the necessary mental health care treatment, and that his conditions of confinement, including unreasonable and excessive isolation, were causing his mental health to further deteriorate and resulting in further damage.

1305.  Defendants acted with deliberate indifference to this substantial risk of serious harm by failing to provide Plaintiff with any reasonable and adequate medical and mental health care treatment in violation of Plaintiff's clearly established rights under the Maine Constitution, including: (1) the "safety" provision of Article I, § 1, which protects his "inherent and unalienable right[]" to "safety"; (2) Article I, § 6, which protects the "[r]ights of persons accused" not to "be deprived of life, liberty, property or privileges"; (3) Article I, § 6-A, which protects the right to "due process"; and (4) Article I, § 9, which guarantees the right to be free from cruel and usual punishment.

1306.  As a direct and proximate cause and result of the foregoing, Plaintiff suffered substantial personal injuries of a disabling, debilitating, and permanent nature, severe and prolonged pain and suffering, loss of enjoyment of life, severe permanent mental and emotional

distress, and lost income and earning capacity, and will be caused to suffer all of the foregoing losses and damages into the foreseeable future.

1307. Pursuant to 14 M.R.S. § 853, the statute of limitations was tolled on account of Plaintiff's disabilities, which prevented him from protecting his legal rights and bringing this action against Defendants.

## NINTY-NINTH CAUSE OF ACTION

42 U.S.C. § 1983 – Sexual Abuse in Violation of the Fourteenth and Eighth Amendments of the United States Constitution
(Plaintiff John Doe 8 against Defendants Daniel Thurlow, Scott Janosik, and Scott Riska)

1308. Plaintiff realleges each paragraph of this Complaint as if fully stated herein.

1309. Defendants, at all times relevant hereto, were acting under color of state law.

1310. Defendants repeatedly sexually abused, or failed to prevent repeated sexual abuse of, Plaintiff, while he was a minor and incarcerated at the Youth Center. There was no valid penological justification for Defendants inflicting and/or exposing Plaintiff to sexual abuse. Through this conduct, Defendants, in their individual capacities, violated Plaintiff's Fourteenth Amendment Due Process rights and Eighth Amendment right to be free from cruel and unusual punishment.

1311. As a direct and proximate cause and result of the foregoing, Plaintiff suffered substantial personal injuries of a disabling, debilitating, and permanent nature, severe and prolonged pain and suffering, loss of enjoyment of life, severe permanent mental and emotional distress, and lost income and earning capacity, and will be caused to suffer all of the foregoing losses and damages into the foreseeable future.

1312. Pursuant to 14 M.R.S. § 853, the statute of limitations was tolled on account of

Plaintiff's disabilities, which prevented him from protecting his legal rights and bringing this action against Defendant.

1313. At the time this cause of action arose, Plaintiff was a minor. Thus, pursuant to 14 M.R.S. § 752-C this action may be commenced at any time.

### ONE HUNDREDTH CAUSE OF ACTION

5 M.R.S § 4681(1-A) – Sexual Abuse in Violation of Article I, §§ 1, 6, 6-A, and 9
of the Maine Constitution
(Plaintiff John Doe 8 against Defendants Daniel Thurlow, Scott Janosik, and Scott Riska)

1314. Plaintiff realleges each paragraph of this Complaint as if fully stated herein .

1315. Defendants, at all times relevant hereto, were acting under color of state law.

1316. Defendants repeatedly sexually abused, or failed to prevent repeated sexual abuse of, Plaintiff, while he was a minor and incarcerated at the Youth Center. There was no valid penological justification for Defendants inflicting and/or exposing Plaintiff to sexual abuse. Through this conduct, Defendants, in their individual capacities, violated Plaintiff's clearly established rights under the Maine Constitution, including: (1) the "safety" provision of Article I, § 1, which protects his "inherent and unalienable right[]" to "safety"; (2) Article I, § 6, which protects the "[r]ights of persons accused" not to "be deprived of life, liberty, property or privileges"; (3) Article I, § 6-A, which protects the right to "due process"; and (4) Article I, § 9, which guarantees the right to be free from cruel and usual punishment.

1317. As a direct and proximate cause and result of the foregoing, Plaintiff suffered substantial personal injuries of a disabling, debilitating, and permanent nature, severe and prolonged pain and suffering, loss of enjoyment of life, severe permanent mental and emotional distress, and lost income and earning capacity, and will be caused to suffer all of the foregoing losses and damages into the foreseeable future.

1318.   At the time this cause of action arose, Plaintiff was a minor. Thus, pursuant to 14 M.R.S. § 752-C this action may be commenced at any time.

### ONE HUNDRED AND FIRST CAUSE OF ACTION

Maine State Law – Intentional Infliction of Emotional Distress
(Plaintiff John Doe 8 against Defendants Martin Magnusson, Mary Ann Saar, Lars Olsen, Robert Lancaster, Barbara Heath, Michael Mack, Brian MacDougall,
Daniel Thurlow, Scott Janosik, Scott Riska, FNU Thomas, and FNU Quinn)

1319.   Plaintiff realleges each paragraph of this Complaint as if fully stated herein.

1320.   Through their violations of Plaintiff's rights under the United States and Maine Constitutions, Defendants intentionally or recklessly, with conscious disregard of the likelihood of harm and/or severe emotional distress, inflicted severe emotional distress on Plaintiff.

1321.   Defendants' conduct was so extreme and outrageous so as to as to exceed all possible bounds of decency and as to be regarded as atrocious and utterly intolerable in a civilized community. R.S. (Second) Torts, § 46, cmt. D.

1322.   As a result of Defendants' conduct, as outlined herein, Plaintiff, while incarcerated at the Youth Center, was subjected to repeated constitutional violations, at the hands of those acting under color of law, including unreasonable and excessive uses of force, restraints, and isolation, deliberate indifference to substantial risks of serious harm, and sexual abuse.

1323.   Defendants' conduct was the actual, proximate, and factual cause of severe emotional distress of Plaintiff.

1324.   As a result, Plaintiff suffered emotional distress so severe that no reasonable person could be expected to endure it. Plaintiff has suffered and continues to suffer great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation and loss of enjoyment of life; distrust, anxiety, and

distress related to authority figures; depression, nightmares, nervousness, stress and/or other trauma; mental anguish, humiliation, embarrassment, insomnia, and fear.

1325.   Plaintiff was also prevented and will continue to be prevented from performing Plaintiff's daily activities and obtaining the full enjoyment of life; has sustained and will continue to sustain loss of earnings and earning capacity; and/or has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling.

1326.   The aforesaid injuries were due to willful, wanton, reckless, and intentional acts of Defendants and were in no way caused by any act or failure to act on the part of Plaintiff.

### ONE HUNDRED AND SECOND CAUSE OF ACTION

42 U.S.C. § 1983 – Supervisory Failure to Train
(By all Plaintiffs against Martin Magnusson, Mary Ann Saar, Lars Olsen, Robert Lancaster, Michael Mack, Scott Dewitt, and Brian MacDougall "Supervisory Defendants")

1327.   Plaintiffs reallege each paragraph of this Complaint as if fully stated herein.

1328.   At all times relevant hereto, the Supervisory Defendants were acting under color of state law.

1329.   At all times relevant hereto, the Supervisory Defendant were employed by the MDOC in a supervisory capacity.

1330.   Upon information and belief, at all times relevant hereto, the Supervisory Defendants were responsible for the supervision of subordinate staff at the Youth Center, including, but not limited to, Youth Center TSCs. This responsibility included a duty to adequately train subordinates.

1331.   Upon information and belief, at all times relevant hereto, the Supervisory Defendants knew or should have known that despite the fact that a high percentage (approximately 70%) of the children placed at the Youth Center suffered from psychological disorders and

emotional disorders, the Youth Center staff members entrusted and charged with the daily care of these children, including the Supervisory Defendants' subordinates, had no, or wholly inadequate, training on the children's constitutional rights and caring for juveniles with serious mental health needs.

1332. At all times relevant hereto, the Supervisory Defendants, as a matter of custom, practice, or policy, failed to maintain adequate and proper training for subordinate Youth Center staff that was necessary to educate these subordinates on the constitutional rights of incarcerated children, including these children's right to necessary and adequate medical care and the right to be free from deliberate indifference to substantial risks of serious harm.

1333. As a direct and proximate result of the Supervisory Defendants' failure to train their subordinates, Plaintiff suffered and continue to suffer substantial personal injuries of a disabling debilitating and permanent nature, severe and prolonged pain and suffering, loss of enjoyment of life, severe permanent mental and emotional distress, and lost income and earning capacity.

1334. Pursuant to 14 M.R.S. § 853, the statute of limitations is tolled on account of Plaintiffs' disabilities, which prevented them from protecting their legal rights and bringing this action against Defendants.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs Jane Doe 1, John Doe 1, John Doe 2, John Doe 3, John Doe 4, John Doe 5, John Doe 6, John Doe 7, and John Doe 8 respectfully pray that this Honorable Court:

1335. Preliminary and permanently enjoin Defendants from engaging in additional constitutional violations – whether by direct action or a failure to intervene or deliberate indifference – at the Youth Center;

1336. Enter judgment in their favor awarding compensatory and punitive damages, plus

pre-judgment and post-judgment interest;

1337.   Award reimbursement of the costs of suit, including reasonable attorney's fees and other litigation costs incurred in bringing this action pursuant to 42 U.S.C § 1988 or 5 M.R.S.A. § 4683;

1338.   Grant such further relief as the Court may deem proper.

Dated this 15th day of May, 2026, in Portland, Maine.

Respectfully submitted,

**HALLETT WHIPPLE WEYRENS**

*/s/ Thomas F. Hallett*

_____

Thomas F. Hallett, Bar No. 3142
6 City Center, Suite 208
P.O. Box 7508
Portland, ME 04112-7508
PH: 207-775-4255
*thallett@hww.law*

**KITNER WOODWARD PLLC**
Martin Woodward*
Scott Kitner*
13101 Preston Road, Suite 110
Dallas, Texas 75240
Phone: (214) 443-4300
martin@kitnerwoodward.com
scott@kitnerwoodward.com

**ANAPOL WEISS**
Pat Huyett*
Laura Gilson*
130 N 18th St Ste 1600,
Philadelphia, PA 19103
Phone: (215) 825-3200
phuyett@anapolweiss.com
lgilson@anapolweiss.com

***Pro hac vice forthcoming***
***Attorneys for Plaintiffs***